IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>**REMARKABLE HEALTHCARE OF CARROLLTON LP**, *et al.*[1]<br><br>DEBTORS. | Case No.:  24-40605<br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR SANCTIONS
AGAINST ALLEON CAPITAL PARTNERS, LLC**

**21-DAY NEGATIVE NOTICE – LBR 9007(a)**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief. No hearing will be conducted on this Motion/Objection/Application unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN TWENTYONE (21) DAYS FROM THE DATE OF SERVICE shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

TO THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Remarkable Healthcare of Carrollton, LP and its affiliated debtors and debtors-in-possession, (together, the "**Debtors**") in the above style and numbered cases (the "**Bankruptcy Cases**") and, pursuant to section 105(a) of chapter 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

1

"**Bankruptcy Code**") file this Motion for Sanctions (this "**Sanctions Motion**") against the Debtors' lender Alleon Capital Partners, LLC ("**Alleon**" or the "**Lender**").

## JURISDICTION AND VENUE

1. The United States District Court for the Eastern District of Texas (the "**District Court**") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. The District Court's jurisdiction has been referred to the United States Bankruptcy Court for the Eastern District of Texas (this "**Court**") pursuant to 28 U.S.C. § 157. This is a core matter pursuant to 28 U.S.C. § 157(b), which may be heard and finally determined by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RECORD FROM HEARING ON MARCH 19, 2024 IN CASE NO. 23-42098

2. Yesterday, on March 19, 2024 at 12:30 p.m. this Court held a hearing (the "**March 19th Hearing**") on Docket No. 109 in Case No. 23-42098, the Debtors' *Motion to Vacate and/or Revoke Order Dismissing Bankruptcy Cases*, which this Court partially granted and entered its *Order Granting Partial Relief On Docket 109, Motion To Vacate And/Or Revoke Order Dismissing Bankruptcy Cases*, Docket No. 124.

3. In support of this Sanctions Motion and for judicial economy, the Debtors request this Court take judicial notice of and incorporate the record from the March 19th Hearing.

## PRELIMINARY STATEMENT

4. Putting patient care and safety at risk, Alleon has swept <u>and kept for its own benefit</u> the Debtors' cash collections, including Medicare Receivables, causing mass nurse and med-aid walk-outs, which actions have created patient harm through threats to the Debtors' licenses, refusal of service from food delivery and dialysis transportation vendors, and issuance from the State of

an IJ for medication reconciliations due to low med-aid staffing (which will result in a fine and reduced ratings).[2]

5. As of March 20, 2024, Alleon has swept $951,860.43 of the Debtors' cash, which cash is critically necessary to provide patient care and make payroll. As testified to at the March 19th Hearing, the Debtors' bank accounts contained – as of March 19th—only $27,394.12.

6. In fact, despite this Court's prior castigation to Alleon for refusing to release the Debtors' employees' portions of their benefit contributions, Alleon has continued to take all cash, including the cash from payroll that necessarily includes the employees' contributions from their paychecks to their benefit plans. At this time, the Debtors' employee benefits have been suspended due to Alleon's refusal to release the funds.[3]

7. Alleon's behavior not only harms the Debtors, but inequitably prioritizes Alleon over all other creditors—in direct contravention of the longstanding bankruptcy policy exemplified throughout the Bankruptcy Code and bankruptcy jurisprudence. Most importantly, Alleon's egocentric, greedy, and unwarranted actions completely disregard the most important and unrepresented constituents—real people—the patient and residents and the Debtors' employees.

8. Alleon has refused to return or release at least $951,860.43[4] of the Debtors' cash, **leaving the Debtors' account balance at nearly $0 today, March 20th,** for employees, rent, critical prescriptions and medical supplies, and other expenses necessary for patient welfare, safety, and care. Without their cash, the Debtors are unable to pay the payroll on March 22, 2024 and will be forced to turn over their facilities to the State of Texas.

---

[2] *See Declaration of Jon McPike in Support* (the "**Decl.**"), filed contemporaneously herewith. The Declaration is the same declaration filed in Case No. 23-42098, Docket No. 109-2.
[3] *See id.* at ¶32; *see also* Emails RE: Insurance, a true and correct copy is to the Declaration at **Exhibit "N"**.
[4] Alleon has continued to keep and refuses to release the Debtors' cash daily. This amount represents the Debtors' collections between March 1 and March 20th.

3

9. Even after the Debtors informed Alleon at the March 19th Hearing that its interest in the accounts receivables remains protected even with the implementation of the QIPP program and that Alleon had not only impermissibly swept employee benefit contributions but also Medicare receivables,[5] Alleon still drained $134,842.71 from the Debtors' accounts this morning, March 20, 2024. Accordingly, Alleon has no basis to claim that their March 20th actions to take and not return the Debtors' cash were effectuated based on a misunderstanding or mistake.

