**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | **CASE NO. 24-40605** |
| **CARROLLTON LP, ET AL.,**[1] | § | |
| | § | **(Joint Administration Requested)** |
| | § | |
| | § | |
| **DEBTORS.** | § | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING PAYMENT OF (I) CERTAIN PREPETITION WORKFORCE CLAIMS,
INCLUDING WAGES, SALARIES, AND OTHER COMPENSATION, (II) CERTAIN
EMPLOYEE BENEFITS AND CONFIRMING RIGHT TO CONTINUE EMPLOYEE
BENEFITS ON POSTPETITION BASIS, (III) REIMBURSEMENT TO EMPLOYEES FOR
PREPETITION EXPENSES, (IV) WITHHOLDING AND PAYROLL RELATED TAXES (V)
WORKER'S COMPENSATION OBLIGATIONS, AND (VI) PREPETITION CLAIMS
OWING TO ADMINISTRATORS AND THIRD PARTY PROVIDERS**

> **Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you <u>must</u> file a written objection, explaining the factual and/or legal basis for opposing the relief.**

> **No hearing will be conducted on this Motion unless a written objection is filed within the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading _WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE_ shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.[2]**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

[2] Debtors are seeking emergency and/or expedited relief, and the Court may order shortened deadlines.

TO THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE:

NOW COME the Debtors in the above-captioned Chapter 11 cases (collectively, the "Cases") and hereby move for entry of an interim and final order, in substantially the form attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and "Final Order") pursuant to sections 105(a), 363(b), 507, 1107(a), 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); authorizing, but not directing, the Debtors to (i) pay accrued prepetition wages, salaries, and other compensation to their Workforce (as defined below); (ii) honor any prepetition obligations in respect of, and continue in the ordinary course of business until further notice (but not assume), certain of the Debtors' paid time off policies, and employee benefit plans and programs, as described below; (iii) reimburse Employees (as defined below) for prepetition expenses that Employees incurred on behalf of the Debtors in the ordinary course of business on a prepetition basis; (iv) pay all related prepetition payroll taxes and other deductions, including union benefits; (v) honor worker's compensation obligations and related obligations; and (vi) pay any prepetition claims of administrators and providers in the ordinary course of business to the extent that any of the foregoing programs are administered, insured, or paid through a third-party administrator or provider. In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## I.     JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Consideration of this action is a core proceeding pursuant to 28 U.S.C § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors consent to entry of a final order under Article III of the United States Constitution.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b), and 507, and Bankruptcy Rules 6003 and 6004.

3.     On March 20, 2024 (the "Petition Date"), the Debtors commenced the Cases by filing Voluntary Petitions for Relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1182 and 1184 of the Bankruptcy Code. No trustee, examiner, or official committees have been appointed in the Cases.

## II.    FACTUAL BACKGROUND

### A.  GENERAL BACKGROUND

5.     The Debtors were formed in Texas from 2010 to 2013 and operate several skilled nursing facilities ("SNFs") (together, the "Company") with hundreds of resident patients and employees located in Carrollton, Dallas, Fort Worth, and Seguin. Remarkable Healthcare is focused on the individual who needs healthcare services after his/her hospital stay and offers both services to help individuals return home as well as long-term services for those who require extended care.  Services are tailored to each individual with the goal of facilitating increased strength and flexibility while minimizing pain and impairment. Stabilizing the patient from a clinical, nursing, and social aspect is Remarkable Healthcare's top priority.

6.     The Cases are intended to provide the Debtors and their estates a forum for the orderly and efficient reorganization of their assets and satisfaction of outstanding obligations, including working to refinance or restructure their debts.  The Debtors believe this process will be in the best interests of their creditors and estates. Throughout these Cases, the Debtors will continue to work on refinancing options while also implementing cost-cutting measures and profit-centered efficiencies to stabilize their businesses and increase growth and liquidity to repay their debts over time through a plan of reorganization.

7.     The Company collects Medicare Medicaid, and private pay receivables. The Debtors manage and provide payroll, accounting, and financial reporting for the Company.

