**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | CASE NO. 24-40605 |
| **CARROLLTON LP, ET AL.,**[1] | § | |
| | § | (Joint Administration Requested) |
| | § | |
| DEBTORS. | § | |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTING, (III) MODIFYING THE AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND (V) <u>GRANTING RELATED RELIEF</u>**

**14-DAY NEGATIVE NOTICE – LBR 4001(a): Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**[2]

TO THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

[2] The Debtors are seeking emergency and/or expedited relief, and the Court may order shortened deadlines.

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the "**Motion**"), pursuant to sections 105, 361, 362, 363, 506, 507, and 552(b) of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 4001, 6004(h), 7062 and 9014 of Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"); and Rule 4001-1(c) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Texas (the "**Local Rules**") for entry of an order, substantially in the form of **Exhibit A** filed contemporaneously with this Motion (the "**Interim Order**"), (i) authorizing the Debtors to use the Cash Collateral of Alleon Capital Partners ("**Alleon**") (the "**Secured Creditor**"), (ii) granting the Secured Creditor adequate protection upon the terms set forth in the Interim Order and in any final orders, (iii) modifying the automatic stay, and (iv) scheduling a final hearing on the Motion and approving the form and manner of notice thereof, and granting such other and further relief as the Court deems just and appropriate. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b), Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, and Local Rule 4001-1(c).

2

## BACKGROUND

### A. PROCEDURAL BACKGROUND

4. On March 20, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under subchapter V of chapter 11 of the Bankruptcy Code (the "**Cases**").

5. The Debtors continue to operate their businesses and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107, 1108, and 1184.

6. No trustee or examiner, or official committee of unsecured creditors has been appointed in the Cases.

### B. GENERAL BACKGROUND

7. The Debtors were formed in Texas from 2010 to 2013 and operate four skilled nursing facilities with approximately 270 resident patients and employees located in Carrollton, Dallas, Fort Worth, and Seguin. Remarkable Healthcare is focused on the individual who needs healthcare services after his/her hospital stay and offers both services to help individuals return home as well as long-term services for those who require extended care. Services are tailored to each individual with the goal of facilitating increased strength and flexibility while minimizing pain and impairment. Stabilizing the patient from a clinical, nursing, and social aspect is Remarkable Healthcare's top priority.

8. The Reorganization Cases are intended to provide the Debtors and their estates a forum for the orderly and efficient reorganization of their assets and satisfaction of outstanding obligations, including working to refinance or restructure their debts. The Debtors believe this process will be in the best interests of their creditors and estates. Throughout these Cases, the Debtors will continue to work on refinancing options while also implementing cost-cutting

measures and profit-centered efficiencies to stabilize their businesses and increase growth and liquidity to repay their debts over time through a plan of reorganization.

### C. PREPETITION DEBT STRUCTURE

#### i. Prepetition Indebtedness

9. The following party has asserted or may assert liens in the Debtors' deposit accounts and cash (hereinafter, the "**Cash Collateral**"):

    a. **Alleon Capital Partners**, located at 1086 Teaneck Road, Suite 4D, Teaneck, New Jersey, 07666;

10. The liabilities evidenced above are collectively identified as the "**Prepetition Indebtedness**" held by the Secured Creditor. The Prepetition Indebtedness was identified following Debtors' review of UCC Financing Statement filed with the Texas Secretary of State and review of the Debtors' own records for deposit account control agreements. The Secured Creditor asserts that its respective indebtedness is secured by liens on certain of the Debtors' assets as identified by the Loan and Security Agreement (as amended) executed by the Secured Creditor and the Debtors (collectively, the "**Collateral**"). The Debtors believe the Secured Creditor asserts that certain Collateral, together with proceeds and revenues thereof, constitute Cash Collateral as that term is defined herein and in § 363(a) of the Bankruptcy Code. The Debtors' collateral securing the Prepetition Indebtedness is identified collectively as the "**Prepetition Collateral**."

