**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| IN RE: § | |
| § | CHAPTER 11 |
| § | |
| **REMARKABLE HEALTHCARE OF** § | CASE NO. 24-40605 |
| **CARROLLTON LP, ET AL.,**[1] § | |
| § | (Joint Administration Requested) |
| § | |
| DEBTORS. § | |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC
STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Interim Order**") (i) authorizing the Debtors to use the Cash Collateral of Alleon Capital Partners, LLC (the "**Secured Creditor**"), (ii) granting the Secured Creditor adequate protection upon the terms set forth in this Interim Order and in any final orders, (iii) modifying the automatic stay, (iv) scheduling a final hearing on the Motion and approving the form and manner of notice thereof, and (v) granting such other and further relief as the Court deems just and appropriate; the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consented to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND THAT:**[3]

A.    On March 20, 2024 (the "**Petition Date**"), the Debtors filed petitions for relief under subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**").

B.    Since the Petition Date, the Debtors have continued in the management and operation of their businesses and property as debtors in possession pursuant to Bankruptcy Code sections 1107, 1108, and 1184. No trustee or committee has been appointed in the Cases.

C.    The Secured Creditor asserts that the Debtors are obligated under the Loan and Security Agreement (as amended) executed by the Secured Creditor and the Debtors (the "**Loan**"). Any and all monetary and nonmonetary obligations of the Debtors under the Loan as of the Petition Date are referred to herein as the "**Prepetition Obligations**." Upon Secured Creditor's consent to use of Cash Collateral, the foregoing acknowledgments and stipulations shall be binding on the Debtors but not on any other party-in-interest in these Cases, except as provided in Paragraph 9 hereof.

D.    [If Secured Creditor consents to use of cash] The Debtors further stipulate and agree as follows:

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(1) As of the Petition Date, the Loan (and any amendments) are valid and enforceable against each of the Debtors that is a party thereto, and none of the Debtors possess, and agree not to assert, any claim (as such term is defined in Bankruptcy Code section 101(5)), counterclaim, setoff, or defense of any kind, nature or description which would in any way affect the validity or enforceability of the Loan;

(2) As of the Petition Date, the Prepetition Obligations constitute legal, valid, and binding obligations of the Debtors, as applicable, enforceable in accordance with the terms of the Loan; no offsets, defenses or counterclaims to any of the Prepetition Obligations exist; no portion of the Prepetition Obligations is subject to recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or non-bankruptcy law; the Prepetition Obligations, in accordance with the terms of the Loan, constitute allowable secured claims; and the Debtors have irrevocably waived, discharged, and released any rights they may have to challenge or object to the Prepetition Obligations, and/or to challenge or object to the security for the Prepetition Obligations;

(3) The Secured Creditor's liens and security interests with respect to the Debtors'

   a. "**Collateral** - All Borrower's present and future Accounts, Chattel Paper, Goods (including Inventory and Equipment), Instruments, Investment Property, Documents, and General Intangibles, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts, the Billing Reserve Cash Collateral, and the proceeds thereof."

(4) The Secured Creditor's security interests and liens have attached to all funds and property of the Debtors consisting of the Prepetition Collateral and the products and proceeds thereof, and the Secured Creditor's security interests and liens will, notwithstanding the commencement of these Cases, as of the Petition Date and thereafter, attach to the products and other proceeds of the Prepetition Collateral. Without limiting the foregoing, the Secured Creditor's security interests and liens attach to all cash (whether as original collateral or cash proceeds of the Prepetition Collateral), negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents now or hereafter in the possession, custody or control of the Debtors (the "**Cash Collateral**").

The foregoing acknowledgments and stipulations shall be binding on the Debtors, upon Secured Creditor's consent to Use of Cash Collateral but not on any other party-in-interest in this case, except as provided in Paragraph 9 hereof.]

3

E.  The Debtors have requested that the Secured Creditor consent to the Debtors' use of Cash Collateral and the Secured Creditor [is/is not] willing to consent to the Debtors' use of Cash Collateral on the terms and conditions provided herein. The Secured Creditor is relying on the terms, conditions, and protections provided herein in so consenting.

