UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| Remarkable Healthcare of Carrollton, LP *et al.* | § § | Case No. 24-40605 |
| Debtor(s). | § | |

**EMERGENCY MOTION TO (I) APPROVE INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF**

**LBR 9007(a) NOTICE[1]**
**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**TO THE HONORABLE BRENDA T. RHODES U.S. BANKRUPTCY JUDGE:**

KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and Kilgore Property Management LLC (collectively, "Kilgore") file this *Emergency Motion to (I) Approve Debtor In Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief* (the "DIP Motion") seeking to and in support thereof would show the Court the following.

---

[1] Kilgore has filed a separate motion seeking emergency consideration of this motion at the March 26, 2024 1:00 p.m. status conference.

EMERGENCY MOTION TO (I) APPROVE INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF —Page 1
4885-6904-9266, v. 1

1. ***Kilgore seeks emergency consideration of this motion at the March 26, 2024 1:00 p.m. status conference.***

2. Kilgore (or designee) is in the process of funding the payroll for the Dallas, Fort Worth, and Carrollton facilities.

3. The amount of the advance is $____.

4. On or about March 22, 2024, Kilgore approached Alleon, West Wharton, and DHS about a DIP loan and priming lien, and those three stake holders at that time express no opposition, except DHS indicated that a Code §364 lien could not attach to overpayment reimbursement obligations.

5. A draft of the loan document(s) to be used in connection with the payroll are attached hereto as **Exhibit K100**.

6. Kilgore requests that the Court approve and bind the Debtor into approving the payroll funding as a loan under Code §364 as set forth in the proposed form of order attached hereto as **Exhibit K101**.

7. Under the instant emergency, the attached form of loan document and/or order may be changed, amended, etc. before the hearing and before entry.

WHEREFORE KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and Kilgore Property Management LLC respectfully requests that the Court set this matter for an emergency hearing and that the Court approved the DIP Loan by and through the form of DIP Order attached hereto.  Movant respectfully requests such other and further relief to which Movant is entitled at law or in equity.

Dated: March 26, 2024

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
By: */s/ Jeff Carruth*
   JEFF CARRUTH (TX SBN:. 24001846)
   3030 Matlock Rd., Suite 201
   Arlington, Texas 76105
   Telephone: (713) 341-1158
   E-mail: jcarruth@wkpz.com
ATTORNEYS FOR
KRS CARROLLTON LLC, KRS DALLAS LLC,
KRS FORT WORTH LLC, AND KILGORE
PROPERTY MANAGEMENT LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on March 26, 2024 (1) by electronic notice to all ECF users who have appeared in this case to date (2) by regular mail to all parties appearing in the attached address list (i.e. mailing matrix) obtained from the Court's PACER facility. ***A separate certificate of service with copies of this lists will be filed.***

                                                            */s/ Jeff Carruth*
                                                          JEFF CARRUTH

## ECF NOTICE LIST

**24-40605 Notice will be electronically mailed to:**

Elizabeth Nicolle Boydston on behalf of Debtor Remarkable Healthcare of Carrollton, LP
lboydston@gutnicki.com

Lynn Hamilton Butler on behalf of Creditor Alleon Capital Partners, LLC
lynn.butler@huschblackwell.com,
penny.keller@huschblackwell.com;christine.deacon@huschblackwell.com;ryan.burgett@huschblackwell.com

Jeff Carruth on behalf of Creditor KRS Carrollton, LLC
jcarruth@wkpz.com,
jcarruth@aol.com;atty_carruth@trustesolutions.com;ATTY_CARRUTH@bluestylus.com;carruthjr87698@notify.bestcase.com

Jeff Carruth on behalf of Creditor Kilgore Property Management LLC
jcarruth@wkpz.com,
jcarruth@aol.com;atty_carruth@trustesolutions.com;ATTY_CARRUTH@bluestylus.com;carruthjr87698@notify.bestcase.com

Buffey E. Klein on behalf of Creditor Alleon Capital Partners, LLC
buffey.klein@huschblackwell.com, tanya.adams@huschblackwell.com;buffey-klein-8494@ecf.pacerpro.com

Julie Anne Parsons on behalf of Creditor The County of Denton, Texas
jparsons@mvbalaw.com, kalexander@mvbalaw.com;theresa.king@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Julie Anne Parsons on behalf of Creditor The County of Guadalupe, Texas
jparsons@mvbalaw.com, kalexander@mvbalaw.com;theresa.king@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Alexandria Rahn on behalf of Debtor Remarkable Healthcare of Carrollton, LP
arahn@gutnicki.com, docket@gutnicki.com;1694884420@filings.docketbird.com

Whitney Tharpe on behalf of Creditor United States Department of Health and Human Services
whitney.tharpe@usdoj.gov, guadalupe.garcia@usdoj.gov

John Kendrick Turner on behalf of Creditor City of Carrollton
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner on behalf of Creditor Dallas County
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner on behalf of Creditor Lewisville ISD
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John Kendrick Turner on behalf of Creditor Tarrant County
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

US Trustee
USTPRegion06.TY.ECF@USDOJ.GOV

**REGULAR MAIL LIST / MATRIX**

<mark>Mailing matrix to be supplied</mark>

# EXHIBIT K100 LOAN DOCUMENTS

<mark>DRAFT ——</mark> PROMISSORY NOTE

$_____.00                                                                                               March ___, 2024

   **THIS PROMISSORY NOTE** (this "*Note*") is made as of _____, 2024 (the "*Effective Date*") by **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC**, each a Texas limited liability company (collectively the "*Borrowers*") for the benefit of _____ ("*Lender*") in connection with that certain loan in an amount up to _____ and No/100 Dollars ($_____.00) (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

   Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Facilities*").  The Principal Amount is loaned and may be used by the Borrowers as working capital at the Facilities.

