**EXHIBIT K101**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| Remarkable Healthcare of Carrollton, LP *et al.* | § § | Case No. 24-40605 |
| Debtor(s). | § | |

**ORDER GRANTING FIRST AMENDED MOTION OF DEBTOR TO (I) ENTER INTO DEBTOR POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (RE: DOCKET NO. \_\_\_\_)**

On this day came on for consideration the *Emergency Motion to (I) Approve Debtor In Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (the* (Docket No. \_\_\_\_) (the "DIP Motion") filed herein on March 26, 2024 by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and Kilgore Property Management LLC (collectively, "Kilgore") seeking entry of an order for, *inter alia*:

1. authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority term loans (the "DIP Loans") in an aggregate maximum amount of $_____ (the "DIP Commitment"), from Kilgore (as lender, agent, and collateral agent, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2. authorizing each of Remarkable Healthcare of Carrollton, LP (-5960), Remarkable Healthcare of Dallas, LP (-3418), Remarkable Healthcare of Fort Worth (-1692), and Remarkable Healthcare, LLC (5142) (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the DIP Credit Agreement and other DIP Loan Documents;

3. authorizing the Debtor to use the proceeds of the DIP Loans, as permitted in the DIP Loan Documents;

4. providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate;

5. authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) in **all pre-petition and post-petition accounts receivable of the Debtor** (the "DIP Collateral") to secure pay of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral; and

6. vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

8. granting the Debtor such other and further relief as is just and proper.

*The Court takes judicial notice of the record and the extreme emergency under which the Motion is presented and the Order is considered.*

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1. On _____ (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

2. This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

3. An immediate and ongoing need exists for the Debtor to obtain postpetition financing in the amount of the DIP Commitment to reorganize under Bankruptcy Code Chapter 11, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

4. The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Commitment on terms more favorable than those provided by the DIP Lender.

5. *under all of the current and exigent circumstances,* sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

6. The terms of the DIP Loans, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to

**EXHIBIT K101**

        all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and rights and remedies of the DIP Lender.

7. The terms of the DIP Loans, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Document.

8. Entry of this Final DIP Order is in the best interests of the Debtor's estate and its various stakeholders because it will, inter alia, allow the Debtor to reorganize under Bankruptcy Chapter 11 of the Code; and

9. The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents.

10. By stipulation with the DIP Lender, the DIP Lender is not a "single asset real estate" type of debtor was defined in Code § 101(51B).

**IT IS THEREFORE ORDERED THAT:**

1. Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED as set forth below.

2. The execution and delivery of the DIP Credit Agreement and all other DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is ***authorized, directed, and empowered*** to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3. The Debtor is authorized to borrow up to the full amount of the DIP Commitment in DIP Loans in one or more DIP Draws on the terms of the DIP Loan Documents, without application to or further order by the Court.

4. All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims, without application to or further order by the Court.

5. All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate (expressly including all DIP Collateral).

6. The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and

conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1).

7. So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8. The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date.

9. An Event of Default shall exist during the occurrence and continuation of each of the events so identified in the DIP Loan Documents.

10. Notwithstanding Code § 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

11. Furthermore, while any Event of Default has occurred and is continuing, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a. terminating the automatic stay with respect to any DIP Collateral;

    b. terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c. appointing an examiner or Chapter 11 trustee; and

    d. converting the Debtor's Case to Chapter 7;

    provided that if the DIP Lender so moves or applies, the Debtor shall be limited to contesting solely whether the Event of Default has occurred and/or is continuing, and the Debtor has expressly waived the right to contest such relief whatsoever beyond the foregoing limitation.

12. In addition to the rights and remedies enumerated in Paragraphs 11 and 12, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

**EXHIBIT K101**

13. The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

14. Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court.  The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

15. This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan (and, to the extent not satisfied in full in cash on the effective date thereof, the DIP Obligations shall not be discharged under or by entry of such order, notwithstanding Code § 1141(d)), (x) appointing an examiner or Chapter 11 trustee, (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

16. In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

17. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

18. The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

19. Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

**EXHIBIT K101**

20. For the avoidance of doubt, the DIP Lien does not extend to D.H.S. recoupment rights to overpayments.

21. **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE AND PAYROLL RECORDS ACCESS TO KILGORE.**

[signature block for the Court]

Submitted by:
Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR BARNSTORM RESOURCES, LLC,
DEBTOR AND DEBTOR IN POSSESSION