IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 11 |
| REMARKABLE HEALTHCARE OF CARROLLTON LP, ET AL.,[1] | § § § | CASE NO. 24-40605 |
| | § § | (Jointly Administered) |
| DEBTORS. | § § | |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO (I) REJECT UNEXPIRED REAL PROPERTY LEASE,
EFFECTIVE AS OF APRIL 19, 2024; and (II) GRANTING RELATED RELIEF**

**21-DAY NEGATIVE NOTICE – LBR 9007(a)**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion/Objection/Application unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading _WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE_ shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to §§ 105(a) and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 6006 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

1

"**Bankruptcy Rules**"), authorizing the Debtors (i) to reject the Fort Worth Lease (as defined below) effective as of April 19, 2024 (the "**Rejection Date**"), and (ii) granting certain related relief. In support of this Motion, the Debtors filed contemporaneously herewith, a *Notice of Intent to Abandon Estate Assets* (the "**Notice**"). In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a) and 365 and Bankruptcy Rules 6006.

## BACKGROUND

**A. GENERAL BACKGROUND**

4. On March 20, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief and electing treatment under subchapter V of chapter 11 of the Bankruptcy Code (the "**Cases**").

5. The Debtors continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6. On March 26, 2024, the Office of the United States Trustee for the Eastern District of Texas appointed a Subchapter V trustee in the Cases (the "**Subchapter V Trustee**").

7. The Debtors were formed in Texas from 2010 to 2013 and operate skilled nursing facilities with hundreds of resident patients and employees located across Texas (the "**Company**").

8. The Cases are intended to provide the Debtors and their estates a forum for the orderly and efficient sale and transition of certain assets and reorganization of other assets and satisfaction of outstanding obligations, including working to refinance or restructure their debts. The Debtors believe this process will be in the best interests of their creditors and estates. Throughout these Cases, the Debtors will continue to work on refinancing options while also implementing cost-cutting measures and profit-centered efficiencies to stabilize their businesses and increase growth and liquidity to repay their debts over time through a plan of reorganization.

B. **DEBTOR REMARKABLE HEALTHCARE OF FORT WORTH'S LEASE OBLIGATIONS**

9. Debtor Remarkable Healthcare of Fort Worth, LP ("**Tenant**") and WAG Development, Ltd. ("**Prior Landlord**") are parties to the Lease Agreement and Security Agreement, dated December 13, 2010 (the "**Fort Worth Lease**"), which was assumed in 2022 by KRS Fort Worth, LLC (the "**Landlord**").

10. As of the Petition Date, Tenant was in arrears on its rent obligation to Landlord under the Fort Worth Lease.

11. On March 25, 2024, this Court held a hearing where Landlord repeated once again that its goal "for the last six months" is for "the McPikes [to] step aside and permit Mr. Kilgore to manage the properties." Hearing Transcript from March 25, 2024 at p.7. This Court sua sponte lifted the automatic stay to allow Landlord to exercise its rights and remedies against Tenant.

12. On or about March 29, 2024, Landlord informed Debtors that Pure Health would be taking over operations at three of Debtors' facilities (Fort Worth, Dallas, and Carrollton).

13. On April 3, 2024, CMS served Tenant a letter notifying Tenant that its provider agreements with CMS and the Medicare program would be terminated effective April 18, 2024.

14. The Debtors immediately met with CMS and its numerous counsels to (a) advise CMS that West Wharton Hospital District ("**WWHD**") had become the new owner of the Tenant's

3

facility (the "**Facility**") effective March 1, 2024 and that WWHD had submitted the Change of Ownership ("**CHOW**") to CMS on March 1, 2024, (b) to inform CMS that Landlord was negotiating with Pure Health to take over as operator of the Facility, and (c) to request that CMS reconsider or delay the termination of Tenant's provider agreements until the CHOW to WWHD became effective, which date was estimated to be before May 31, 2024. Unfortunately, the Debtors were unsuccessful in appealing to CMS to delay or reconsider the termination of Tenant's provider agreements, and on April 11, 2024 Landlord and its numerous counsel and Debtors and representatives of Pure Health jointly met with CMS to once again request that CMS reconsider or delay the termination of Tenant's provider agreements and until the CHOW to WWHD became effective. CMS and its counsel advised Landlord's counsel on April 12, 2024 that CMS was unwilling to reach any agreement to extend the termination deadline.