10. At the conclusion of the March 19th Hearing, counsel to the Debtors conferred with counsel to Alleon and invited a deal that if Alleon would return the Debtors' cash—at least enough to make payroll—the Debtors would delay any bankruptcy filing.

11. Alleon's refusal to return the Debtors' cash—and Alleon's continued taking of the Debtors' cash after the March 19th Hearing—forced the Debtors to quickly file these Bankruptcy Cases and request an emergency hearing on this Sanctions Motion and a motion to allow the Debtors to pay their employees—which motion will be filed contemporaneously herewith.

12. At the March 19th Hearing, this Court **again** reminded counsel to Alleon (and counsel to the Landlord) of the assurances they both had given to the Court regarding patient health and safety in January 2024. Displeased with the Debtors' current predicament and the risk to patient health, safety, and life, this Court questioned counsel for Lender and Landlord how they intended to protect the patient residents if this Court did not allow the Debtors to refile for bankruptcy protection. Neither parties' counsel offered any solution that would protect the patient or employees by an expeditious, workable solution; rather—as noted by this Court—their focus remained on the money.

---

[5] *See Unopposed Response of the United States of America to Debtors' Motion to Vacate the Dismissal Order*, Case No. 23-42098, Dkt. Nos. 120 and 117

4

13. For instance, Alleon could have offered to send Remarkable the money it needs to pay its expenses and Friday's payroll (or taken Debtors' counsel up on her offer), but that was not a part of a solution Alleon offered (or agreed to post-hearing). Alleon offered no solution whatsoever.

14. This Court stated that it felt that—and Alleon's actions confirm that—Alleon (and the Landlord) fails to recognize that there are real people—patients and employees—who have no one representing their interests in the courtroom that they should be concerned about. Alleon and counsel for Alleon failed to fulfill the assurance they previously made to this Court and, on top of that, Alleon continues to display total disregard for the welfare of patients and employees.

15. Allowing conduct such as Alleon's here to go unpunished sets a precedent that values dollars-and-cents over the lives, health, and welfare of the patients, residents, and employees. Alleon's counsel sat in Court at the March 19th Hearing seemingly unaffected by the fact that if Alleon got its way, employees would quit, and patients may go hungry, may not receive medical care, and other more fatal consequences.

16. When this Court asked for a solution that protected the patients and employees, Alleon's counsel provided no solutions and continued to try and revert the conversation back to dollars-and-cents.

17. Debtors request this Court sanction Alleon for misleading the Court about its care and concern for the patients and residents, harming the patients and employes, and most importantly, for its complete disregard of human life, only caring about its own bottom line.

## ARGUMENT

18. Sanctions should be placed on Alleon for its egregious conduct and bad faith both in and out of this Court. Such conduct warrants sanctions that would deter Alleon from repeating its behavior. As such, the Debtors seek sanctions requiring disgorgement of all funds received by Alleon since March 1, 2024—a total of $951,860.43.

19. In bankruptcy, motions for sanctions are typically sought pursuant to Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 9011, which incorporates Federal Rule of Civil Procedure 11. Sanctions under Bankruptcy Rule 9011 primarily seek to "deter baseless filings in bankruptcy court and thus avoid unnecessary judicial effort, the goal being to make proceedings . . . more expeditious and less expensive." 10 Collier on Bankr. ¶ 9011.01 (Richard Levin & Henry J. Sommer eds. 16th ed.); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Generally, when a Bankruptcy Rule 9011 matter is initiated, "the only available sanctions expressly authorized by Rule 9011(c)(2) are (1) nonmonetary directives; and (2) a penalty to be paid into court." *Hoover v. Jones (In re Jones)*, 546 B.R. 12, 18 (B.A.P. 6th Cir. 2016) (internal quotations omitted).

20. In addition to Bankruptcy Rule 9011, a party may seek sanctions under the Court's powers pursuant to section 105(a) of the Bankruptcy Code. *See In re Cochener*, 360 B.R. 542, 570 (Bankr. S.D. Tex. 2007) ("The powers derived by a bankruptcy court under § 105 are the same inherent powers discussed by the Supreme Court in *Chambers v. NASCO,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)."). *See also Caldwell v. Unified Capital Corp.* (*In re Rainbow Magazine, Inc.*), 77 F.3d 278, 283–84 (9th Cir.1996) ("Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers* recognized exists within Article III courts . . . . 'We believe, and hold, that § 105 intended to imbue the bankruptcy courts

6

with the inherent power recognized by the Supreme Court in *Chambers.*'" (quoting *Jones v. Bank of Santa Fe* (*In re Courtesy Inns. Ltd.*), 40 F.3d 1084, 1089 (10th Cir.1994))).