## B. THE DEBTORS' WORKFORCE AND RELATED OBLIGATIONS

8.     Debtors currently employ approximately 516 workers (collectively, the "Employees") that work in the field and provide general business functions, both as full and part-time basis in various capacities to keep Debtors' business operating successfully and efficiently. Debtors' employees are paid either hourly or salaried depending on their position. The Employees are employed at the Debtors' four (4) facilities and management company located throughout Texas (each a "Facility" and collectively the "Facilities").

9.     The Employees are critical to the Debtors' business, and their value cannot be overstated. To a significant extent, given the Debtors' managerial role in providing ancillary services for healthcare facilities, the long-term prognosis of patients depends on the Debtors' ability to attract and retain qualified personnel. The loss of certain Employees will impede the Debtors' business and seriously harm the ability to successfully implement their bankruptcy strategy. Further, replacing Employees can be difficult for the Debtors given the limited number of individuals in their industry with the breadth of skills and experience required to successfully navigate the senior care space, where experienced employees are at a premium.

10.    If the Debtors cannot assure their Employees that they will promptly pay prepetition Employee Obligations (as defined below) to the extent allowed under the Bankruptcy Code, and continue to honor, as applicable, the Employee Benefits Obligations (as defined below), certain Employees will likely seek employment elsewhere. The loss of Employees at this critical juncture would have a material adverse impact on the Debtors' business and ability to maximize value through these Cases.

11.    The Debtors also utilize the services of contract workers ("**Contractors**" and together with the Employees, the "**Workforce**") to provide a variety of services. There are currently two (2)

4

Contractors, who provide the Debtors with a range of functions, both operational and administrative, from high-end clinicians and nurse to back-office support, including financial reporting.

12.     The Contractors fill certain critical and immediate business needs of the Debtors and allow the Debtors to have a flexible workforce to meet certain business needs in a cost-effective manner. The Contractors are a reliable and cost-efficient component of the Debtors' business. Thus, as with the Debtors' regular Employees, if the Debtors fail to honor their prepetition compensation obligations to the Contractors, it is likely that the Debtors will lose such individuals' valuable services to the detriment of the Debtors' ongoing business and ability to manage and provide services to the SNFs.

13.     In the ordinary course of business, the Debtors incur payroll and other compensation obligations for their Workforce. The Debtors also provide other benefits to their Employees for the performance of services. These benefits and obligations are described in more detail below.

*i.*     ***Workforce Compensation Obligations***

14.     In the ordinary course of business, the Debtors incur payroll obligations to their Employees, comprised generally of salaries and wages.

15.     The approximate hours worked, and the timeframe for which the wages and salaries were incurred are set forth on the attached **<u>Exhibits C and D.</u>**[3] Debtors have 516 employees distributed as follows:

| | |
|---|---|
| REMARKABLE HEALTHCARE OF CARROLLTON, LP | 131 |
| REMARKABLE HEALTHCARE OF DALLAS, LP | 107 |
| REMARKABLE HEALTHCARE OF FORT WORTH, LP | 133 |
| REMARKABLE HEALTHCARE OF SEGUIN, LP | 135 |
| REMARKABLE HEALTHCARE, LLC | 10 |
| | |
| **Grand Total** | **516** |

16.     The Employees are paid every two weeks. Debtors' last payroll period ended on March 17, 2024. Said payroll, which covers the pay period of March 4, 2024 through March 17, 2024 remains unfunded for 516 employees in the amount of $635,679.28 (the "**Prior Period Wages**") including taxes and other withholdings. Debtors seek authorization to pay said unfunded payroll amount *ON MARCH 22, 2024*. Debtors' **Exhibit C** sets forth the unpaid Prior Period Wages in detail.