#### ii. (ii) Leasehold Obligations

11. The Debtors do not own the real estate, but instead operate the Facilities through Lease Agreement and Security Agreements (collectively, the "**Leases**") with landlords GMP Dallas NH, Ltd. ("**GMP**"), WAG Development, Ltd. ("**WAG**"), Mustang NH, LLC ("**Mustang**"),

and Guadalupe NH Development, Ltd. ("**Guadalupe**") (collectively, the "**Landlord**")[3]. As of the Petition Date, the Debtors are in arrears on their rent obligations to the Landlords. In the aggregate, the Landlords are owed approximately $2.19 million in unpaid rent, common area maintenance charges, and taxes.

### D. THE DEBTORS' NEED FOR THE USE OF CASH COLLATERAL

12. The Debtors assert that an immediate and critical need exists for the Debtors to use cash to protect their resident-patients and continue the operation of their businesses. Without such funds, the Debtors assert that they will not be able to pay post-petition operating expenses and obtain goods and services needed to carry on their businesses in a manner that will avoid irrepareable harm to their estates. At this time, the Debtors assert that their ability to use cash is necessary to preserve and maintain the going concern value of their estates.

13. Indeed, the Debtors have determined that absent the use of Cash Collateral, the Debtors will be unable to operate their businesses during the Cases, irreparably harming the Debtors' estates and creditors. The denial of the use of Cash Collateral would directly result in the interruption of patient care, leaving patients and residents without food, medical supplies, proper medical care, and other services they require. Further, the Debtors' business operations would immediately suffer the loss of key employees and vendors because the Debtors would be unable to demonstrate financial stability. Therefore, the Debtors' immediate access to Cash Collateral is necessary to preserve and maximize the value for the benefit of all parties in interest, including patients and employees.

14. In exchange for the use of Cash Collateral, the Debtors have agreed, and the Interim Order Provides, adequate protection in the form of, among other things, adequate protection liens,

---

[3] GMP, WAG, and Guadalupe are all Texas limited partnerships with HC Nursing Home, LLC as the general partner. Rick Griffin signed each of the Leases including the Lease with Mustang as Manager of each landlord entity.

5

superpriority claims, and adequate protection payments to protect the Secured Creditor against any diminution in the value of their interests in the Cash Collateral resulting from the use, sale, or lease of the Cash Collateral, the subordination of the Secured Creditor's liens to the Carve-Out (as defined in the Interim Order), and the imposition of the automatic stay.

15. At this time, the Debtors are not contemplating the need for postpetition financing. Instead, the Debtors intend to operate their businesses solely on the use of the existing Cash Collateral. Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital and liquidity to operate their businesses, maintain patient care, and thus preserve and maintain the value of the Debtors' estates. Without access to such liquidity, the Debtors will face irreparable harm.

## RELIEF REQUESTED

16. The Debtors respectfully request entry of the Interim Order, pursuant to Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b) and Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, (i) authorizing the Debtors to use the Cash Collateral, (ii) granting the Secured Creditor adequate protection upon the terms set forth in the Interim Order and in any final orders, (iii) modifying the automatic stay, and (iv) scheduling a final hearing on the Motion.

17. Pursuant to Bankruptcy Rule 4001(c)(1)(B), the following is a concise statement of the material provisions of the Interim Order:[4]

| Provision | Summary | Location |
|---|---|---|
| **Entities with Interests in the Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(i)* | The Secured Creditor | ¶ D |

---

[4] Capitalized terms used but not otherwise defined in the chart have the meanings ascribed to them in the Interim Order. This summary and any other description of the Interim Order provided for in this Motion is qualified in its entirety by the actual terms of the Interim Order. The actual terms of the Interim Order will control in the event of any inconsistency between this Motion and the Interim Order.