F.  [The agreements and arrangements described in the Motion and authorized in this Interim Order have been negotiated at arm's-length with all parties represented by counsel, are fair and reasonable under the circumstances, and are enforceable in accordance with their terms. The Debtors and the Secured Creditor are acting in good faith with respect to the use of Cash Collateral as provided in this Interim Order.]

G.  The security interests and replacement liens and other protections granted to the Secured Creditor pursuant to this Interim Order (1) are fair and reasonable and satisfy the requirements of the Bankruptcy Code, and (2) will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or any other order, as provided in Bankruptcy Code section 364(e).

H.  [In light of the Secured Creditor's agreement to subordinate its liens to the Carve-Out (as defined below), and its agreement to permit use of its Cash Collateral, the Secured Creditor is entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception shall not apply.]

I.  The liens and security interests granted to the Secured Creditor hereunder shall not prime or impair any validly perfected lien or security interest senior to the liens and security interests of the Secured Creditor with respect to the Debtors' assets and properties in existence as of the Petition Date, if any (the "**Prior Senior Liens**"). The granting of the replacement liens and other agreements of the Debtors hereunder constitute adequate protection to the Secured Creditor

4

for the Debtors' use of Cash Collateral for purposes of this Interim Order.

J.  Good cause has been shown for entry of this Interim Order. Without use of Cash Collateral, the Debtors will not be able to fund their day-to-day operations, including payroll for their employees and ongoing healthcare services to their patients and residents. Unless the Court authorizes the use of Cash Collateral, the Debtors will be unable to pay for the goods and services necessary to preserve and maximize the value of the Debtors' assets. Accordingly, this Interim Order is required to avoid immediate and irreparable harm to the Debtors' estates. Entry of this Interim Order is in the best interests of the Debtors, their creditors, and the estates.

I.  **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.  The Motion is granted on an interim basis in accordance with the terms and conditions of this Interim Order.

2.  Use of Cash Collateral. Subject to the terms and conditions set forth in this Interim Order, the Debtors are, through and including the earlier of (a) forty-five (45) days from the date of entry of this Interim Order, (b) the conclusion of the final hearing on the Debtors' use of Cash Collateral, or (c) termination of this Interim Order following issuance of a Termination Notice as set forth in Paragraph 11 below, authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use Cash Collateral on an interim basis. The Cash Collateral may only be used to fund the types and corresponding amounts of itemized expenditures [approved by Secured Creditor] or contained in the budget attached hereto as Exhibit 1 (the "**Budget**"); provided, however, that the Debtors may use Cash Collateral in excess of the amount designated for a particular line-item so long as the percentage of deviation of each line item during any rolling 4-week period does not exceed ten percent (10%) (the "**Variance**"); and provided further that the Debtors many not amend or

5

modify the terms and conditions of their use of the Cash Collateral, or amend, modify, roll-forward or replace the Budget itself, without the prior written consent of the Secured Creditor, which may be granted or withheld in the Secured Creditor's reasonable discretion.

3. <u>Reporting</u>. As additional protection for the Debtors' use of Cash Collateral, the Debtors shall allow the Secured Creditor and its respective professionals and designees reasonable access, during normal business hours, to the premises of the Debtors in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Secured Creditor for this purpose. From and after the entry of this Interim Order, the Debtors shall provide to the Secured Creditor on Wednesday of every other week (commencing with the second week after the Petition Date), a weekly report (the "**Bi-Weekly Budget Report**") certified by the Debtors' chief restructuring officer and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 10% from the disbursements and receipts in the Budget. The Debtors, and their professionals and consultants, shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with the Secured Creditor and/or its professionals to discuss the status of the Cases, the results of operations and other matters pertaining to the Debtors' facilities, including any sale or restructuring efforts. The Secured Creditor shall have independent access to the Debtors' financial advisors (if any) to discuss matters relating to the Debtors, including any contemplated sale or restructuring of the Debtors. The Debtors shall provide to the Secured Creditor such other reports and information as the Secured Creditor may reasonably request from time to time.