   For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

   The Principal Amount and accrued interest shall be due and payable _____ (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full.  There shall be no prepayment penalty.

   1. **Agreement**.  This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender.  The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note.  The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

   2. **Security for Note**.  Borrowers acknowledge that this Note is secured by a First Lien Deed of Trust, Assignments of Rent and Leases and Security Agreement and Financing Statement (the "*Deed of Trust*"), dated the same date as this Note, executed by Borrowers for the benefit of Lender.  The Deed of Trust and any other instruments that secure the payment of this Note are collectively referred to as the "*Security Instruments*".

   3. **Interest Provisions**.

(a) <u>Rate</u>. The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein. Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b) <u>Maximum Lawful Interest</u>. The term "***Maximum Lawful Rate***" means the maximum rate of interest and the term "***Maximum Lawful Amount***" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note. If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c) <u>Excess Interest</u>. At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender. If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers. This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

(d) <u>Interest After Default</u>. At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "***Default Interest Rate***" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e) <u>Daily Computation of Interest</u>. To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be). If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days. In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4. **Default Provisions**.

(a) <u>Events of Default and Acceleration of Maturity</u>. Borrowers agree that an "***Event of Default***" (herein so called) shall exist under this Note if: (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any other indebtedness of Borrowers to Lender is not paid when due; (iii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iv) if Borrowers: (A) commences any bankruptcy case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or

2
Promissory Note

its debts under any debtor relief laws; (B) is named in any involuntary bankruptcy case, proceeding or other action commenced against it, which seeks to have an order for relief entered against it, as debtor, or seeks reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors and (a) fails to obtain a dismissal of such case, proceeding or other action within sixty (60) days of its commencement; (b) converts the case from one chapter of the Federal Bankruptcy Code to another chapter; or (c) is the subject of an order for relief; or (d) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender; (vi) Borrowers is liquidated, terminated, dissolved, or fails to maintain good standing in the State of Texas.

(b) <u>Due on Sale Clause</u>. Lender shall have the right, at its sole option, to declare this Note immediately due and payable irrespective of the Maturity Date specified herein, upon the sale, transfer, conveyance or assignment of title of the Property, either pursuant to the purchase option or otherwise.

(c) <u>Waiver By Borrowers</u>. BORROWERS AND ALL OTHER PARTIES LIABLE FOR THIS NOTE WAIVE DEMAND, NOTICE OF INTENT TO DEMAND, NOTICE OF DEFAULT, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST, NOTICE OF PROTEST, GRACE, NOTICE OF DISHONOR, NOTICE OF INTENT TO ACCELERATE MATURITY, NOTICE OF ACCELERATION OF MATURITY, AND DILIGENCE IN COLLECTION. THE MAKER OF THIS NOTE WAIVES AND AGREES TO ONE OR MORE EXTENSIONS FOR ANY PERIOD OR PERIODS OF TIME, AND ANY PARTIAL PAYMENTS, BEFORE OR AFTER MATURITY, WITHOUT PREJUDICE TO THE HOLDER OF THIS NOTE. EACH MAKER WAIVES NOTICE OF ANY AND ALL RENEWALS, EXTENSIONS, REARRANGEMENTS, AND MODIFICATIONS OF THIS NOTE.

(d) <u>Non-Waiver by Lender</u>. Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

(e) <u>Other Remedies Not Required</u>. Borrowers may be required to pay this Note in full without the assistance of any other party, or any collateral or security for this Note. Lender shall not be required to mitigate damages, file suit, or take any action to foreclose, proceed against, or exhaust any collateral or security in order to enforce payment of this Note. The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(f) <u>Attorney's Fees</u>. If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender. This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

3

Promissory Note

5.  **Miscellaneous Provisions**.

(a) <u>Subsequent Holder</u>. All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b) <u>Transfer</u>. Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants. Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c) <u>Other Parties Liable</u>. All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d) <u>Successors and Assigns</u>. The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e) <u>No Duty or Special Relationship</u>. Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers. If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f) <u>Modifications</u>. Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

(g) <u>Application of Payments</u>. Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h) <u>Entire Agreement</u>. Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

4

Promissory Note

(i) <u>Borrowers' Address for Notice</u>. All notices required to be sent by Lender to Borrowers shall be sent by United States Postal Service, postage prepaid, to Borrowers' address at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903.