15. On April 17, 2024, Landlord filed a declaratory action in the United States District Court for the Northern District of Texas, Cause No. 4:24-CV-00337 and contemporaneously filed an adversary proceeding before this Court, Adv. Pro. 24-04021.

16. On April 18, 2024, CMS terminated Tenant's provider agreements.

17. Between April 10, 2024 and April 15, 2024, Tenant complied with CMS's requirements to begin the process to move all residents and patients from the Facility and initiate the shutdown process, however Landlord demanded that Tenant cease all efforts.

18. Landlord brought in personnel from Pure Health to the Facility and Landlord's representative Mr. Joshua Kilgore and Pure Health informed the Facility residents and patients (and employees) that Pure Health was taking over operations at the Facility, that no further residents needed to move or relocate, and that all employees' jobs were safe.

4

19. Between April 15, 2024 and May 2, 2024, representatives of Landlord and Pure Health were in the Facility on a daily basis directing Tenant which employees to retain, directing Tenant not to shutdown the Facility, talking to residents and employees, and acting as though Landlord and Pure Health were managing the Facility.

20. Sometime between April 19 and April 24, Pure Health and Landlord decided that all of the residents at the Facility *should* be relocated, which decision was carried out by Tenant.

21. When this Court learned that no interim or replacement operator or manager had taken over operations of the Facility by April 24, 2024, this Court ordered all parties to participate in an in-person meeting ("**Mediation**") to hammer out final terms on transitioning the operations of the Facility (and the Dallas and Carrollton facilities).

22. The Mediation took place on April 25, 2024, and at the Mediation, Pure Health informed the Parties that it did not intend to be the long-term manager/operator of the Dallas facility, but that it did intend to become the long-term manager/operator of the Facility and the Carrollton facility. Accordingly, the Parties agreed to:

   i. an agreed receivership over the operations of the Dallas facility; and

   ii. agreed interim management (followed by a 363 sale) of the operations of the Facility and the Carrollton facility by Pure Health.

23. On April 26, 2024, the Parties announced their agreement to this Court, and this Court ordered certain provisions to be included in any orders relating to the Parties' agreement on the interim management of the Facility and the Carrollton facility.

24. As of April 26, 2024, all residents and patients at the Facility were relocated.

25. Landlord and Pure Health held a meeting at the Facility and instructed all employees to remain at the Facility and informed the employees that they would be paid.

26. Despite there being no residents or patients at the Facility, on or about April 29, 2024, Landlord and Pure Health instructed all employees at the Facility to clean the Facility and continued to assure the employees that their positions were secure and their paychecks would be funded.

27. On May 2, 2024, principal of Landlord, Joshua Kilgore, walked into the Facility and terminated all employees, except for four.

28. On May 3, 2024, Debtors and their counsel learned that Pure Health and Landlord were at an impasse and that Pure Health was no longer willing to become interim manager of the Facility or the Carrollton facility nor would Pure Health become receiver over the Dallas facility.

29. No residents or patients are at the Facility. Four employees are still employed at the Facility. And no interim manager is in a position to take over the Facility.

30. Additionally, the Debtors do not have permission from this Court or Alleon Capital Partners to use cash collateral to continue maintaining the Facility or to use cash collateral to effectuate a shutdown.

31. Consequently, the Debtors believe that the Fort Worth Lease is no longer needed for an effective reorganization or sale process and is too costly to the Debtors' estates.

32. The costs of the Fort Worth Lease are a significant burden on the Debtors' estates as the monthly rental amount far exceeds a fair use and occupancy calculation or market rent and, therefore, outweighs the long-term benefit that the Debtors' estates receive from continuing to lease the premises. As such, the Debtors seek to reject the Fort Worth Lease effective as of **April 19, 2024 at 12:01 a.m.**

**RELIEF REQUESTED**

33. By this Motion, the Debtors request entry of an order, substantially in the form of Exhibit A attached hereto, authorizing the Debtors to reject the Fort Worth Lease effective as of April 19, 2024 at 12:01 a.m.