21. In *Chambers*, the Supreme Court found that the inherent powers of the court to sanction are independent of the rules covering sanctions and may cover bad-faith conduct "beyond the reach of the Rules." *Chamber v. NASCO*, 501 U.S. at 51. In other words, sanctions may still be appropriate even where conduct was unrelated to positions explicitly taken in court as Bankruptcy Rule 9011(b) requires. *See In re Cochener*, 360 B.R. at 570-71.

22. The Fifth Circuit has explicitly upheld the power of the Bankruptcy Court to impose sanctions pursuant to section 105(a) of the Bankruptcy Code. *See Placid Ref. Co. v. Terrebonne Fuel & Lube* (*In re Terrebonne Fuel & Lube*), 108 F.3d 609 (5th Cir.1997) (holding that a bankruptcy court has the power under section 105(a) to issue sanctions, including civil contempt proceedings, in order to carry out the provisions of the Bankruptcy Code). Because such bad-faith conduct is subject to civil contempt[6] pursuant to section 105(a) of the Bankruptcy Code, courts in this Circuit have found such sanctions may provide equitable and injunctive relief not measurable through traditional monetary damages. *See, e.g. In re Sanchez*, 372 B.R. 289, 319 (Bankr. S.D. Tex. 2007).

23. Here, Alleon's bad faith conduct is more than worthy of sanctions as contemplated in the inherent powers of the Court pursuant to section 105(a) of the Bankruptcy Code. Despite counsel to Alleon's assurances to this Court in January 2024 that Alleon would ensure patients and

---

[6] To the extent this Sanctions Motion is viewed as a contempt proceeding, Bankruptcy Rule 9020 simply provides that such contempt proceeding shall be treated as a contested matter pursuant to Bankruptcy Rule 9014, which is satisfied through this Sanctions Motion. *See* Fed. R. Bankr. P. 9020. Bankruptcy Rule 9020 is purely procedural in nature. It does not alter the Court's power to sanction pursuant to section 105(a). *See Placid Refining Co. v. Terrebonne Fuel & Lube*, 108 F.3d 609, 613-14 (5th Cir. 1997) (holding that civil contempt proceeding that gave "notice and an opportunity to be heard" was constitutional). *See also In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990) (finding bankruptcy court granted civil contempt powers through section 105(a) of the Bankruptcy Code).

residents were cared for, Alleon took every cent of the Debtors' receivables and despite daily requests—and begging—from the Debtors to return those funds for critical patient care, employees, food, and operations, Alleon has flatly refused to release the Debtors' cash

24. Not only did Alleon renege on its promise to the Court through a bait-and-switch to inure its own collection provider, but its bad faith conduct toward the Debtors' patients and employees has been beyond abhorrent.

25. Alleon's behavior has been so aggressive and unwarranted that the Debtors' bank, Regions Bank, now refuses to continue to do business with the Debtors. Most egregious, despite assurances made to the Court that Alleon will help maintain patient care and will cease withholding employee's benefit contributions, its actions have allowed for anything but.

26. Any particular sanction shall be "tailored to fit the particular wrong." *Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir. 1993). Here, the Debtors believe appropriate sanctions include ordering Alleon to disgorge the total (to be updated on the date of the hearing if Alleon continued to take the Debtors' cash post-petition) of the Debtors' cash that Alleon is holding, which at the time of the filing of this Motion is at least $951,860.43. Additionally, the Court should attorneys' fees and costs. *See In re Sanchez*, 372 B.R. at 319. Sanctions of such egregious conduct warrants disgorgement and an award of attorneys' fees to a level commensurate with Alleon's assurances to this Court to protect the patients – here where it is a literal matter of life and death. *See In re Whitley*, 737 F.3d 980, 987 (5th Cir. 2013) (using equitable remedy of disgorgement of attorney's fees as sanction to a level "commensurate with the egregiousness of the conduct"). Such funds shall, therefore, be returned to the Debtors for the maintenance of safe and proper patient care.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order issuing sanctions against Alleon that (I) require Alleon to disgorge at least $951,860.43 2024 (plus such additional amounts Alleon has improperly swept post-petition), which funds shall be returned to the Debtors' operating account no later than 9 a.m. central prevailing time on Friday, March 22, 2024; (II) award Debtors' attorneys' fees and costs; and (III) provide any additional relief the Court deems just and proper.

Dated: March 20, 2024
      Dallas, Texas

**GUTNICKI LLP**

*/s/ Liz Boydston*
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (*Pro Hac Vice* to be filed)
45 Rockefeller Plaza
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com