17.     The next payroll is scheduled to be processed and paid on April 5, 2024, which includes the prepetition period of March 18, 2024 through March 19, 2024 (2 days) (the "**Stub Period**") and postpetition period of March 20, 2024 through March 31, 2024 (12 days). The Debtors believe the total amount of *prepetition* employee payments for the Stub Period will be approximately $105,389.05 in gross payroll and taxes, withholdings, and contributions for an estimated 516 hourly and salaried employees' checks (the "**Stub Period Wages**"). Debtors' **Exhibit D** sets forth the Stub Period Wages in detail. This amount is an estimate based on historical payroll data. Therefore, Debtors also seek authorization to pay the full amount of the Stub Period Wages up to 110% of the above-stated estimate, or $115,927.95. All Employees' respective prepetition claims to be paid by these checks are well below the current $15,150.00 priority granted to individuals under Section 507(a)(4) and (5) of the Bankruptcy Code.

### Withholding Obligations

18.     For each applicable pay period, the Debtors routinely deduct certain amounts directly from Employees' paychecks, including, without limitation, pre- and after-tax deductions payable pursuant to certain of the Employees' benefit plans programs, policies and arrangements, including, but not limited to, those discussed herein, including an Employee's share of health care benefits and insurance premiums, legally-ordered deductions, and other miscellaneous deductions (collectively, the "**Deductions**"). The Debtors withhold approximately $22,000 per month in the aggregate from Employees' wages on account of Deductions, which the Debtors remit to the appropriate third-party

recipients and/or retain on account of "self-insured" benefit and insured benefit programs as further described below.

19.     In connection with the salaries and wages paid to Employees, the Debtors are required by law to withhold amounts related to federal, state, and local income taxes, as well as social security and Medicare taxes from Employees' wages (collectively, the "**Employee Withholding Taxes**") and to remit the same to the applicable taxing authorities. In addition, the Debtors are required to make matching payments from their own funds for, among other things, social security and Medicare taxes and to pay, based on a percentage of gross payroll, state, and federal unemployment insurance, employment training taxes, and state disability insurance contributions (the "**Employer Payroll Tax Obligations**," and together with Employee Withholding Taxes, the "**Payroll Tax Obligations**"). Each pay cycle, the Debtors withhold any applicable Employee Withholding Taxes from the Employees' wages, and Paycom remits (and Paycom will remit) the same to the applicable taxing authorities. The Debtors withheld approximately $531,611.46 thus far for 2024 Employee Withholding Taxes.

20.     The Debtors seek authorization, but not direction, to continue to make the Deductions and satisfy the Payroll Tax Obligations and Dues (collectively, the "**Withholding Obligations**") and to remit amounts withheld on behalf of third parties postpetition in the ordinary course of business.

### *ii.     PTO, Holiday Pay, and Sick Leave*

21.     The Debtors offer their Employees paid time off ("**PTO**"), holiday pay ("**Holiday Pay**"), and paid sick days ("**Sick Leave**"). These programs are typical and customary, and continuing to offer them is necessary for the Debtors to retain Employees during the reorganization or sale process. The Debtors' paid time off policies are summarized below:

22.     Employees accrue PTO hours into a PTO bank, which includes 5 holidays .

23.     The Debtors request that they be authorized, but not directed, to continue to honor their PTO, Holiday Pay, and Sick Leave policies going forward, including during the administration of these Cases. The Debtors also request authority to pay any PTO, Holiday Pay, and Sick Leave that accrued prepetition.

### iii.     *Reimbursable Expense Obligations This is included in the total payroll form.*

24.     Prior to the Petition Date, in the ordinary course of business, the Debtors reimbursed Employees for reasonable and legitimate expenses incurred on behalf of the Debtors in the scope of the Employee's employment ("**Reimbursable Expense Obligations**"). Reimbursable Expense Obligations typically include expenses for, among other things, air travel, meals, parking, mileage, and certain other business and travel-related expenses. All such expenses are incurred with the applicable Employee's understanding that he or she will be reimbursed by the Debtors in accordance with the Debtors' reimbursement policy, as described in more detail below. In all cases, reimbursement is contingent on the Debtors' determination that the charges are for legitimate, reimbursable business expenses.