| Provision | Summary | Location |
|---|---|---|
| **"Prepetition Collateral"** | a. "Collateral - All Borrower's present and future Accounts, Chattel Paper, Goods (including Inventory and Equipment), Instruments, Investment Property, Documents, and General Intangibles, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts, the Billing Reserve Cash Collateral, and the proceeds thereof. | ¶D(3) |
| **"Cash Collateral"** | The Secured Creditor's security interests and liens have attached to all funds and property of the Debtors consisting of the Prepetition Collateral and the products and proceeds thereof, and the Secured Creditor's security interests and liens will, notwithstanding the commencement of these Cases, as of the Petition Date and thereafter, attach to the products and other proceeds of the Prepetition Collateral. Without limiting the foregoing, the Secured Creditor's security interests and liens attach to all cash (whether as original collateral or cash proceeds of the Prepetition Collateral), negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents now or hereafter in the possession, custody or control of the Debtors (the "**Cash Collateral**"). | ¶D(4) |
| **Purpose for the Use of Cash Collateral**<br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* | The Debtors seek authority to use Cash Collateral to fund their day-to-day operations, including payroll for their employees and ongoing services to their residents.<br><br>Subject to the terms and conditions set forth in the Interim Order, the Debtors are, through and including the earlier of (a) forty-five (45) days from the date of entry of the Interim Order, (b) the conclusion of the final hearing on the Debtors' use of Cash Collateral, or (c) termination of the Interim Order following issuance of a Termination Notice as set forth in ¶ 11 of the Interim Order, authorized pursuant to Bankruptcy Code sections 105, 361, 362 and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use Cash Collateral on an interim basis. | ¶¶ I; 2 |
| **Budget**<br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* | <u>Use of Cash Collateral</u>. Subject to the terms and conditions set forth in this Interim Order, the Debtors are, through and including the earlier of (a) forty-five (45) days from the date of entry of this Interim Order, (b) the conclusion of the final hearing on the Debtors' use of Cash Collateral, or (c) termination of this Interim Order following issuance of a Termination Notice as set forth in <u>Paragraph 11</u> below, authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use Cash Collateral on an interim basis. The Cash Collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the budget to be filed (the "**Budget**"); <u>provided</u>, <u>however</u>, that the Debtors may use Cash Collateral in excess of the amount designated for a particular line-item so long as the percentage of deviation of each line item during any rolling 4-week period does not exceed ten percent (10%) (the "**Variance**"); and <u>provided further</u> that the Debtors many not amend or modify the terms and conditions of their use of the Cash Collateral, or amend, modify, roll-forward or replace the Budget itself, without the prior written consent of the Secured Creditor, which may be granted or withheld in the Secured Creditor's | ¶¶ 2; 3 |

7

| Provision | Summary | Location |
|---|---|---|
| | reasonable discretion.<br><br>Reporting. As additional protection for the Debtors' use of Cash Collateral, the Debtors shall allow the Secured Creditor and its respective professionals and designees reasonable access, during normal business hours, to the premises of the Debtors in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Secured Creditor for this purpose. From and after the entry of this Interim Order, the Debtors shall provide to the Secured Creditor on Wednesday of every other week (commencing with the second week after the Petition Date), a weekly report (the "**Bi-Weekly Budget Report**") certified by the Debtors' chief executive officer and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 10% from the disbursements and receipts in the Budget. The Debtors, and their professionals and consultants, shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with the Secured Creditor and/or its professionals to discuss the status of the Bankruptcy Cases, the results of operations and other matters pertaining to the Debtors' facilities, including any sale or restructuring efforts. The Secured Creditor shall have independent access to the Debtors' financial advisors to discuss matters relating to the Debtors, including any contemplated sale or restructuring of the Debtors. The Debtors shall provide to the Secured Creditor such other reports and information as the Secured Creditor may reasonably request from time to time. | |
| **Duration of Use of Cash Collateral/Events of Default**<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Subject to the terms and conditions set forth in the Interim Order, the Debtors are, through and including the earlier of (a) forty-five (45) days from the date of entry of the Interim Order, (b) the conclusion of the final hearing on the Debtors' use of Cash Collateral, or (c) termination of the Interim Order following issuance of a Termination Notice as set forth in ¶ 10 of the Interim Order.<br><br>Events of Default. Each of the following shall constitute an event of default ("**Event of Default**") with respect to the Debtors' authorization to use Cash Collateral hereunder, unless otherwise waived in writing by the Secured Creditors:<br><br>a. entry of an order converting any of these Cases to a case under Chapter 7 of the Bankruptcy Code;<br><br>b. entry of an order dismissing any of these Cases;<br><br>c. entry of an order appointing or directing the election of a trustee or an examiner with expanded powers for any of the Debtors under Bankruptcy Code sections 1104 or 1106(b);<br><br>d. without the prior written consent of the Secured Creditor, the entry of any order (or other judicial action which has | **Duration of Use of Cash Collateral/ Events of Default**<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* |