4. <u>Adequate Protection; Replacement Liens</u>. The Secured Creditor is entitled,

pursuant to Bankruptcy Code sections 361 and 363(e), to adequate protection of its interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any diminution in value of their interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the Debtors' use of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362. As security for and solely to the extent of any diminution in the value of Prepetition Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code section 506(a) (a "**Diminution in Value**"), the Secured Creditor is hereby granted senior priority replacement liens upon all assets and property of the Debtors and their estates of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Prepetition Collateral (the "**Replacement Liens**"), but excluding all claims and causes of action, and the products and proceeds thereof, including but not limited to those claims and causes of action arising under or permitted by Bankruptcy Code sections 502(d), 506(c), 544, 545, 547, 548, 549, and 550 and any other avoidance claims and causes of action arising under state or federal law; provided, however, that the Replacement Liens shall be subject and subordinate to (a) the Carve-Out (as defined below), and (b) the Prior Senior Liens. The Replacement Liens so granted are in addition to all security interests, liens, and rights of setoff existing in favor of the Secured Creditor on the Petition Date, and are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action of the Debtors or the Secured Creditor and without the necessity of the execution, filing or recording of any financing statements, security agreements, deeds of trust, or other documents, or of obtaining control agreements over bank accounts. Notwithstanding the foregoing, the Secured Creditor is hereby authorized, but not required, to file or record any financing statements, security agreements, deeds of trust, or other documents in any jurisdiction or take any

7

other action in order to validate and perfect the Replacement Liens granted hereunder.

5. <u>Bankruptcy Code Section 506(c) Waiver</u>. Except as set forth in <u>Paragraph 9</u> below, the entry of this Interim Order by the Court shall be a conclusive and binding determination on all parties (a) as to the scope, extent, perfection, validity and enforceability, in all respects, of the Secured Creditor's security interests and liens in the Prepetition Collateral, including, without limitation, the Cash Collateral, and (b) that such liens and security interests shall not be subject to any claim under Bankruptcy Code section 552(b). The entry of an order by the Court approving the Cash Collateral Motion on a final basis (the "**Final Order**") shall be a conclusive and binding determination on all parties that the Secured Creditor's security interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, are and shall not be subject to any claim under Bankruptcy Code section 506(c), which claims shall be deemed to be waived at that time.

6. <u>Adequate Protection; Fees and Expenses</u>. The Debtors are hereby authorized and directed to pay the reasonable and documented fees and expenses of the Secured Creditor's outside legal and financial advisors in accordance with the Budget on a regular monthly basis during these Cases. The Secured Creditor shall provide copies of invoices to the Debtors, whom shall have ten (10) days to object to the fees and expenses sought under this paragraph. Notwithstanding the foregoing, the Secured Creditor reserve its right to assert claims for the payment of additional amounts provided for in the Credit Financing Documents, and to seek additional or further adequate protection from the Court.

7. <u>Carve-Out</u>. The Replacement Liens hereunder shall be junior and subordinate to the following fees and expenses (the "**Carve Out**"): (a) all budgeted accrued but unpaid fees and expenses (the "**Professional Fees and Expenses**") of the attorneys, accountants, or other

professionals retained by the Debtors and any statutory committee of unsecured creditor (if any) appointed in these Cases under Bankruptcy Code sections 327 or 1103(a) (the "**Committee**", and collectively, the "**Professionals**") incurred until the earlier of (1) forty-five (45) days from the date of entry of this Interim Order; (2) the entry of the Final Order, or (3) the delivery of a Termination Notice; (b) Professional Fees and Expenses in the maximum amount of $100,000 incurred after delivery of a Termination Notice; and (c) the payment of fees pursuant to 28 U.S.C. § 1930, provided that all such fees and expenses shall be subject to approval by a final order of the Court pursuant to Bankruptcy Code sections 326, 328, 330, 331, or 363. Notwithstanding anything to the contrary set forth herein, no Cash Collateral nor any portion of the Carve-Out may be used to prosecute actions, claims, demands or causes of action against the Secured Creditor, or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority, or enforceability of the Secured Creditor's liens and security interests against the Prepetition Collateral or the Replacement Liens; provided, however, that the Cash Collateral may be used by the Committee (if any) and its professionals, to the extent provided in the Budget, to perform due diligence with respect to the validity, perfection priority or enforceability of the Secured Creditor's liens and security interests against the Prepetition Collateral or the Replacement Liens. The entry of a Final Order shall be a conclusive and binding determination on all parties that except for the Carve-Out, no costs or expenses of administration shall be imposed against the Secured Creditor or the Prepetition Collateral, including, without limitation, the Cash Collateral, under Bankruptcy Code sections 105 or 506(c), or otherwise.