(j) <u>Lender's Address for Payment</u>. All sums payable by Borrowers to Lender shall be paid at _____.

(k) <u>Partial Invalidity</u>. The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l) <u>Business Use</u>. Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m) <u>Chapter 346 Not Applicable</u>. It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n) <u>Applicable Law; Venue & Jurisdiction</u>. THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS. In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas. Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

**BORROWERS**:

**KRS CARROLLTON, LLC**,
**KRS DALLAS, LLC**, and
**KRS FORT WORTH, LLC**,
each a Texas limited liability company

By:   KTFW – TX, LLC,
      a Wyoming limited liability company,
      its Manager


      By:   _____
            Joshua Kilgore, Authorized Agent

Promissory Note – Signature Page

**EXHIBIT K101**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| Remarkable Healthcare of Carrollton, LP *et al.* | § § | Case No. 24-40605 |
| Debtor(s). | § | |

**ORDER GRANTING FIRST AMENDED MOTION OF DEBTOR TO (I) ENTER INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (RE: DOCKET NO. \_\_\_\_)**

On this day came on for consideration the *Emergency Motion to (I) Approve Debtor In Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (the* (Docket No. \_\_\_\_) (the "DIP Motion") filed herein on March 26, 2024 by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and Kilgore Property Management LLC (collectively, "Kilgore") seeking entry of an order for, *inter alia*:

1. authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority term loans (the "DIP Loans") in an aggregate maximum amount of $_____ (the "DIP Commitment"), from Kilgore (as lender, agent, and collateral agent, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2. authorizing each of Remarkable Healthcare of Carrollton, LP (-5960), Remarkable Healthcare of Dallas, LP (-3418), Remarkable Healthcare of Fort Worth (-1692), and Remarkable Healthcare, LLC (5142) (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the DIP Credit Agreement and other DIP Loan Documents;

3. authorizing the Debtor to use the proceeds of the DIP Loans, as permitted in the DIP Loan Documents;

4. providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate;

5. authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) in **all pre-petition and post-petition accounts receivable of the Debtor** (the "DIP Collateral") to secure pay of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral; and

**EXHIBIT K101**

6. vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

8. granting the Debtor such other and further relief as is just and proper.

*The Court takes judicial notice of the record and the extreme emergency under which the Motion is presented and the Order is considered.*

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1. On _____ (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

2. This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

3. An immediate and ongoing need exists for the Debtor to obtain postpetition financing in the amount of the DIP Commitment to reorganize under Bankruptcy Code Chapter 11, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

4. The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Commitment on terms more favorable than those provided by the DIP Lender.

5. *under all of the current and exigent circumstances,* sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

6. The terms of the DIP Loans, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to

**EXHIBIT K101**

    all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and rights and remedies of the DIP Lender.

7. The terms of the DIP Loans, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Document.

8. Entry of this Final DIP Order is in the best interests of the Debtor's estate and its various stakeholders because it will, inter alia, allow the Debtor to reorganize under Bankruptcy Chapter 11 of the Code; and

9. The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents.

10. By stipulation with the DIP Lender, the DIP Lender is not a "single asset real estate" type of debtor was defined in Code § 101(51B).

**IT IS THEREFORE ORDERED THAT:**

1. Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED as set forth below.

2. The execution and delivery of the DIP Credit Agreement and all other DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is ==*authorized, directed, and empowered*== to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3. The Debtor is authorized to borrow up to the full amount of the DIP Commitment in DIP Loans in one or more DIP Draws on the terms of the DIP Loan Documents, without application to or further order by the Court.

4. All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims, without application to or further order by the Court.

5. All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate (expressly including all DIP Collateral).

6. The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and

       conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1).

7. So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8. The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date.

9. An Event of Default shall exist during the occurrence and continuation of each of the events so identified in the DIP Loan Documents.

10. Notwithstanding Code § 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

11. Furthermore, while any Event of Default has occurred and is continuing, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a. terminating the automatic stay with respect to any DIP Collateral;

    b. terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c. appointing an examiner or Chapter 11 trustee; and

    d. converting the Debtor's Case to Chapter 7;

    provided that if the DIP Lender so moves or applies, the Debtor shall be limited to contesting solely whether the Event of Default has occurred and/or is continuing, and the Debtor has expressly waived the right to contest such relief whatsoever beyond the foregoing limitation.

12. In addition to the rights and remedies enumerated in Paragraphs 11 and 12, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

**EXHIBIT K101**

13. The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

14. Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court. The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

15. This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan (and, to the extent not satisfied in full in cash on the effective date thereof, the DIP Obligations shall not be discharged under or by entry of such order, notwithstanding Code § 1141(d)), (x) appointing an examiner or Chapter 11 trustee, (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

16. In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

17. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

18. The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

19. ==Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.==

20. For the avoidance of doubt, the DIP Lien does not extend to D.H.S. recoupment rights to overpayments.

21. **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE AND PAYROLL RECORDS ACCESS TO KILGORE.**

[signature block for the Court]

Submitted by:
Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR BARNSTORM RESOURCES, LLC,
DEBTOR AND DEBTOR IN POSSESSION