**BASIS FOR RELIEF**

A. BASIS TO REJECT

34. Bankruptcy Code § 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). Courts routinely approve motions to reject executory contracts or unexpired leases if the debtor shows taking such action will benefit the debtor's estate and is an exercise of sound business judgment. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *Stewart Title Guaranty Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)) ("[Section 365(a)] allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."). Accordingly, when courts analyze a debtor's decision to reject an executory contract or an unexpired lease, they typically apply a business judgment standard to determine whether to approve the proposed rejection. *See Bildisco*, 465 U.S. at 52 (recognizing the "business judgment" standard as the traditional test applied to authorize the rejection of executory contracts); *Richmond Leasing Co. v. Capital Bank, N.A.* (*In re Richmond Leasing Co.*), 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that the question [of] whether a lease should be rejected . . . is one of business judgment.") (internal citations omitted); *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D. Tex. 2009) ("The general rule is that the decision to

reject a given contract should be left to the trustee's (or debtor in possession's) sound business judgment.") (internal citations omitted).

35. The "business judgment" test is not a strict standard; it merely requires a debtor to show that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. See *N.L.R.B. v. Bildisco* (*In re Bildisco*), 682 F.2d 72, 79 (3d Cir. 1982) (noting that the "usual test for rejection of an executory contract is simply whether rejection would benefit the estate"), *aff'd*, 465 U.S. 513. Further, "[s]ection 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." *L.R.S.C. Co. v. Rickel Home Ctrs., Inc.* (*In re Rickel Home Ctrs., Inc.*), 209 F.3d 291, 298 (3d Cir. 2000); *see also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (explaining that section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").

36. Furthermore, Bankruptcy Code § 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts generally give great deference to a debtor's decision to abandon property. *See In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Here, the costs of retrieving, marketing, and reselling the abandoned property—the leasehold interest—outweigh any recovery to the Debtors' estates.

37. The Debtors' rejection of the Fort Worth Lease is an appropriate exercise of their business judgment, because rejection will significantly reduce the administrative burden on their estates. The Fort Worth Lease is financially burdensome and no longer necessary to the continued

8

operation of the Debtors' gbusiness. Furthermore, the Debtors believe that the Fort Worth Lease has no marketable value that could be generated through assumption and assignment, as evidenced by Pure Health's inability to negotiate a fair rental price with Landlord. Accordingly, the Debtors' continued performance under the Fort Worth Lease would constitute an unnecessary depletion of value of the Debtors' estates.

## RETROACTIVE RELIEF

38. Bankruptcy Code § 365 is silent as to whether the Court may order rejection to be effective retroactively, however, bankruptcy courts have repeatedly held that they may, in their discretion, approve retroactive rejection. *See, e.g., In re Amber's Store, Inc.*, 193 B.R. 819, 826-27 (Bankr. N.D. Tex. 1996) ("***nothing precludes a bankruptcy court, based on the equities of the case, from approving the . . . rejection of a non-residential real property lease retroactively to an earlier date***") (emphasis added); *In re Cafeteria Operators, L.P.*, 299 B.R. 384 (Bankr. N.D. Tex. 2003) (approving retroactive rejection to the later of the date the motion to reject was filed or the date that the leased spaces were vacated); *In re At Home Corp.*, 392 F.3d 1064, 1065 (9th Cir. 2004), cert. denied 546 U.S. 814 (2005) ("the retroactive date may be earlier than the date on which the landlord retakes possession of the premises"); *In re Thinking Machines Corp.*, 678 F.3d 1021, 1029 (1st Cir. 1995) ("rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *Constant Ltd. Partnership v. Jamesway Corp.* (*In re Jamesway Corp.*), 179 B.R. 33, 37-38 (S.D.N.Y. 1995) (affirming bankruptcy court's retroactive approval of lease rejection); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC* (*In re CCI Wireless, LLC*), 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *In re*

*Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (approving rejection retroactive to the date the motion is filed).