25.     The Debtors process expense and reimbursement claims on a rolling basis. As such, it is difficult for the Debtors to determine the exact amount of Reimbursable Expense Obligations outstanding as of the Petition Date because, among other things, Employees may have expenses that they have yet to submit to the Debtors for reimbursement. On average, over the past year, the Debtors have paid approximately $550 per month on account of Reimbursable Expense Obligations. To the extent that any Reimbursable Expense Obligations are outstanding, the Debtors request the authority to reimburse Employees. In addition, the Debtors seek authority to cause any prepetition checks or electronic payment requests that were given in reimbursement of Reimbursable Expense Obligations to be honored and to reissue any check or electronic payment request that is not cleared by the applicable bank or other financial institution, to the extent necessary.

26.    The Reimbursable Expense Obligations are ordinary course expenses that the Debtors' Employees incur in performing their job functions, including all expenses incurred on corporate credit cards. It is essential to the continued operation of the Debtors' business that the Debtors be permitted to continue reimbursing or making direct payments on behalf of Employees for such expenses.

27.    Indeed, Employees incurred the Reimbursable Expense Obligations as business expenses on behalf of the Debtors and with the understanding that they would be reimbursed. To avoid harming Employees who incurred the Reimbursable Expense Obligations, the Debtors request authority, but not direction, to satisfy all prepetition Reimbursable Expense Obligations to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses. The Debtors also seek authority to continue their reimbursement policy and corporate cards policy in the ordinary course of business during the administration of these Cases.

### iv.    *Employee Benefit Programs*

28.    In the ordinary course of business, the Debtors implement various benefit plans and policies for their Employees that can be divided into the following categories: (a) medical, health care and prescription benefits, including, but not limited to, telephone health consultation, supplemental medical expense insurance coverage, ~~health flexible spending accounts,~~ ~~health reimbursement arrangements~~ and employee and dependent preventive care benefit plan (the "**Medical Plans**"), COBRA coverage ("**COBRA**"), dental care (the "**Dental Plan**"), and vision care (the "**Vision Plan**," and collectively, with the Medical Plans, COBRA, and the Dental Plan, the "**Health Plans**"); (b) optional life insurance, short and long term disability insurance, and other voluntary insurance plans (collectively, the "**Income Protection Plans**"); (C) the Texas Occupational Injury Plan and similar plans, grams, policies, or arrangements (the "**Injury Benefit Plan**" and collectively with the Health Plans, Income Protection Plans, Injury Benefit Plan, the "**Employee**

**Benefits Plans**"). In certain instances, the Debtors deduct specified amounts from the participating Employees' wages in connection with the Employee Benefits Plans. All obligations with respect to the Employee Benefits Plans are hereinafter referred to as the "**Employee Benefits Obligations**."

29.     The Debtors seek authority to continue the Health Plans and Employee Benefits Plans.

*v.*     ***Workers' Compensation Program***

30.     The Debtors maintain workers' compensation insurance for their Workforce at the statutorily required level for the State of Texas. The Debtors maintain workers' compensation coverage and the Injury Benefit Plan ("**Workers' Compensation Insurance**") for claims ("**Workers' Compensation Claims**") on a self-insured basis (together, the "**Workers' Compensation Insurers**"). As of the Petition Date, there are zero (0) open Workers' Compensation Claims.

31.     The Debtors seek authority, but not direction, to pay any Workers' Compensation Claims in the ordinary course and honor payments owed with respect to the Workers' Compensation Claims regardless of when such obligations arose.

### III.     <u>RELIEF REQUESTED</u>

32.     By this Motion, the Debtors request entry of the Interim and Final Order, substantially in the forms of <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, attached hereto, authorizing, but not directing, the Debtors to (a) pay prepetition claims and honor obligations incurred or related to the Compensation Obligations, the Withholding Obligations, PTO, Sick Leave, Holiday Pay, the Reimbursable Expense Obligations, the Employee Benefits Obligations, Workers' Compensation Claims, and all fees and costs incident to the foregoing, including amounts owed to third-party administrators (including the Administrative Fee Obligations) (collectively, the "**Employee Obligations**"), and (b) maintain, continue, and honor, in the ordinary course of business, the Incentive Programs, PTO, Sick Leave, and Holiday Pay policies, postpetition Reimbursable Expense Obligations,

the Employee Benefits Plans, and the Workers' Compensation Claims (collectively, the "**Employee Plans and Programs**").