8

| Provision | Summary | Location |
|---|---|---|
| | the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Interim Order; | |
| | e. any of the Debtors use Cash Collateral for any purpose or in a manner other than as permitted in this Interim Order and in the Budget or otherwise fails to comply with any term of this Interim Order; | |
| | f. the filing by any of the Debtors of any pleading objecting to or seeking to challenge the Secured Creditor's claims with respect to the Prepetition Obligations or the Secured Creditor's lien upon Cash Collateral or the Prepetition Collateral or otherwise asserting rights, claims or causes of action against the Secured Creditor with respect to the Prepetition Obligations; | |
| | g. the filing by any of the Debtors of any debtor-in-possession financing pleadings or any documents pertaining to a debtor-in-possession financing not acceptable to and supported by the Secured Creditor; | |
| | h. the filing by any of the Debtors of any bid procedure and/or sale documents relating to the sale of the Prepetition Collateral, postpetition collateral subject to the Replacement Lien, and/or Cash Collateral not acceptable to and supported by the Secured Creditor; or | |
| | i. any of the Debtors voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or ceases the operation of any material portion of its business. | |
| | <u>Termination Notice</u>. Immediately upon the occurrence or existence of an Event of Default, the Secured Creditor shall be authorized to issue a notice (a "Termination Notice") thereof to the Debtors, their counsel, counsel to any Committee and the U.S. Trustee, which Termination Notice may be delivered by electronic mail. Unless, within ten (10) business days after the issuance of such notice, the Court determines that the applicable Event of Default has not occurred or does not exist, the Debtors' authority to use Cash Collateral shall terminate immediately without further order of the Court. | |
| **Adequate Protection**<br>*Bankruptcy Rule 4001(b)(1)(B)(iv)* | <u>Adequate Protection; Replacement Liens</u>. The Secured Creditor is entitled, pursuant to Bankruptcy Code sections 361 and 363(e), to adequate protection of their interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any diminution in value of their interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the Debtors' use of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362. As security for and solely to the extent of any diminution in the value of Prepetition Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code section 506(a) | ¶¶ 4; 6 |

9

| Provision | Summary | Location |
|---|---|---|
| | (a "**Diminution in Value**"), the Secured Creditor is hereby granted senior priority replacement liens upon all assets and property of the Debtors and their estates of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Prepetition Collateral (the "**Replacement Liens**"), but excluding all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law; provided, however, that the Replacement Liens shall be subject and subordinate to (a) the Carve-Out (as defined below), and (b) the Prior Senior Liens. The Replacement Liens so granted are in addition to all security interests, liens, and rights of setoff existing in favor of the Secured Creditor on the Petition Date, and are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action of the Debtors or the Secured Creditors and without the necessity of the execution, filing or recording of any financing statements, security agreements, deeds of trust, or other documents, or of obtaining control agreements over bank accounts. Notwithstanding the foregoing, the Secured Creditors is hereby authorized, but not required, to file or record any financing statements, security agreements, deeds of trust, or other documents in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted hereunder.<br><br>Adequate Protection; Fees and Expenses. The Debtors are hereby authorized and directed to pay the reasonable and documented fees and expenses of the Secured Creditors' outside legal and financial advisors in accordance with the Budget on a regular monthly basis during these Cases. The Secured Creditors shall provide copies of invoices to the Debtors, whom shall have ten (10) days to object to the fees and expenses sought under this paragraph. Notwithstanding the foregoing, the Secured Creditors reserve its right to assert claims for the payment of additional amounts provided for in the OCAs, and to seek additional or further adequate protection from the Court. | |
| **Carve-Out**<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Carve-Out. The Replacement Liens granted hereunder shall be junior and subordinate to the following fees and expenses (the "**Carve- Out**"): (a) all budgeted accrued but unpaid fees and expenses (the "**Professional Fees and Expenses**") of the attorneys, accountants, or other professionals retained by the Debtors and any statutory committee of unsecured creditors appointed in these Cases under Bankruptcy Code sections 327 or 1103(a) (the "**Committee**", and collectively, the "**Professionals**") incurred until the earlier of (1) forty-five (45) days from the date of entry of this Interim Order; (2) the entry of the Final Order, or (3) the delivery of a Termination Notice; (b) Professional Fees and Expenses in the maximum amount of $100,000 incurred after delivery of a Termination Notice; and (c) the payment of fees pursuant to 28 U.S.C. § 1930, provided that all such fees and expenses shall be subject to | ¶ 7 |