8. Parties in Interest Bound.

    a. The admissions and stipulations contained in Paragraphs C and D of this Interim Order shall be binding on the Debtors under all circumstances and shall be binding upon all other parties-in-interest, including, without limitation, any Committee and any Chapter 7 or Chapter 11 trustee that may

9

be appointed or elected on behalf of the Debtors' estates, except to the extent that (i) a party-in-interest has filed an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Secured Creditor on behalf of the Debtors' estates, no later than the date that is sixty (60) days after the date of entry of this Interim Order (the "**Challenge Deadline**"), and (ii) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter. If any such adversary proceeding or contested matter is timely commenced as of the Challenge Deadline, the admissions contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgments and agreements are expressly challenged in such adversary proceeding or contested matter.

b. If no such adversary proceeding or contested matter is commenced as of the Challenge Deadline, then (i) the Prepetition Obligations shall constitute allowed secured claims, not subject to subordination (other than as set forth herein with respect to the Carve-Out and the Prior Senior Liens), or avoidance, for all purposes in these Cases and any subsequent Chapter 7 case, (ii) the liens securing the Prepetition Obligations on the Prepetition Collateral shall be deemed legal, valid, binding, duly authorized, perfected, not subject to defense, counterclaim, recharacterization, offset of any kind, or subordination, other than as set forth herein, and otherwise unavoidable, (iii) the Prepetition Obligations, the liens on the Prepetition Collateral, and the Replacement Liens shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (iv) the Secured Creditor shall be deemed released from any and all rights, claims, causes of action and liabilities arising from or in connection with the Prepetition Obligations, the Prepetition Collateral, the Credit Facility Documents and/or the extension of credit or other financial accommodations thereunder or with respect thereto.

9. <u>Events of Default</u>. Each of the following shall constitute an event of default ("**Event of Default**") with respect to the Debtors' authorization to use Cash Collateral hereunder, unless otherwise waived in writing by the Secured Creditor:

a. entry of an order converting any of these Cases to a case under Chapter 7 of the Bankruptcy Code;

b. entry of an order dismissing any of these Cases;

  c. entry of an order appointing or directing the election of a trustee or an examiner with expanded powers for any of the Debtors under Bankruptcy Code sections 1104 or 1106(b);

  d. without the prior written consent of the Secured Creditor, the entry of any order (or other judicial action which has the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Interim Order;

  e. any of the Debtors uses Cash Collateral for any purpose or in a manner other than as permitted in this Interim Order and in the Budget or otherwise fails to comply with any term of this Interim Order;

  f. the filing by any of the Debtors of any debtor-in-possession financing pleadings or any documents pertaining to a debtor-in-possession financing not acceptable to and supported by the Secured Creditor;

  g. the filing by any of the Debtors of any bid procedure and/or sale documents relating to the sale of the Prepetition Collateral, postpetition collateral subject to the Replacement Lien, and/or Cash Collateral not acceptable to and supported by the Secured Creditor; or

  h. any of the Debtors voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or ceases the operation of any material portion of its business.

10. <u>Termination Notice</u>. Immediately upon the occurrence or existence of an Event of Default, the Secured Creditor shall be authorized to issue a notice (a "**Termination Notice**") thereof to the Debtors, their counsel, counsel to any Committee and the U.S. Trustee, which Termination Notice may be delivered by electronic mail. Unless, within ten (10) business days after the issuance of such notice, the Court determines that the applicable Event of Default has not occurred or does not exist, the Debtors' authority to use Cash Collateral shall terminate immediately without further order of the Court.

11. <u>Failure of Adequate Protection</u>. Nothing herein shall constitute a waiver, release or modification of the rights of the Secured Creditor to assert a claim under Bankruptcy Code sections 364(c) and 507(b).

11

12. <u>Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) shall be, and it hereby is, vacated and modified to the extent necessary to permit (i) the Secured Creditor to receive and apply payments made pursuant to this Interim Order in accordance with the terms and provisions of this Interim Order and the Budget, and (ii) to permit the Secured Creditor to send the Termination Notice (as defined herein) and to exercise any rights and remedies or other action authorized or contemplated by this Interim Order, subject to the terms and conditions contained herein.