39. In approving the bankruptcy court and district court in *At Home*, the Ninth Circuit approved the use of four factors when determining whether to approve retroactive rejection: (1) how quickly the debtor moved to reject the unexpired lease, (2) whether the hearing was set promptly, (3) whether the debtor was in possession of the premises, and (4) the landlord's motivation for opposing retroactive rejection. *In re At Home Corp.*, 392 F.3d at 1072-75. However, these factors are not exclusive. *See, e.g., In re New Meatco Provisions, LLC*, Case No. 13-22155-PC, 2013 WL 3760129, at *4 (Bankr. C.D. Cal. July 16, 2013), aff'd, Case No. 13-1319, 2014 WL 2446314 (B.A.P. 9th Cir. May 30, 2014) ("there is nothing in either At Home or the line of authority relied upon by the Ninth Circuit in adopting its retroactive lease rejection standard that expressly limits the bankruptcy court's equitable authority to establish a retroactive rejection date no earlier than the motion filing date."). For example, in *In GCP CT School Acquisition, LLC*, 429 B.R. 817, 829 (B.A.P. 1st Cir. 2010), the Bankruptcy Appellate Panel for the Circuit held that a landlord had sufficient and reasonable notice that a trustee intended to reject an unexpired lease where settlement and sale motions were filed.

40. Here, the balance of the equities supports retroactive relief to April 19, 2024. First, the CMS provider agreements terminated on April 18, 2024, meaning the Debtors were no longer able to bill Medicaid or Medicare for any patients still being cared for after April 18, 2024. The Debtors tried to comply with CMS's directive to close the Facility by April 18, 2024, but the Landlord's representative Mr. Kilgore demanded the Debtors cease relocating patients and ordered the Facility employees to remain employed until May 2, 2024, when Mr. Kilgore terminated all but four (4) employees.

41. Looking to the *At Home* factors, the Debtors quickly moved to reject the Fort Worth Lease as soon as they learned on Friday, May 3, 2024 that the proposed interim manager Pure Health was unable to come to agreeable terms with the Landlord and was no longer willing to take over management/operations at any of the Debtors' facilities, let alone assume the Fort Worth Lease. Thus, the Debtors learned that continuing to accrue obligations on and assuming the Fort Worth Lease would not be in the Debtors' best interest. The Debtors complied with local rules and set this Motion for 21-day negative notice and intend to obtain a hearing date as soon as possible. As to the third and fourth factors, the Debtors and their operations no longer remain in the Facility and nothing of value of the Debtors, other than the properly listed on Exhibit B, remains in, on, at, or within the Facility building.

42. Accordingly, Debtors wish to reject the Fort Worth Lease retroactively to April 19, 2024 at 12:01 A.M. (CST) and abandon the Facility building, except for the property listed on Exhibit B, to the Landlord.

## **RULE 6004(H) WAIVER**

43. In addition to the retroactive relief requested and described herein, the Debtors also respectfully request that any order approving this Motion be effective immediately, thereby waiving the 14-day stay period imposed by Bankruptcy Rule 6004(h).

## **NOTICE**

44. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Eastern District of Texas; (b) the Office of the Attorney General of Texas; (c) the Debtors' 20 largest unsecured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) counsel to the Landlord; (f) the Subchapter V Trustee; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.

45. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

## NO PRIOR REQUEST

46. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially similar to the form attached as Exhibit A, granting (i) the relief requested herein and (ii) such other and further relief as it deems just and proper.

Dated: May 6, 2024
Dallas, Texas

**GUTNICKI LLP**

/s/ Liz Boydston
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (admitted *Pro Hac Vice*)
45 Rockefeller Plaza
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

       I, the undersigned, hereby certify that on May 6, 2024, I caused to be served the foregoing Motion via CM/ECF email upon all parties accepting said service, including (a) the Office of the United States Trustee for the Eastern District of Texas; (b) the Office of the Attorney General of Texas; (c) the Debtors' 20 largest unsecured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) counsel to the Landlord; (f) the Subchapter V Trustee; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (h) any person with a known lien, claim, encumbrance, or interest in the Fort Worth Lease. To the extent one of the above has not consented to service via CM/ECF, I caused the foregoing to be served via U.S.P.S.

       /s/*Liz Boydston*