33.     To enable the Debtors to implement the relief requested, the Debtors also request that the Court authorize all applicable banks and financial institutions (collectively, the "**Banks**"), and Paycom (together with the Banks, the "**Processors**"), to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtors relating to the Employee Obligations and the Employee Plans and Programs, whether such checks were presented or electronic-payment requests were submitted prior to or after the Petition Date.[3]

### IV.    BASIS FOR RELIEF

34.     The Debtors' ability to successfully operate is contingent on a reliable and loyal Workforce. As stated above, competition for qualified employees is intense in the Debtors' industry. Thus, it is essential to assure the Employees that the Debtors will honor the Employee Obligations and continue to maintain the Employee Plans and Programs in the ordinary course of business throughout these Cases. A failure to promptly do so will create concern and discontent among the Employees and could lead to resignations or, in the case of Contract Workers, the decision to not complete work for the Debtors or accept future hiring proposals. Indeed, many of the Employees were employed by Debtors during the pendency of their previously-filed bankruptcy case. Therefore, if the relief requested in this Motion is not granted, Employee concerns will be significant and, thus, the Debtors will likely lose key Employees at a time when their employment is critical. The loss of even a few key personnel would immediately and irreparably harm the Debtors' ability to conduct their business to the detriment of all interested parties.

---

[3] The Debtors plan to file a motion for authority to, among other things, continue utilizing their cash management system.

35.     Therefore, pursuant to Bankruptcy Code §§ 105(a), 363, 507, 1107(a), and 1108, the Debtors seek authority to pay the Employee Obligations and to maintain and continue the Employee Plans and Programs in the ordinary course of business and exercise of their business judgment. This relief is necessary to retain the Workforce, the loss of which would disable the Debtors' business and, ultimately, the Debtors' ability to manage and provide critical services to the SNFs.

A. **THE EMPLOYEE OBLIGATIONS ARE ENTITLED TO PRIORITY TREATMENT**

36.     Bankruptcy Code § 507(a)(4)(A) grants priority status to up to $15,150 for employee claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date. *See* 11 U.S.C. § 507(a)(4)(A). Similarly, Bankruptcy Code § 507(a)(5) grants priority to contributions to employee benefit plans, up to an aggregate amount of $15,150 multiplied by the number of employees covered, less any amounts paid to such employees under Bankruptcy Code § 507(a)(4).

37.     Indeed, "[w]age priority has been a feature of the bankruptcy law since 1898." *In re Garden Ridge Corp.*, No. 04-10324 (KJC), 2006 WL 521914, at *2 (Bankr. D. Del. Mar. 2, 2006) (citing 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 507.05[1] (15th ed. 2005)). Its purpose is to "alleviate hardship on workers . . . who may have no other source of income and "to encourage employees to stand by an employer in financial difficulty." *Id*. (citing Collier on Bankruptcy ¶ 507.05[1]). This priority extends to certain other "benefits that are considered akin to compensation, such as vacation, severance and sick leave pay." *Id*.

38.     The Debtors believe that the Employee Obligations relating to the period prior to the Petition Date constitute priority claims under Bankruptcy Code §§ 507(a)(4) and (5). Amounts that are paid on account of priority claims for the majority of the Employee Obligations would not otherwise be available for distribution to unsecured creditors. Therefore, the Debtors' unsecured creditors will not be prejudiced by permitting priority obligations to be satisfied in the ordinary course

of business during the Cases rather than at the conclusion of the Cases. Indeed, the Debtors submit

that payment of Employee Obligations at this time enhances value and benefits the Debtors and all

interested parties by retaining the Workforce. The Debtors believe that honoring the Employee

Obligations is important to sustain morale for the current Workforce and ensure their retention.