10

| Provision | Summary | Location |
|---|---|---|
| | approval by a final order of the Court pursuant to Bankruptcy Code sections 326, 328, 330, 331, or 363. Notwithstanding anything to the contrary set forth herein, no Cash Collateral nor any portion of the Carve-Out may be used to prosecute actions, claims, demands or causes of action against the Secured Creditor, or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority, or enforceability of the Secured Creditor's liens and security interests against the Prepetition Collateral or the Replacement Liens; provided, however, that the Cash Collateral may be used by the Committee and its professionals, to the extent provided in the Budget, to perform due diligence with respect to the validity, perfection priority or enforceability of the Secured Creditor's liens and security interests against the Prepetition Collateral or the Replacement Liens. The entry of a Final Order shall be a conclusive and binding determination on all parties that except for the Carve-Out, no costs or expenses of administration shall be imposed against the Secured Creditor or the Prepetition Collateral, including, without limitation, the Cash Collateral, under Bankruptcy Code sections 105 or 506(c), or otherwise. | |

## BASIS FOR RELIEF

A. **CASH COLLATERAL AND ADEQUATE PROTECTION**

18.    Bankruptcy Code section 363(c) provides that a debtor in possession may use cash collateral if all interested entities consent or the Court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c). Bankruptcy Code section 363(e) provides that s that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). *See also In re DeSardi*, 350 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("Adequate protection . . . is grounded in the belief that secured creditors should not be deprived of the benefit of their bargain"). The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or

11

decrease as a result of the proposed use of cash collateral); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

19. Bankruptcy Code section 361 delineates non-exhaustive forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief. Adequate protection is determined on a case-by-case basis and may take various forms. *See, e.g.*, *United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1388 (5th Cir. 1986). *See also In re Self*, 239 B.R. 877, 881 (E.D. Tex. 1999) (noting that the adequate protection determination is not an "exact science"); *In re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993); *MBank Dallas., N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of this requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained prebankruptcy."). "[T]he debtor-in-possession has the burden of proof on the issue of adequate protection." *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003).

20. Here, the Secured Creditor has not yet consented to the Debtors' use of Cash Collateral on the terms set forth in the Interim Order. The Debtors will continue to negotiate with the Secured Creditor in an attempt to achieve consent prior to the Hearing on this Motion. Notwithstanding consent from the Secured Creditor, the proposed adequate protection included in the Interim Order provides the appropriate level of adequate protection in the form of, among other

things, the Replacement Liens, adequate protection payments, including fees and expenses, and reporting requirements. The Debtors submit that the proposed adequate protection is appropriate and sufficient to protect the Secured Creditors from any diminution in value of the Prepetition Collateral, because, among other things, there are no defaults.

21. The Cash Collateral will be used for funding business operations and allowing the Debtors to transition into the Cases and to ultimately acquire a refinancing lender to replace Alleon. Immediate access to this liquidity will permit the Debtors to fund necessary payroll, pay postpetition vendors, provide critical patient care, and otherwise continue business in the ordinary course. One reason underlying the filing of these Cases is to stabilize operations. If Cash Collateral is not available, the Debtors will be unable to continue providing patient and resident care, unable to make payroll, and thus will dissipate value to the detriment of the Secured Creditor and other stakeholders, including employees and patients. Thus, the use of Cash Collateral will protect the Secured Creditor's security interests by preserving the value of the Prepetition Collateral throughout the Cases. *See In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). *See also Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992).

22. In light of the foregoing, the Debtors submit that the proposed adequate protection to be provided is appropriate and necessary to protect such party against any diminution in value and is also fair and appropriate on an interim basis under the circumstances of this case and to

ensure that the Debtors are able to continue using Cash Collateral in the near term for the benefit of all parties in interest and their estates.

23. Based on the foregoing, the Debtors respectfully submit that entry of the Interim Order authorizing the interim use of Cash Collateral and scheduling a Final Hearing to approve the use of Cash Collateral on a final basis is necessary and appropriate.