13. <u>Deemed Request for Stay Relief</u>. This Interim Order shall be deemed to constitute a request by the Secured Creditor for relief from the automatic stay with respect to the Prepetition Collateral (but solely to the extent provided by this Interim Order), for adequate protection for the use of Cash Collateral as of the Petition Date and shall suffice for all purposes of Bankruptcy Code section 507(b).

14. <u>No Duty to Monitor Compliance</u>. The Secured Creditor may assume that the Debtors will comply with all terms and conditions of this Interim Order and the Budget and shall not (a) be obligated to ensure or monitor the Debtors' compliance with any financial covenants, formulae or other terms and conditions of this Interim Order or the OCAs, (b) be obligated to pay (directly or indirectly from Cash Collateral or otherwise) any expenses incurred or authorized to be incurred pursuant to this Interim Order or in connection with the operation of the Debtors' businesses, or (c) be obligated to ensure or monitor that Cash Collateral exists to pay such expenses.

15. <u>No Waiver</u>. The failure of the Secured Creditor to seek relief or otherwise exercise their rights and remedies under this Interim Order or the Credit Facility Documents, as applicable, shall not constitute a waiver of any of Secured Creditor's rights hereunder, thereunder or otherwise.

16. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders or any direct, indirect or incidental beneficiary.

17. <u>Section 552(b)</u>. In light of their agreement to subordinate their liens to the Carve-Out, the Secured Creditor shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Secured Creditor with respect to products and proceeds of any of the Prepetition Collateral.

18. <u>Effect of Order</u>. This Interim Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3)). The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered (a) confirming any plan of reorganization; (b) dismissing any one of these Cases; (c) converting any one of these Cases to any other chapter under the Bankruptcy Code; (d) withdrawing of the reference of any one of these Cases from the Court; and (e) providing for abstention from handling or retaining of jurisdiction of any one of these Cases in the Court.

19. <u>Amendments and Waivers</u>. The Debtors and the Secured Creditor may amend, modify, supplement or waive any provision of this Interim Order in writing if such amendment, modification, supplement or waiver is not material, without any need to apply to, or receive further approval from, the Court. The Debtors shall provide notice of any such nonmaterial amendment, modification, supplement or waiver to counsel for any Committee and the Office of the United States Trustee. Any material amendment, modification, supplement or waiver shall be in writing,

signed by the Debtors and the Secured Creditor, and approved by the Court on appropriate notice by the Debtors.

20. <u>The Secured Creditor Not in Control of Debtors' Operations</u>. With respect to the Debtors' use of Cash Collateral pursuant to this Interim Order and any subsequent interim or final order, or any actions reasonably related to this Interim Order, the Motion or the Credit Facility Documents, neither the Secured Creditor, nor its respective agents, employees, attorneys or representatives, shall have any liability to any third party (including creditors of the Debtors) and shall not be deemed to be in control of the Debtors' operations or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

21. <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Interim Order and the Motion, the provisions of this Interim Order shall govern.

22. Final Hearing. A final hearing on the Motion will be scheduled for _____, 2024, at ___ a.m./p.m. CST (the "**Final Hearing**"). The Debtors will provide notice of the Final Hearing by first class mail to (a) counsel for the Secured Creditor, (b) counsel for the Committee (if any), (c) the Office of the United States Trustee, (d) all parties who have filed requests for notice under Bankruptcy Rule 2002, (e) the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis, (g) the Landlords; (h) HUD, and (i) such other parties as this Court may order. Any party wishing to object to the relief granted herein being granted on a permanent basis shall file such objection with the Court, together with proof of service thereof, and served upon: (a) counsel for the Debtors; (b) counsel for the Secured Creditor; (c) counsel for the Committee (if any); and (d) the Office of the United States Trustee, so as to be received no later than _____, 2024, at 4:00 p.m. CST (the "Objection Deadline"). If no objections are filed and served on or before the Objection Deadline,

at the Final Hearing, the Court may enter a final order permitting the use of Cash Collateral by the Debtor.

### ###End of Order###

**Exhibit**

Budget

Submitted by:

**GUTNICKI LLP**

*/s/ Liz Boydston*
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (*Pro Hac Vice* Pending)
45 Rockefeller Plaza
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

*Proposed Counsel to the Debtors and Debtors in Possession*