### B. PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE §§ 1107 AND 1108.

39.     The Debtors, operating their businesses as debtors in possession under Bankruptcy

Code §§ 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate and operating the business

for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, LLC*, 273

B.R. 487, 497 (Bankr. N.D. Tex. 2002). "Implicit in the duties" of a chapter 11 debtor in possession

is the duty "to protect and preserve the estate, including an operating business's going-concern

value." *Id. See also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics

Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325,

339 (3d Cir. 2004).

40.     Courts have noted that there are instances in which a debtor in possession can fulfill

its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *In re CoServ, LLC*,

273 B.R. at 497. The *CoServ* Court specifically noted that preplan satisfaction of prepetition claims

is a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a

substantial enhancement of the estate." *Id.* The court provided a three-pronged test for determining

whether a preplan payment on account of a prepetition claim is a valid exercise of a debtor's

fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals
> with the claimant, the debtor risks the probability of harm, or, alternatively, loss of
> economic advantage to the estate or the debtor's going concern value, which is
> disproportionate to the amount of the claimant's prepetition claim. Third, there is no
> practical or legal alternative by which the debtor can deal with the claimant other than
> by payment of the claim.

*Id*. at 498.

41.     Payment of the Employee Obligations as set forth herein meets each element of the *CoServ* Court's standard. The Debtors' business, including management of the SNFs, is complex and depends on the skill and expertise of the Debtors' Employees. The Employees possess unique knowledge regarding specific aspects of the Debtors' business, which would be virtually irreplaceable should such Employees be lost through a failure to pay the Employee Obligations. In addition, the Debtors' failure to pay the Employee Obligations as set forth herein would negatively impact the Workforce's morale at a critical time for the Debtors and their business when the Workforce is most needed. The Workforce is also critical to the Debtors' ability to maintain their business consistent with past practices, which would be impossible without the Workforce's continued efforts. The damage to the Debtors' businesses and, hence, the costs to creditors as a whole, would be immediate and irreparable if the Employee Obligations are not met. In short, the potential harm and economic disadvantage that would stem from the failure to pay the Employee Obligations as set forth herein greatly outweighs the amount of any prepetition claims that the Debtors are seeking authorization to pay.

42.     After careful consideration the Debtors have determined in their business judgment that to avoid significant disruption to their business there exists no practical or legal alternative to the payment of the Employee Obligations as set forth herein. Therefore, the Debtors can meet their fiduciary duties as debtors in possession under Bankruptcy Code §§ 1107(a) and 1108 only by payment of the Employee Obligations as set forth herein.

### C.  PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE § 541.

43.     The Debtors also seek authority to pay the Withholding Obligations to the appropriate entities. These amounts principally represent the Employees' earnings that governments, the Employees, and the judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtors' estates because

14

the Debtors have withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541. *See also City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 95 (3d Cir. 1994) (observing the "well-settled principle that debtors do 'not own an equitable interest in property . . . [they] hold[] in trust for another,' and that therefore funds held in trust are not 'property of the estate'") (quoting *Begier v. IRS*, 496 U.S. 53, 59 (1990)).

44.     Further, federal and state laws require the Debtors to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a). S*ee also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *In re Sharon Steel Corp.*, 41 F.3d at 95-97 (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). A failure to pay over these amounts could subject the Debtors and their officers and directors to liability. *See, e.g.*, John F. Olson, et al., Director & Officer Liability: Indemnification and Insurance § 3:21 (2003).

45.     To avoid the potential of such liability, and because the Withholding Obligations are not property of the Debtors' estates, the Debtors request that the Cout order Alleon to to disgorge at least $951,860.43 2024 (plus such additional amounts Alleon has improperly swept post-petition), which funds shall be returned to the Debtors' operating account no later than 9 a.m. central prevailing time on Friday, March 22, 2024, and authorize them to remit these amounts to the appropriate parties in the ordinary course of business.