**B. MODIFICATION OF THE AUTOMATIC STAY IS WARRANTED**

24. The relief requested by this Motion contemplates a modification of the automatic stay. 11 U.S.C. § 362. The automatic stay should be modified on a limited basis (to the extent applicable) as necessary to effectuate all terms and provisions of the Interim Order, including, without limitation to: (a) permit the Debtors to grant the Replacement Liens and to make the adequate protection payments; (b) permit the Debtors to perform such acts as the Secured Creditor may request to assure the perfection and priority of the liens granted in the Interim Order; and (c) authorize the Debtors to make, and the Secured Creditor to retain and apply, payments made in accordance with the terms of the Interim Order.

25. In addition, the Interim Order provides for the termination of the automatic stay to permit the Secured Creditor to exercise, upon the occurrence and during the continuation of an Event of Default, and to take other remedies relating to the Cash Collateral without further order or application to the Court. The Secured Creditor is required to provide ten (10) business days' notice to the Debtors, U.S. Trustee, and the Subchapter V Trustee.

26. Stay modifications of this kind are ordinary and standard terms of postpetition use by debtors in possession of prepetition collateral, and, in the Debtors' business judgment, is reasonable under the present circumstances.

27. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

C. **INTERIM APPROVAL AND SCHEDULING OF A FINAL HEARING**

28.     Interim relief may be granted on a motion to use cash collateral pursuant to Bankruptcy Code sections 363(c) or 364 where relief "is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED. R. BANKR. P. 4001(b)(2), (c)(2).

29.     The Debtors believe that all or substantially all of their available cash constitutes Cash Collateral and they are therefore unable to proceed to continue their business operations without the ability to use Cash Collateral; and they will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest, most notably patients, residents, and employees. The Debtors' ability to finance its operations is vital to the preservation and maintenance of the value of the Debtors' assets, the Landlords' collateral, and the Secured Creditors' interest.

30.     The Debtors will face immediate and irreparable harm without the entry of the Interim Order. Therefore, the Debtors respectfully request that the Court schedule a final hearing, no sooner than 14 days after the date of this Motion and no later than 25 days after the Petition Date, to consider entry of the Final Order.

31.     Moreover, Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

### **RESERVATION OF RIGHTS**

32.     No budget submitted by the Debtors shall be an admission of liability nor constitute a waiver of any right, claim, or defense of the Debtors. The Debtors shall update the Budget, if necessary, and provide the same to the Secured Creditors.

33. The Debtors specifically reserve their right to assert an objection to the nature, extent, validity, or priority of the Secured Creditors' security interests, or any other matter with respect to such, but understand they may not use Alleon's Cash Collateral to contest Alleon's liens or claims.

## WAIVER OF BANKRUPTCY RULES

34. To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h), to the extent applicable. *See* Fed. R. Bankr. P. 6004(a), (h). As described above, the relief that the Debtors seeks in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

35. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Eastern District of Texas; (b) the Texas Office of the Attorney General; (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (d) the Department of Medicaid, Department of Health, and Division of Health Services Regulation in Texas; (e) the Subchapter V Trustee; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002; (g) the Landlords; and (h) the Secured Creditor.

36. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

## NO PRIOR REQUEST

37. No previous request for the relief sought herein has been made to this Court or any other Court.

**WHEREFORE**, for the reasons stated herein, the Debtors respectfully request that the Court enter the Proposed Order substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion, and granting such other relief as the Court deems just and proper.

Dated: March 21, 2024
Dallas, Texas

**GUTNICKI LLP**

/s/ Liz Boydston
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (*Pro Hac Vice* Pending)
45 Rockefeller Plaza
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 21, 2024, I emailed Alleon Capital's counsel of record via email and never received a response. At the hearing on the morning of March 22, 2024, Alleon objected to the use of cash collateral.

/s/ Liz Boydston
Liz Boydston

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document was served on March 22, 2024 via ECF notice on all parties requesting such notice or via U.S. first class mail, postage prepaid, to all parties on the service list (*to be filed and attached in a concurrently filed Certificate of Mailing*), including the U.S. Trustee, Subchapter V Trustee, Debtor's secured creditors, all governmental units, and each of the Debtor's unsecured creditors.

    */s/ Alexandria R. Rahn*
    Alexandria R. Rahn