**D.  PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE § 363.**

46.     Bankruptcy Code § 363(b)(1) provides that a debtor may "after notice and a hearing, use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon that debtor's sound business judgment. *See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section 363(b) must find from the evidence a good business reason to grant such application). *See also In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (standard for determining a § 363(b) motion is whether the debtor has a "good business reason" for the requested relief). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under Bankruptcy Code § 363(b). *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 175 (accepting debtor's argument that payment of employee wage claims was "critical . . . in order to preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale," and finding that the debtor had "clearly demonstrated sound business reasons to justify such payments").

47.     In addition, the Debtors pay the Employee Obligations in the ordinary course of business, as permitted by Bankruptcy Code § 363(c). However, to the extent the Court finds that approval is necessary, and in an abundance of caution, the Debtors request that the Court grant the

relief requested herein and enter an order authorizing them to pay the Employee Obligations, consistent with their compensation, vacation, and other benefit policies and plans, and to permit, but not require, the Debtors, in their discretion, to maintain and continue the Employee Plans and Programs for their Employees as those practices, programs, policies, and plans were in effect as of the Petition Date, as such may be modified, terminated, amended, or supplemented from time to time hereafter.

### E. PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE § 105(A) AND THE DOCTRINE OF NECESSITY.

*48.*     Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to Bankruptcy Code § 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Bankruptcy Code § 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

49.     Numerous courts have used their § 105(a) powers under the "doctrine of necessity" to authorize payment of prepetition obligations where, as here, such payment is an essential element of the preservation of the debtor in possession's potential for rehabilitation. *See In re CoServ,* 273 B.R. at 497 (reasoning that because the debtor-in-possession has fiduciary duties it must meet, it is logical that the bankruptcy court may "use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate"); *In re Synteen Techs., Inc.,*

No. 00-02203-W, 2000 WL 33709667, at *2 (Bankr. D.S.C. Apr. 14, 2000) (courts have permission to "allow payment of a prepetition claim when essential to the continued operation of the debtor") (citation omitted); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("[C]ourts have used their equitable power under section 105(a) . . . to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization."); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105] the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("payment by a debtor-in- possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed...where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.").

50.     The "doctrine of necessity" is frequently invoked early in reorganization cases, during the so-called "breathing spell," when preservation of the estate is most critical and often extremely difficult. *See* 2 Collier on Bankruptcy ¶ 105.02[4][a] (16th ed.) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately). For example, in *In re Structurlite Plastics Corp.*, the court embraced "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor.'" *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)). The court explained that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to

18

permit the effectuation of the rehabilitative purposes of the Code." *Id*. at 932. Flexibility of payment is particularly critical when the prepetition creditor provides vital goods or services to the debtor.

51. Here, many of the Employees rely on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and maintain their health and well-being. Consequently, these Employees will be exposed to significant financial hardships if the Debtors are not permitted to honor the Employee Obligations. If the Debtors are unable to satisfy such obligations, Employee morale and loyalty will suffer at a time when Employee support is critical. Further, if the Court does not authorize the Debtors to honor their various obligations under the Employee Benefits Plans, the Employees' health coverage could be threatened, potentially burdening individual Employees with the costs of health care. At a minimum, the loss of health care coverage, or uncertainty regarding coverage, would result in considerable anxiety for the Employees at a time when the Debtors need their Employees to perform their jobs at peak efficiency. For all of the foregoing reasons, a sound business purpose exists to pay the Employee Obligations.

52. In the absence of such payments, the Debtors believe that their Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development would deplete the Workforce, hinder the Debtors' ability to provide management services, which ultimately benefits and services patients, and likely diminish creditor and counterparty confidence in the Debtors. Moreover, the loss of valuable Employees and the recruiting efforts that would be required to replace such Employees would be a substantial and costly distraction at a time when the Debtors must focus on sustaining their business by, among other things, managing and providing services to the SNFs. Accordingly, the Debtors must be able to pursue all reasonable measures to retain the Employees by, among other things, continuing to honor wages, benefits, and related obligations, including those that accrued prior to the Petition Date, consistent with the terms set forth in the Interim Order and Final Order attached hereto.

53.     Taken together, the nature of the Employee Obligations, the substantial harm to the Debtors' business that would be caused if those obligations were not honored, the related potential for loss of value in the Debtors' estates, and the fact that a significant portion of the obligations in question relates to priority wage claims, lead to the conclusion that the Employee Obligations fall well within the scope of obligations whose payments may be authorized pursuant to the doctrine of necessity.

54.     The relief requested herein is commonly granted by Bankruptcy Courts in this District. Accordingly, for all of the foregoing reasons, the relief requested herein will benefit the Debtors' estates and creditors by allowing the Debtors' business to continue without interruption and should therefore be approved.

**F. THE COURT SHOULD AUTHORIZE APPLICABLE BANKS AND OTHER PROCESSORS TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS IN ACCORDANCE WITH THE MOTION.**

55.     In connection with the foregoing, the Debtors respectfully request that the Court: (a) authorize all applicable Processors to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Processors may rely on the Debtors' representations with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such Banks and other Processors having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Processors.

**G. IMMEDIATE RELIEF IS JUSTIFIED.**

56.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an

obligation regarding property of the estate" only if such relief is necessary to avoid immediate  and irreparable harm. Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

57.     Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to healthcare patients and other third parties. Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to  the estate alone. Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally. *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate"). Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions. *See* 9 Collier on  Bankruptcy ¶ 4001.07[b][3] (discussing  source of "irreparable harm" standard under Rule 4001(c)(2)). Courts will routinely consider  third-party interests when granting such relief. *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260  F.3d 757, 761 (7th Cir. 2001). Although the Fifth Circuit has not interpreted the phrase "immediate  and irreparable harm" with regard to Bankruptcy Rule 6003, is has with regard to preliminary injunctions. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). In that context, Courts have found that this standard requires "(1) the harm to Plaintiffs is imminent (2) the injury would be irreparable and (3) that Plaintiffs have no other adequate legal remedy." *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006).

58.     As described herein, the Debtors will suffer immediate and irreparable harm without Court authorization to pay the  Employee  Obligations  and other related relief requested herein.

Accordingly, Bankruptcy Rule 6003 has been satisfied, and the relief requested herein should be granted.

## V.     WAIVER OF BANKRUPTCY RULES

59.     To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule  6004(h), to the extent applicable. *See* FED. R. BANKR. P. 6004(a), (h). As described above, the  relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to continue to conduct their business and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VI.     RESERVATION OF RIGHTS

60.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. The Debtors expressly reserve their rights to dispute any claim asserted by a member of the Workforce under applicable law and to assume or reject any Workforce  agreements in accordance with the applicable provisions of the Bankruptcy Code. Likewise, if  this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## VII.   CONSENT TO JURISDICTION

61.     The Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent the parties' consent.

## VIII.   NOTICE

62.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee; (b) the Office of the Attorney General of Texas; (c) the Debtors' 20 largest unsecured creditors on a consolidated basis; (d) the applicable departments of health in Texas; (e) the Internal Revenue Service; and (f) the SubChapter V Trustee when one is appointed.

63.     The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

## IX.   NO PRIOR REQUEST

64.     No previous request for relief sought herein has been made to this Court or any other Court.

**WHEREFORE**, for the reasons stated herein, the Debtors respectfully request that the Court enter the Proposed Interim Order and Proposed Final Order substantially in the form attached hereto as Exhibit A and Exhibit B, granting the relief requested in the Motion, and granting such other relief as the Court deems just and proper.

Dated: March 20, 2024
Dallas, Texas

**GUTNICKI LLP**

_/s/ Alexandria Rahn_____
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (_Pro Hac Vice_ to be filed)
45 Rockefeller Plaza
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
 mschlan@gutnicki.com

_Proposed Counsel to the Debtors and Debtors
in Possession_

## X.    CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was served on March 20, 2024 via electronic mail to the U.S. Trustee, any Subchapter V Trustee, Lender and Landlord, Regions Bank, HHS and the US Attorney, and any party who consents to service via the court's ecf noticing service.

_/s/  Alexandria Rahn_____