UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REMARKABLE HEALTHCARE OF | § | Case No. 24-40605 |
| CARROLLTON, LP *et al.* | § | |
| | § | |
| Debtor(s). | § | |

## CERTIFICATION OF COUNSEL REGARDING PROPOSED ORDERS FOR FIRST PAYROLL DIP FINANCING MOTION AND SECOND PAYROLL DIP FINANCING MOTION (RE: DOCKET NOS. 69, 70)

**TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:**

KRS Dallas LLC, KRS Fort Worth LLC, KRS Fort Worth LLC, and KRS Seguin LLC, (collectively, the "KRS Landlords" or "KRS") file this *Certification of Counsel Regarding Proposed Orders for First Payroll DIP Financing Motion and Second Payroll DIP Financing Motion* (Re: Docket Nos. 69 and 70, respectively, "DIP Motion-01" and "DIP Motion-02") and in support thereof would show to the Court the following.

1.      On April 30, 2024, during the time surrounding the hearing scheduled that day on DIP Motion-01 and DIP Motion-02, the Debtors and KRS met through counsel to work out the form of the proposed orders and accompanying promissory notes to resolve DIP Motion-01 and DIP Motion-02.

2.      KRS was willing to work on and reach resolution with the Debtors, even though the Debtors never filed a formal objections to DIP Motion-01 and/or DIP Motion-02, and even in light of the various other disputes between the parties.

3.      From the April 30, 2024 hearing, the final hearing then was continued to May 21, 2024 to determine the question of whether Remarkable Healthcare of Seguin LP ("RH-Seguin") should be included as a borrower.

4.      On May 21, 2024, the Court conducted a final hearing on the DIP Motion-01 and the DIP Motion-02.  That hearing was originally scheduled to determine the question of whether RH-Seguin should be included as a borrower with the other three operating debtors.

5.      On May 21, 2024, the Debtors, KRS, and Alleon Capital Partners, LLC ("Alleon") announced that the borrower identity question had been resolved such that RH-Seguin would not be included, and that the parties required some additional time to finalize the proposed orders and accompanying promissory notes.

6.      The hearing on DIP Motion-01 and DIP Motion-02 thus was continued to May 31, 2024.

7.      Prior to May 31, 2024 hearing, final versions of the proposed orders and accompanying promissory notes were circulated to Ms. Boydston, counsel for the Debtors, still reflecting the form and substance of the documents agreed to between the Debtors and KRS, but awaiting the final language between KRS and Alleon as to Paragraph No. 6 of each order.  *See* **Ex. K037**, July 3, 2023 email, attached hereto, and May 31, 2024 emails attached thereto.

8.      On May 31, 2024, the Court then conducted the last of the several hearings regarding the DIP Motion-01 and the DIP Moton-02, and the parties announced that the form of the proposed orders and accompanying promissory notes been finalized except with respect to language between KRS and Alleon regarding the control, allocation, and/or timing of cash to pay the senior liens granted to KRS for DIP 001 and DIP 002 that would be included in Paragraph No. 6 of  each order, which paragraph addresses the Code § 364 liens granted to KRS.

9.      KRS and Alleon announced that they would be able to work out the language and would ask for a subsequent hearing only if KRS and Alleon could not work out the Paragraph No. 6 language.

10.     The discussions between KRS and Alleon as to the Paragraph No. 6 language were near final conclusion as of July 2, 2024, but the rulings of the Court with respect to cash collateral, the Alleon cash sweeps, and the overall cash management of the case that changed with that hearing also changed the circumstances contemplated by the Paragraph No. 6 as then in circulation such that new language was crafted for Paragraph No. 6.

11.     Accordingly, early on the morning of July 3, 2024, KRS re-circulated the May 31, 2024 versions of the orders and notes but with final language proposed for Paragraph No. 6, and with edits only to Paragraph No. 6 affect only KRS and Alleon.  *See* Ex. K037.

12.     On July 3, 2024, Alleon responded by telephone that Alleon accepted the revised Paragraph No. 6 language.

13.     As of this filling, the Debtors have not responded to the July 3, 2024 email (Ex. K037) to finalize the orders.

14.     Because KRS has prepared and circulated the same documents as circulated on May 31, 2024 that were the basis of the announcement made by the partes on that day, with the limited exception(s) of the revised Paragraph No. 6 language that affects only KRS and Alleon, KRS has prepared version of the orders and accompanying notes without the "agreed to" signatures of blocks of the three sets of counsel.  To reiterate, Alleon has agreed to July 3 changes, which July 3 changes affect only KRS and Alleon.

---

15.     The only substantive changes made between the orders in circulation on May 31, 2024 and the basis of the announcements of the parties on that day are shown in the redlines attached hereto as **Exh. K040** and **Exh. K041**.

16.     Accordingly, KRS presents for entry the proposed orders filed on the docket on July 6, 2024 concurrently with the filing of this Certification, and attached hereto as **Exh. K042** and **Exh. K043** to resolve Docket No. 69 and Docket No. 70.

Dated:  July 8, 2024                    Respectfully submitted:

                                        WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
                                        By:_____*/s/ Jeff Carruth*_____
                                            JEFF CARRUTH (TX SBN:. 24001846)
                                            3030 Matlock Rd., Suite 201
                                            Arlington, Texas 76105
                                            Telephone: (713) 341-1158
                                            E-mail:  jcarruth@wkpz.com

                                        ATTORNEYS FOR
                                        KRS CARROLLTON LLC, KRS DALLAS LLC, KRS
                                        SEGUIN, LLC, KRS FORT WORTH LLC, AND
                                        KILGORE PROPERTY MANAGEMENT LLC

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on July 8, 2024 by electronic notice to all ECF users who have appeared in this case to date.

                        _____*/s/ Jeff Carruth*_____
                              JEFF CARRUTH

**EXHIBIT K037**

## Note:

**Certain dates will reflect the date of the creation of the .pdf of the file due to date codes in the original document.**

| | |
|---|---|
| **From:** | Jeff Carruth |
| **To:** | lboydston@gutnicki.com; Klein, Buffey |
| **Cc:** | Max Schlan; Alexandria Rahn; Butler, Lynn; Jeff Carruth |
| **Subject:** | Remarkable - payroll DIP 001 and 002 final orders |
| **Date:** | Wednesday, July 3, 2024 6:38:00 AM |
| **Attachments:** | Remarkable - DIP motion payroll 001 (March 22 payroll).msg |
| | dip motion payroll 002 order 003 20240703.0546 4863-3493-0126 v.1.pdf |
| | image001.png |
| | image002.png |
| | dip motion payroll 001 order 003 20240703.0610 4890-7361-4542 v.2.pdf |

Liz and Buffey –

Recall that Liz and I concluded the DIP orders and loan docs c. May 31, and the sigle remaining open issue was that between Alleon and KRS-xx on how to allocate the priming lien, as we all announced on the record May 31.  For reference, I attach the May 31 emails with all the docs payroll 001 and payroll 002.

In light of where matters were left at the end of the July 2 (yesterday) hearings, here the final orders for payroll 001 and 002.  I have effectively tabled / preserved the allocation issue  at sec. 6.b of the payroll 001 order.   I have also made a small fix in the order for payroll 002 as shown below.

And, Liz, I took off the GP part of the signature block, too. Since these are debtors in possession and this is court order, I can live without GP signature too.

Please confirm that I may upload these orders today.  Thank you.

---

| **Fix to order payroll 001** |
|---|

DIP·Lender,·and·which·have·been·automatically·perfected·notwithstanding·any· notice·or·recordation·requirements·of·non-bankruptcy·law·(collectively,·the·"DIP· Liens"),·comprising·of·Code·§°364(d)(1),·senior·super-priority·DIP·Liens·on·all·DIP· Collateral,·and·to·the·extent·such·lien·is·insufficient·to·repay·the·indebtedness,·an· allowed·super-priority·administrative·expense·claims·under·Code·§364(c)(1).¶

a.   →   For·the·avoidance·of·doubt,·the·DIP·Liens·granted·to·the·DIP·Lender·in·this· Order· for· the· first· payroll· loan· prime· any· and· all· of· the· super-priority· replacement·and/or·adequate·liens·granted·to·Alleon·Capital·Partners·LLC· in·one·or·more·other·orders·including·the·various·cash·collateral·orders· entered·in·this·case.¶

6.b.   →   The·allocation·of·any·cash,·cash·collateral,·and/or·proceeds·of·receivables· between·Alleon·and·the·DIP·Lender,·as·it·pertains·to·this·DIP·Loan·and/or· any·other·loans·provided·by·the·DIP·Lender,·may·the·be·subject·of·one·or· more·other·orders·of·the·Court.¶

| **Fix to order payroll 002** |
|---|

DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code §°364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1), *provided*, however, ~~but only to the extent that~~ such position is a junior super-priority position to ~~any~~the cash collateral replacement liens granted to *Alleon* in the instant case as to any and all receivables of the Debtors including Medicare, Medicaid, and/or similar payments. ¶



Jeff Carruth

**W K P Z**
Weycer, Kaplan, Pulaski & Zuber, P.C.

*Trusted Legal Advisors Since 1976*

DALLAS • HOUSTON • AMARILLO
*D.* (713) 341-1158
*M.* (214) 552-7242
*F.* (866) 666-5322

jcarruth@wkpz.com
www.wkpz.com

This communication and any attachments to it are confidential and intended solely for the use of the person to whom they are addressed. If you have received this e-mail in error, please notify us by telephone immediately at (713) 961-9045, and you are notified that any disclosure, distribution, or the taking of any action in reliance on the contents of this information is prohibited. Nothing in this message may be construed as a digital or electronic signature of any employee of Weycer, Kaplan, Pulaski & Zuber, P.C. ("WKPZ"). WKPZ automatically blocks e-mails containing objectionable language or suspicious content. Messages sent to WKPZ should be considered received only if confirmed by a return receipt. The IRS does not allow the use of informal tax advice, such as this communication, to avoid tax penalties. WKPZ expressly reserves and maintains any attorney-client privilege or work-product protections in this communication.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70)**

On May 31, 2024, the Court conducted a further hearing regarding the *Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll)* (Docket No. 70) (the "Motion" or "DIP Motion-02") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than **$224,600.00** (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K102.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) ***in all pre-petition and post-petition accounts receivable of each Debtor*** (the

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) Page 4

EXHIBIT K037 Page 4

"DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-02 is GRANTED on a **FINAL** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 29) — 4601574294 Page 5

EXHIBIT K037 Page 5

7.  The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8.  The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.  Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10. The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

**IT IS THEREFORE ORDERED THAT:**

1.  Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2.  The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.  The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.  All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.  All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

6.  The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the

DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1), *provided, however, such position is a junior super-priority position to any cash collateral replacement liens granted to Alleon in the instant case as to any and all receivables of the Debtors including Medicare, Medicaid, and/or similar payments.*

7.      So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.      The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.      As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10.     If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "Notice Period").

11.     Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.     Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a.      terminating the automatic stay with respect to any DIP Collateral;

    b.      terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c.      appointing an examiner or Chapter 11 trustee; and/or

    d.      converting the Debtor's Case to Chapter 7.

13.     In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 29) - 4902337.294 Page 7**

EXHIBIT K037 Page 7

any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.   The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.   Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender.  Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court.  The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.   This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.   In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.   The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.   Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 29) 4001(b)(37-294 Page**

EXHIBIT K037 Page 8

21. **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22. **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED: _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

*{continued on following sheet}*

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 12)**

EXHIBIT K037 Page 9

**AGREED AS TO FORM:**

GUTNICKI LLP
By:___/s/ Liz Boydston*_____
     Liz Boydston (SBN 24053684)
     Alexandria Rahn (SBN 24110246)
     10440 N. Central Expy., Suite 800
     Dallas, Texas 75231
     Telephone: (469) 935-6699
     Facsimile: (469) 895-4413
     lboydston@gutnicki.com
     arahn@gutnicki.com
     -and-
     Max Schlan
     45 Rockefeller Plaza
     Suite 2000
     New York, New York 10111
     Telephone: (646) 825-2330
     Facsimile: (646) 825-2330
     mschlan@gutnicki.com

**ATTORNEYS FOR**
**REMARKABLE HEALTHCARE OF DALLAS, LP**
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
**REMARKABLE HEALTHCARE OF CARROLLTON, LP**
**REMARKABLE HEALTHCARE OF SEGUIN, LP**

HUSCH BLACKWELL, LLP
By: ___/s/ Buffey E. Klein*_____
     Buffey E. Klein (State Bar No. 24032515)
     Buffey.Klein@huschblackwell.com
     1900 N. Pearl Street, Suite 1800
     Dallas, Texas 75201
     (214) 999-6152; fax (214) 999-6170

     Lynn Hamilton Butler (State Bar No. 03527350)
     Lynn.butler@huschblackwell.com
     HUSCH BLACKWELL LLP
     111 Congress Avenue, Suite 1400
     Austin, Texas 78701
     (512) 472-5456; fax (512) 479-1101

**ATTORNEYS FOR ALLEON CAPITAL PARTNERS LLC**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By:___*/s/ Jeff Carruth*_____
   JEFF CARRUTH (TX SBN: 24001846)
   2608 Hibernia, Suite 105
   Dallas, Texas 75204-2514
   Telephone: (713) 341-1158
   Fax: (713) 961-5341
   E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR:**

**KILGORE PROPERTY MANAGEMENT LLC**
**KRS CARROLLTON, LLC**
**KRS DALLAS, LLC**
**KRS FORT WORTH, LLC**
**KRS SEGUIN, LLC**

*\* Signature by permission by /s/ Jeff Carruth*

**PROMISSORY NOTE AND SECURITY AGREEMENT**
**(DIP PAYROLL 002 — EXHIBIT K102.03)**

**$224,600.00**                                                                                                **April 5, 2024**

    **THIS PROMISSORY NOTE** (this "*Note*") is made **EFFECTIVE AS OF APRIL 5, 2024** (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC,** and **KRS Seguin, LLC,** each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to **$224,600.00** (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

    Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

    For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

    The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or **August 17, 2024** (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full. There shall be no prepayment penalty.

---

    *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrollton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

---

    1.   **Agreement**. This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 1**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

**EXHIBIT K102.03**

2.   **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") _**in all pre-petition and post-petition accounts receivable of each Borrower**_ (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("**UCC**").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "**_Loan Document_**" and together the "**_Loan Documents_**."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein).  If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll) (Docket No. 70)  (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.   **Interest Provisions**.

(a)   Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)   Maximum Lawful Interest.  The term "**_Maximum Lawful Rate_**" means the maximum rate of interest and the term "**_Maximum Lawful Amount_**" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)   Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 2**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

(d)     Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "*Default Interest Rate*" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)     Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.     **Default Provisions**.

(a)     Events of Default and Acceleration of Maturity.  Borrowers agree that an "*Event of Default*" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)     Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)     Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 3**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

(d)    <u>Other Remedies Not Required</u>.    The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)    <u>Attorney's Fees</u>.    If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.    This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.    **Miscellaneous Provisions**.

(a)    <u>Subsequent Holder</u>.    All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)    <u>Transfer</u>.    Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.    Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)    <u>Other Parties Liable</u>.    All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)    <u>Successors and Assigns</u>.    The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)    <u>No Duty or Special Relationship</u>.    Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.    If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)    <u>Modifications</u>.    Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 4
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

EXHIBIT K102.03

(g)   Application of Payments.  Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)   Entire Agreement.  Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)   Borrowers' Address for Notice.  All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)   Lender's Address for Payment.  All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)   Partial Invalidity.  The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)   Business Use.  Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)   Chapter 346 Not Applicable.  It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n)   Applicable Law; Venue & Jurisdiction.   THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.  In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.  Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 5

dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

[SIGNATURE PAGE FOLLOWS]

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 6**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II)
GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL
5, 2024 PAYROLL) (RE: DOCKET NO. 30) EXHIBIT 2 — 4876-2945-9365

EXHIBIT K037   Page 17

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

**BORROWERS**:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership

By:    _____
       Laurie Beth McPike, President/CEO

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 7
dip motion payroll 002 note 003 4886-5194-1827 v.8 [3] / 4886-5194-1827, v. 5

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE   HEALTHCARE   OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I)
APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II)
GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN
RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE:
DOCKET NO. 69)**

On May 31, 2024, the Court conducted a further hearing regarding the *First Amended
Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under
Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)* (Docket
No. 69) (the "Motion" or "DIP Motion-01") filed herein on April 15, 2024, by KRS Carrollton
LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or
the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured
superpriority loans in an amount of note less than **$439,179.84** (the "DIP Loans"), from KRS
Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent,
and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents
attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP,
Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable
Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts
necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated
and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing
on the Motion and/or attached hereto as **Exhibit K100.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for
payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11
of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority"
administrative-expense claims with priority over (x) all other administrative-expense claims,
expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code
(subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the
Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

EXHIBIT K037 Page 9

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) ***in all pre-petition and post-petition accounts receivable of each Debtor*** (the "DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-01 is GRANTED on a **FINAL** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DKT. NO. 90) – Page 20**

EXHIBIT K-37, Page 20

4860-4197-9588, v. 1

7.      The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8.      The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.      Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10.     The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

**IT IS THEREFORE ORDERED THAT:**

1.      Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2.      The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.      The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.      All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.      All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

6.      The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the

DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1).

    a.    For the avoidance of doubt, the DIP Liens granted to the DIP Lender in this Order for the first payroll loan prime any and all of the super-priority replacement and/or adequate liens granted to Alleon Capital Partners LLC in one or more other orders including the various cash collateral orders entered in this case..

    b.    The allocation of any cash, cash collateral, and/or proceeds of receivables between Alleon and the DIP Lender, as it pertains to this DIP Loan and/or any other loans provided by the DIP Lender, may the be subject of one or more other orders of the Court.

7.    So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.    The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.    As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10.    If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "Notice Period").

11.    Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.    Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a.    terminating the automatic stay with respect to any DIP Collateral;

    b.    terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c.    appointing an examiner or Chapter 11 trustee; and/or

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE DKT. NO. 99)**     Page 9     4860-4197-9588, v. 1

EXHIBIT K037 Page 22

d.      converting the Debtor's Case to Chapter 7.

13.     In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.     The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.     Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court. The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.     This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.     In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.     Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

21.     **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22.     **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED:  _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

*{continued on following sheet}*

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) [RE DOCKET NO. 10]      Page 24      4860-4197-9588, v. 1

EXHIBIT K037, Page 24

**AGREED AS TO FORM:**

GUTNICKI LLP
By:____*/s/ Liz Boydston*_____
    Liz Boydston (SBN 24053684)
    Alexandria Rahn (SBN 24110246)
    10440 N. Central Expy., Suite 800
    Dallas, Texas 75231
    Telephone: (469) 935-6699
    Facsimile: (469) 895-4413
    lboydston@gutnicki.com
    arahn@gutnicki.com
    -and-
    Max Schlan
    45 Rockefeller Plaza
    Suite 2000
    New York, New York 10111
    Telephone: (646) 825-2330
    Facsimile: (646) 825-2330
    mschlan@gutnicki.com

**ATTORNEYS FOR**
**REMARKABLE HEALTHCARE OF DALLAS, LP**
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
**REMARKABLE HEALTHCARE OF CARROLLTON, LP**
**REMARKABLE HEALTHCARE OF SEGUIN, LP**


HUSCH BLACKWELL, LLP
By: ____*/s/ Buffey E. Klein*_____
    Buffey E. Klein (State Bar No. 24032515)
    Buffey.Klein@huschblackwell.com
    1900 N. Pearl Street, Suite 1800
    Dallas, Texas 75201
    (214) 999-6152; fax (214) 999-6170

    Lynn Hamilton Butler (State Bar No. 03527350)
    Lynn.butler@huschblackwell.com
    HUSCH BLACKWELL LLP
    111 Congress Avenue, Suite 1400
    Austin, Texas 78701
    (512) 472-5456; fax (512) 479-1101

**ATTORNEYS FOR ALLEON CAPITAL PARTNERS LLC**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By: _____*/s/ Jeff Carruth*_____

    JEFF CARRUTH (TX SBN: 24001846)
    2608 Hibernia, Suite 105
    Dallas, Texas 75204-2514
    Telephone: (713) 341-1158
    Fax: (713) 961-5341
    E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR:**

**KILGORE PROPERTY MANAGEMENT LLC**
**KRS CARROLLTON, LLC**
**KRS DALLAS, LLC**
**KRS FORT WORTH, LLC**
**KRS SEGUIN, LLC**

*\* Signature by permission by /s/ Jeff Carruth*

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT
AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF
(REGARDING MARCH 22, 2024 PAYROLL) [RE: DOCKET NO. 99] – Page 26**    4860-4197-9588, v. 1

EXHIBIT K037 Page 26

**PROMISSORY NOTE AND SECURITY AGREEMENT
(DIP PAYROLL 001 — EXHIBIT K100.03)**

**$439,179.84**                                                    **March 22, 2024**

      **THIS PROMISSORY NOTE** (this "*Note*") is made **EFFECTIVE AS OF MARCH 22, 2024** (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC,** and **KRS Seguin, LLC,** each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to **$439,179.84** (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

      Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

      For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

      The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or **August 3, 2024** (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full. There shall be no prepayment penalty.

---

      *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrollton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

---

      1.    **Agreement**. This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 1**

dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) — EXHIBIT "K", Page 27        4860-4197-9588, v. 1

EXHIBIT K037, Page 27

2.  **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") *__in all pre-petition and post-petition accounts receivable of each Borrower__* (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("*UCC*").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "*Loan Document*" and together the "*Loan Documents*."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein).  If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the *First Amended Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)* (Docket No. 69) (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.  **Interest Provisions**.

(a)  Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)  Maximum Lawful Interest.  The term "*Maximum Lawful Rate*" means the maximum rate of interest and the term "*Maximum Lawful Amount*" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)  Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 2
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

EXHIBIT K100.03

(d)    Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein).  The "*Default Interest Rate*" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)    Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.    **Default Provisions**.

(a)    Events of Default and Acceleration of Maturity.  Borrowers agree that an "*Event of Default*" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)    Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)    Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 3**

dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL)(RE: DKT. NO. 39)   Page 4   4860-4197-9588, v. 1

EXHIBIT K037, Page 29

(d)    Other Remedies Not Required.  The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)    Attorney's Fees.  If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.  This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.    **Miscellaneous Provisions**.

(a)    Subsequent Holder.  All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)    Transfer.  Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.  Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)    Other Parties Liable.  All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)    Successors and Assigns.  The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)    No Duty or Special Relationship.  Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.  If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)    Modifications.  Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 4
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

EXHIBIT K100.03

     (g)    <u>Application of Payments</u>. Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

     (h)    <u>Entire Agreement</u>. Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

     (i)    <u>Borrowers' Address for Notice</u>. All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

     (j)    <u>Lender's Address for Payment</u>. All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

     (k)    <u>Partial Invalidity</u>. The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

     (l)    <u>Business Use</u>. Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

     (m)    <u>Chapter 346 Not Applicable</u>. It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

     (n)    <u>Applicable Law; Venue & Jurisdiction</u>. THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS. In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas. Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

**EXHIBIT K100.03**

[SIGNATURE PAGE FOLLOWS]

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 6**

dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

EXHIBIT K100.03

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

**BORROWERS**:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership

By: _____
Laurie Beth McPike, President/CEO

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)**— Page 7
dip motion payroll 001 note 003 4874-1745-9908 v.2 [3] / 4874-1745-9908, v. 1

**From:**      Jeff Carruth
**To:**        lboydston@gutnicki.com; Alexandria Rahn; Klein, Buffey
**Cc:**        Jeff Carruth
**Subject:**   Remarkable - DIP motion payroll 001 (March 22 payroll)
**Date:**      Friday, May 31, 2024 11:38:00 AM
**Attachments:**  dip motion payroll 001 note 003 4874-1745-9908 v.1.docx
                  dip motion payroll 001 order 003 4860-4197-9588 v.1.docx
                  Remarkable - DIP motion payroll 002 (April 5 payroll).msg

Liz, Alexandra, and Buffey

1. Here are the DIP order and note from the FIRST payroll.
2. The redlines are vs. the payroll 002 – April 5 docs circulated yesterday.
3. Also, slight correct, amount of payroll 001 is $224,600.00 and I will make that change.

Thank you, and I look forward to your comments.



Jeff Carruth
Weycer, Kaplan, Pulaski & Zuber, P.C.

*Trusted Legal Advisors Since 1976*

DALLAS • HOUSTON • AMARILLO
*D.* (713) 341-1158
*M.* (214) 552-7242
*F.* (866) 666-5322

jcarruth@wkpz.com
www.wkpz.com

This communication and any attachments to it are confidential and intended solely for the use of the
person to whom they are addressed. If you have received this e-mail in error, please notify us by
telephone immediately at (713) 961-9045, and you are notified that any disclosure, distribution, or
the taking of any action in reliance on the contents of this information is prohibited. Nothing in this
message may be construed as a digital or electronic signature of any employee of Weycer, Kaplan,
Pulaski & Zuber, P.C. ("WKPZ"). WKPZ automatically blocks e-mails containing objectionable language
or suspicious content. Messages sent to WKPZ should be considered received only if confirmed by a
return receipt. The IRS does not allow the use of informal tax advice, such as this communication, to
avoid tax penalties. WKPZ expressly reserves and maintains any attorney-client privilege or work-
product protections in this communication.

**PROMISSORY NOTE AND SECURITY AGREEMENT**
**(DIP PAYROLL 001 — EXHIBIT K100.03)**

$439,179.84                                                                March 22, 2024

      THIS PROMISSORY NOTE (this "*Note*") is made **EFFECTIVE AS OF MARCH 22, 2024** (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP,** and **Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC,** and **KRS Seguin, LLC,** each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to $439,179.84 (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

      Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

      For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

      The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or **August 3, 2024** (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full. There shall be no prepayment penalty.

>     *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrolton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

      1.    **Agreement**. This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001— Page 1
dip motion payroll 001 note 003 4874-9908 v.1 (002).docx[1] / 4874-1745-9908, v. 1

**Deleted: 2**
**Deleted: 2**
**Deleted: 224,600.00**
**Deleted:**    April 5, 2024
**Deleted: APRIL 5**
**Deleted: 224,600.00**
**Deleted: 17**
**Deleted: 2**
**Deleted:** dip motion payroll 001 note 003 4874-1745-9908 v.1.docxdip motion payroll 002 note 003 4886-5194-1827 v.5.docx

2.    **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") *in all pre-petition and post-petition accounts receivable of each Borrower* (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("*UCC*").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "*Loan Document*" and together the "*Loan Documents*."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein). If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the *First Amended Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)* (Docket No. 69) (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.    **Interest Provisions**.

(a)    Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)    Maximum Lawful Interest.  The term "*Maximum Lawful Rate*" means the maximum rate of interest and the term "*Maximum Lawful Amount*" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)    Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

**Deleted:** Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll)

**Deleted:** 70

**Deleted:** 2

**Deleted:** dip motion payroll 001 note 003 4874-1745-9908 v.1.docxdip motion payroll 002 note 003 4886-5194-1827 v.5.docx

(d)      Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "*Default Interest Rate*" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)      Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.      **Default Provisions**.

(a)      Events of Default and Acceleration of Maturity.  Borrowers agree that an "*Event of Default*" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)      Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)      Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 3**
dip motion payroll 001 note 003 4874-1745-9908 v.1 (002).docx[1] / 4874-1745-9908, v. 1

**Deleted: 2**

**Deleted:** dip motion payroll 001 note 003 4874-1745-9908 v.1.docxdip motion payroll 002 note 003 4886-5194-1827 v.5.docx

(d)    Other Remedies Not Required.  The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)    Attorney's Fees.  If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.  This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.    **Miscellaneous Provisions**.

(a)    Subsequent Holder.  All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)    Transfer.  Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.  Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)    Other Parties Liable.  All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)    Successors and Assigns.  The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)    No Duty or Special Relationship.  Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.  If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)    Modifications.  Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

| Deleted: 2 |
| --- |
| **Deleted:** dip motion payroll 001 note 003 4874-1745-9908 v.1.docxdip motion payroll 002 note 003 4886-5194-1827 v.5.docx |

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 4**
dip motion payroll 001 note 003 4874-1745-9908 v.1 (002).docx[1] / 4874-1745-9908, v. 1

(g)    Application of Payments.  Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)    Entire Agreement.  Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)    Borrowers' Address for Notice.  All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)    Lender's Address for Payment.  All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)    Partial Invalidity.  The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)    Business Use.  Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)    Chapter 346 Not Applicable.  It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n)    Applicable Law; Venue & Jurisdiction.  THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.  In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.  Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

| Deleted: 2 |
| Deleted: dip motion payroll 001 note 003 4874-1745-9908 v.1.docxdip motion payroll 002 note 003 4886-5194-1827 v.5.docx |

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 5

[SIGNATURE PAGE FOLLOWS]

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 6**

dip motion payroll 001 note 003 4874-1745-9908 v.1 (002).docx[1] / 4874-1745-9908, v. 1

Deleted: 2

Deleted: dip motion payroll 001 note 003 4874-1745-9908 v.1.docxdip motion payroll 002 note 003 4886-5194-1827 v.5.docx

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

<u>**BORROWERS**</u>:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership

By:    LBJM, LLC,
       a Texas limited liability company,
       its General Partner


       By:    _____
              Laurie Beth McPike, President/CEO

**Deleted: 2**

**Deleted:** dip motion payroll 001 note 003 4874-1745-9908 v.1.docxdip motion payroll 002 note 003 4886-5194-1827 v.5.docx

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 7**
dip motion payroll 001 note 003 4874-1745-9908 v.1 (002).docx[3] / 4874-1745-9908, v. 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE:                                    §
REMARKABLE  HEALTHCARE  OF   §
CARROLLTON, LP *et al.*                   §            Case No. 24-40605
         Debtor(s).                       §

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69)**

On May 31, 2024, the Court conducted a further hearing regarding the *First Amended Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)* (Docket No. 69) (the "Motion" or "DIP Motion-01") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than $439,179.84 (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K100.03** (the "DIP Loan Documents");

3.      authorizing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

---

---

Deleted: APRIL 5
Deleted: 70
Formatted: Font: Italic
Deleted: *April 5*
Deleted: 70
Deleted: 2
Deleted: 224,000.00
Deleted: 2
Deleted: APRIL 5
Deleted: 70
Deleted: 4860-4197-9588, v. 14860-4197-9588, v. 1
Formatted: Font: Not Bold

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) ***in all pre-petition and post-petition accounts receivable of each Debtor*** (the "DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-01 is GRANTED on a **FINAL** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 2** 4860-4197-9588, v. 1

**Deleted:** 2

**Deleted:** APRIL 5

**Deleted:** 70

**Deleted:** 4860-4197-9588, v. 14860-4197-9588, v. 1

**Formatted:** Font: Not Bold

7.   The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8.   The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.   Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10.  The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

**IT IS THEREFORE ORDERED THAT:**

1.   Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2.   The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.   The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.   All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.   All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

6.   The DIP Lender holds security interests and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the

| Deleted: APRIL 5 |
| Deleted: 70 |
| Deleted: 4860-4197-9588, v. 14860-4197-9588, v. 1 |
| Formatted: Font: Not Bold |

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 3   4860-4197-9588, v. 1

DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1). For the avoidance of doubt, the DIP Liens granted to the DIP Lender in this Order for the first payroll loan prime any and all of the super-priority replacement and/or adequate liens granted to Alleon Capital Partners LLC in one or more other orders including the various cash collateral orders entered in this case.

7.   So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.   The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.   As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10.  If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "Notice Period").

11.  Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.  Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

   a.   terminating the automatic stay with respect to any DIP Collateral;

   b.   terminating the Debtor's exclusivity to propose Chapter 11 plan;

   c.   appointing an examiner or Chapter 11 trustee; and/or

   d.   converting the Debtor's Case to Chapter 7.

13.  In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with

**Deleted:** ,

**Deleted:** _provided_, however, but only to the extent that such position is a junior super-priority position to the cash collateral replacement liens granted to Alleon in the instant case as to any and all receivables of the Debtors including Medicare, Medicaid, and/or similar payments.

**Deleted:** APRIL 5

**Deleted:** 70

**Deleted:** 4860-4197-9588, v. 14860-4197-9588, v. 1

**Formatted:** Font: Not Bold

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 4 4860-4197-9588, v. 1

any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.     The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.     Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender.  Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court.  The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.     This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.     In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.     Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

| Deleted: APRIL 5 |
| Deleted: 70 |
| Deleted: 4860-4197-9588, v. 14860-4197-9588, v. 1 |
| Formatted: Font: Not Bold |

**FINAL ORDER GRANTING** FIRST AMENDED **MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING** MARCH 22, **2024 PAYROLL) (RE: DOCKET NO.** 69**) — Page 5** 4860-4197-9588, v. 1

21.   **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS.**

22.   **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED:  _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

*{continued on following sheet}*

| Deleted: APRIL 5 |
| Deleted: 70 |
| Deleted: 4860-4197-9588, v. 14860-4197-9588, v. 1 |
| Formatted: Font: Not Bold |

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT
AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF
(REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 6   4860-4197-9588, v. 1

**AGREED AS TO FORM:**

Gᴜᴛɴɪᴄᴋɪ LLP
By: ____/s/ Liz Boydston*_____
     Liz Boydston (SBN 24053684)
     Alexandria Rahn (SBN 24110246)
     10440 N. Central Expy., Suite 800
     Dallas, Texas 75231
     Telephone: (469) 935-6699
     Facsimile: (469) 895-4413
     lboydston@gutnicki.com
     arahn@gutnicki.com
     -and-
     Max Schlan
     45 Rockefeller Plaza
     Suite 2000
     New York, New York 10111
     Telephone: (646) 825-2330
     Facsimile: (646) 825-2330
     mschlan@gutnicki.com

**ATTORNEYS FOR**
**REMARKABLE HEALTHCARE OF DALLAS, LP**
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
**REMARKABLE HEALTHCARE OF CARROLLTON, LP**
**REMARKABLE HEALTHCARE OF SEGUIN, LP**


Hᴜsᴄʜ Bʟᴀᴄᴋᴡᴇʟʟ, LLP
By: ____/s/ Buffey E. Klein*_____
     Buffey E. Klein (State Bar No. 24032515)
     Buffey.Klein@huschblackwell.com
     1900 N. Pearl Street, Suite 1800
     Dallas, Texas 75201
     (214) 999-6152; fax (214) 999-6170

     Lynn Hamilton Butler (State Bar No. 03527350)
     Lynn.butler@huschblackwell.com
     HUSCH BLACKWELL LLP
     111 Congress Avenue, Suite 1400
     Austin, Texas 78701
     (512) 472-5456; fax (512) 479-1101

**ATTORNEYS FOR ALLEON CAPITAL PARTNERS LLC**

| Deleted: APRIL 5 |
| Deleted: 70 |
| Deleted: 4860-4197-9588, v. 14860-4197-9588, v. 1 |
| Formatted: Font: Not Bold |

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT
AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF
(REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 1  4860-4197-9588, v. 1

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By:  ___/s/ Jeff Carruth_____
    JEFF CARRUTH (TX SBN: 24001846)
    2608 Hibernia, Suite 105
    Dallas, Texas 75204-2514
    Telephone: (713) 341-1158
    Fax: (713) 961-5341
    E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR:**

**KILGORE PROPERTY MANAGEMENT LLC**
**KRS CARROLLTON, LLC**
**KRS DALLAS, LLC**
**KRS FORT WORTH, LLC**
**KRS SEGUIN, LLC**

*\* Signature by permission by /s/ Jeff Carruth*

| Deleted: APRIL 5 |
| --- |
| Deleted: 70 |
| Deleted: 4860-4197-9588, v. 14860-4197-9588, v. 1 |
| Formatted: Font: Not Bold |

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT
AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF
(REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 2   4860-4197-9588, v. 1

**EXHIBIT K102.03**

---

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT
AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF
(REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 1   4860-4197-9588, v. 1

**Deleted:** APRIL 5

**Deleted:** 70

**Deleted:** 4860-4197-9588, v. 14860-4197-9588, v. 1

**Formatted:** Font: Not Bold

| | |
|---|---|
| **From:** | Jeff Carruth |
| **To:** | lboydston@gutnicki.com; Alexandria Rahn; Klein, Buffey |
| **Cc:** | Jeff Carruth |
| **Subject:** | Remarkable - DIP motion payroll 002 (April 5 payroll) |
| **Date:** | Thursday, May 30, 2024 4:55:00 PM |
| **Attachments:** | Redline - dip motion payroll 002 order 003.docx |
| | dip motion payroll 002 note 003.docx |
| | dip motion payroll 002 order 003.docx |
| | Redline - dip motion payroll 002 note 003.docx |

Liz, Alexandra, and Buffey

1. Here are the DIP order and note from the second payroll.

2. The redlines are vs. what I have as the last docs we worked on at Court c. April 30.  I think the changes are mainly cosmetic.

3. Once we are done with these, I will change the references for the first payroll DIP. Should be easy fix.

4. The difference on the first payroll will be ordered para. 6  on the Alleon priming – the first payroll primes everything.

Thank you, and I look forward to your comments.



Jeff Carruth

W K P Z

Weycer, Kaplan, Pulaski & Zuber, P.C.

*Trusted Legal Advisors Since 1976*

DALLAS • HOUSTON • AMARILLO

D. (713) 341-1158
M. (214) 552-7242
F. (866) 666-5322

jcarruth@wkpz.com
www.wkpz.com

This communication and any attachments to it are confidential and intended solely for the use of the person to whom they are addressed. If you have received this e-mail in error, please notify us by telephone immediately at (713) 961-9045, and you are notified that any disclosure, distribution, or the taking of any action in reliance on the contents of this information is prohibited. Nothing in this message may be construed as a digital or electronic signature of any employee of Weycer, Kaplan, Pulaski & Zuber, P.C. ("WKPZ"). WKPZ automatically blocks e-mails containing objectionable language or suspicious content. Messages sent to WKPZ should be considered received only if confirmed by a return receipt. The IRS does not allow the use of informal tax advice, such as this communication, to avoid tax penalties. WKPZ expressly reserves and maintains any attorney-client privilege or work-product protections in this communication.

## PROMISSORY NOTE AND SECURITY AGREEMENT
## (DIP PAYROLL 002 — EXHIBIT K102.03)

**$224,000.00**                                                      **April 5, 2024**

**THIS PROMISSORY NOTE** (this "*Note*") is made <u>**EFFECTIVE AS OF APRIL 5, 2024**</u> (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP**, and **Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC**, and **KRS Seguin, LLC**, each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to <u>**$224,000.00**</u> (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*").  The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or <u>**August 17, 2024**</u> (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full.  There shall be no prepayment penalty.

---

*This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrolton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.  Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

---

1.      **Agreement**.  This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender.  The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note.  The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 1**

2.     **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") ***in all pre-petition and post-petition accounts receivable of each Borrower*** (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("***UCC***").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "***Loan Document***" and together the "***Loan Documents***."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein). If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll) (Docket No. 70)  (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.     **Interest Provisions**.

(a)     Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)     Maximum Lawful Interest.  The term "***Maximum Lawful Rate***" means the maximum rate of interest and the term "***Maximum Lawful Amount***" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)     Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 2**
dip motion payroll 002 note 003 (002).docx [1] / 4886-5194-1827, v. 4

**EXHIBIT K037 - Page 53**

(d)      Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "***Default Interest Rate***" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)      Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.      **Default Provisions**.

(a)      Events of Default and Acceleration of Maturity.  Borrowers agree that an "***Event of Default***" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)      Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)      Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

(d)      <u>Other Remedies Not Required</u>.   The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)      <u>Attorney's Fees</u>.   If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.   This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.      <u>**Miscellaneous Provisions**</u>.

(a)      <u>Subsequent Holder</u>.   All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)      <u>Transfer</u>.   Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.   Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)      <u>Other Parties Liable</u>.   All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)      <u>Successors and Assigns</u>.   The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)      <u>No Duty or Special Relationship</u>.   Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.   If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)      <u>Modifications</u>.   Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

(g)    Application of Payments.  Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)    Entire Agreement.  Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)    Borrowers' Address for Notice.  All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)    Lender's Address for Payment.  All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)    Partial Invalidity.  The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)    Business Use.  Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)    Chapter 346 Not Applicable.  It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n)    Applicable Law; Venue & Jurisdiction.   THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.  In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.  Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

<u>**BORROWERS**</u>:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership

By:     LBJM, LLC,
        a Texas limited liability company,
        its General Partner


        By:     _____
                Laurie Beth McPike, President/CEO

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 7**
dip motion payroll 002 note 003 (002).docx [3] / 4886-5194-1827, v. 4

**EXHIBIT K037 - Page 58**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70)**

On May 31, 2024, the Court conducted a further hearing regarding the *Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll)* (Docket No. 70) (the "Motion" or "DIP Motion-02") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than **$224,000.00** (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K102.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) **_in all pre-petition and post-petition accounts receivable of each Debtor_** (the

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70)         Page 59

EXHIBIT K037 - Page 59

"DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-02 is GRANTED on a **FINAL** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

7.   The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8.   The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.   Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10.  The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

## IT IS THEREFORE ORDERED THAT:

1.   Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2.   The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.   The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.   All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.   All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

6.   The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the

DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1), ***provided, however, but only to the extent that such position is a junior super-priority position to the cash collateral replacement liens granted to Alleon in the instant case as to any and all receivables of the Debtors including Medicare, Medicaid, and/or similar payments.***

7.  So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.  The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.  As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10. If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "Notice Period").

11. Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12. Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a.  terminating the automatic stay with respect to any DIP Collateral;

    b.  terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c.  appointing an examiner or Chapter 11 trustee; and/or

    d.  converting the Debtor's Case to Chapter 7.

13. In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 20) – PAGE 5 06-29**

EXHIBIT K037 Page 62

any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.     The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.     Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender.  Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court.  The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.     This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.     In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.     Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

21.     **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22.     **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED: _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

*{continued on following sheet}*

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. [●]) PAGE 17 OF 176-29

EXHIBIT K037 Page 64

**AGREED AS TO FORM:**

GUTNICKI LLP
By:___*/s/ Liz Boydston\**_____
     Liz Boydston (SBN 24053684)
     Alexandria Rahn (SBN 24110246)
     10440 N. Central Expy., Suite 800
     Dallas, Texas 75231
     Telephone: (469) 935-6699
     Facsimile: (469) 895-4413
     lboydston@gutnicki.com
     arahn@gutnicki.com
     -and-
     Max Schlan
     45 Rockefeller Plaza
     Suite 2000
     New York, New York 10111
     Telephone: (646) 825-2330
     Facsimile: (646) 825-2330
     mschlan@gutnicki.com

**ATTORNEYS FOR**
**REMARKABLE HEALTHCARE OF DALLAS, LP**
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
**REMARKABLE HEALTHCARE OF CARROLLTON, LP**
**REMARKABLE HEALTHCARE OF SEGUIN, LP**

HUSCH BLACKWELL, LLP
By: ___*/s/ Buffey E. Klein\**_____
     Buffey E. Klein (State Bar No. 24032515)
     Buffey.Klein@huschblackwell.com
     1900 N. Pearl Street, Suite 1800
     Dallas, Texas 75201
     (214) 999-6152; fax (214) 999-6170

     Lynn Hamilton Butler (State Bar No. 03527350)
     Lynn.butler@huschblackwell.com
     HUSCH BLACKWELL LLP
     111 Congress Avenue, Suite 1400
     Austin, Texas 78701
     (512) 472-5456; fax (512) 479-1101

**ATTORNEYS FOR ALLEON CAPITAL PARTNERS LLC**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By:___/s/ Jeff Carruth_____
    JEFF CARRUTH (TX SBN: 24001846)
    2608 Hibernia, Suite 105
    Dallas, Texas 75204-2514
    Telephone: (713) 341-1158
    Fax: (713) 961-5341
    E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR:**

**KILGORE PROPERTY MANAGEMENT LLC**
**KRS CARROLLTON, LLC**
**KRS DALLAS, LLC**
**KRS FORT WORTH, LLC**
**KRS SEGUIN, LLC**

*\* Signature by permission by /s/ Jeff Carruth*

EXHIBIT K102.03

**PROMISSORY NOTE AND SECURITY AGREEMENT**
**(DIP PAYROLL 002 — EXHIBIT K102.03)**

Formatted: Top: 1", Header distance from edge: 0.5", Footer distance from edge: 0.5"

$224,000.00                                                                    April 5, 2024

THIS PROMISSORY NOTE (this "*Note*") is made **EFFECTIVE AS OF APRIL 5, 2024** (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP,** and **Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC**, and **KRS Seguin, LLC**, each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to **$224,000.00** (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or **August 17, 2024** (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full. There shall be no prepayment penalty.

> *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrolton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

1.    **Agreement**. This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

Deleted: —

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— **Page 1**
Redline - dip motion payroll 002 note 003 (002).docx [1] / 4881-4522-5924, v. 1

2.      **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") *in all pre-petition and post-petition accounts receivable of each Borrower* (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("*UCC*").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "*Loan Document*" and together the "*Loan Documents*."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein). If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll) (Docket No. 70)  (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.      **Interest Provisions**.

(a)      Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)      Maximum Lawful Interest.  The term "*Maximum Lawful Rate*" means the maximum rate of interest and the term "*Maximum Lawful Amount*" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)      Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 2**
Redline - dip motion payroll 002 note 003 (002).docx [1] / 4881-4522-5924, v. 1

Deleted: ").

Deleted: —

(d)    <u>Interest After Default</u>.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "***Default Interest Rate***" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)    <u>Daily Computation of Interest</u>.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.    <u>**Default Provisions**</u>.

(a)    <u>Events of Default and Acceleration of Maturity</u>.  Borrowers agree that an "***Event of Default***" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)    Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default.  Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)    <u>Non-Waiver by Lender</u>.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

Deleted: —

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 3
Redline - dip motion payroll 002 note 003 (002).docx [1] / 4881-4522-5924, v. 1

(d)    Other Remedies Not Required.  The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)    Attorney's Fees.  If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.  This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.    **Miscellaneous Provisions**.

(a)    Subsequent Holder.  All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)    Transfer.  Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.  Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)    Other Parties Liable.  All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)    Successors and Assigns.  The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)    No Duty or Special Relationship.  Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.  If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)    Modifications.  Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

Deleted: —

(g)      Application of Payments.    Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)      Entire Agreement.    Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)      Borrowers' Address for Notice.    All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)      Lender's Address for Payment.    All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)      Partial Invalidity.    The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)      Business Use.    Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)      Chapter 346 Not Applicable.    It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit accounts and tri-party accounts is not applicable to this Note.

(n)      Applicable Law; Venue & Jurisdiction.    THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.    In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.    Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

Deleted: —

**PROMISSORY NOTE** AND SECURITY AGREEMENT (DIP PAYROLL 002)— **Page 5**
Redline - dip motion payroll 002 note 003 (002).docx [1] / 4881-4522-5924, v. 1

[SIGNATURE PAGE FOLLOWS]

Formatted: Top: 1", Header distance from edge: 0.5"

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 6
Redline - dip motion payroll 002 note 003 (002).docx [1] / 4881-4522-5924, v. 1

Deleted: —

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

<u>**BORROWERS**</u>:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership

By:     LBJM, LLC,
        a Texas limited liability company,
        its General Partner


    By:     _____
            Laurie Beth McPike, President/CEO

Formatted: Top: 1", Header distance from edge: 0.5", Footer distance from edge: 0.5"

Deleted: Promissory Note – Signature Page¶
¶
4896-0643-0903, v. 5

Formatted: Font: Calibri, 7 pt

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70)

*Deleted: INTERIM*

*Formatted: Justified*

On May 31, 2024, the Court conducted a further hearing regarding the *Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll)* (Docket No. 70) (the "Motion" or "DIP Motion-02") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

*Deleted: On this day came on for consideration*

*Deleted: April 30, 2024*

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than **$224,000.00** (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K102.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) **in all pre-petition and post-petition accounts receivable of each Debtor** (the

"DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided,* however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

> **Formatted:** Font: Italic, Underline

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-02 is GRANTED on a **FINAL** basis as set forth herein.

> **Deleted:** an INTERIMbasis

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

> **Deleted:** Interim

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

> **Deleted:** Interim
>
> **Deleted:** Interim

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 2   4886-4965-6516, v. 1

7.    The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

**Formatted:** Not Highlight

8.    The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.    Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

**Deleted:** Interim

10.   The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

**IT IS THEREFORE ORDERED THAT:**

1.    Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

**Deleted:** Interim
**Deleted:** INTERIM

2.    The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

**Formatted:** Font: Not Bold, Not Italic

3.    The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.    All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.    All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

**Deleted:** ).

6.    The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 3  4886-4965-6516, v. 1

DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1), *provided, however, but only to the extent that such position is <u>a junior super-priority position to the cash collateral replacement liens granted to Alleon in the instant case as to any and all receivables of the Debtors including Medicare, Medicaid, and/or similar payments.*</u>

<small>Formatted: Font: Bold, Italic, Underline</small>
<small>Formatted: Font: Bold, Italic</small>
<small>Formatted: Font: Bold, Italic</small>

7.   So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.   The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.   As of the entry of this <u>Final</u> Order, no Event of Default exists under the DIP Loan Documents.

<small>Deleted: Interim</small>

10.  If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO <u>(Laurie Beth McPike)</u> and COO <u>(John McPike),</u> which notice shall contain a cure period of five (5) business days from receipt of notice (the "<u>Notice Period</u>").

<small>Deleted: ,</small>

11.  Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.  Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

     a.   terminating the automatic stay with respect to any DIP Collateral;

     b.   terminating the Debtor's exclusivity to propose Chapter 11 plan;

     c.   appointing an examiner or Chapter 11 trustee; and<u>/or</u>

     d.   converting the Debtor's Case to Chapter 7.

13.  In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise<u>) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt,</u> all costs incurred by the DIP Lender in connection with

<small>Deleted: ),</small>

<u>FINAL</u> ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — **Page 4**  4886-4965-6516, v. 1

any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.    The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.    Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court. The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.    This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.    In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.    The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.    Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

---

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 5   4886-4965-6516, v. 1

Deleted: Interim

Deleted: Interim

Deleted: Interim

Deleted: Interim

Deleted: Interim

Deleted: .

Deleted: Interim

Deleted: Interim

Deleted: Interim

Deleted: Interim

Deleted: Interim

21.    **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22.    **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED:  _____

_____

THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

*{continued on following sheet}*

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 6   4886-4965-6516, v. 1

**AGREED AS TO FORM:**

Gutnicki LLP
By:      /s/ Liz Boydston*
  Liz Boydston (SBN 24053684)
  Alexandria Rahn (SBN 24110246)
  10440 N. Central Expy., Suite 800
  Dallas, Texas 75231
  Telephone: (469) 935-6699
  Facsimile: (469) 895-4413
  lboydston@gutnicki.com
  arahn@gutnicki.com
  -and-
  Max Schlan
  45 Rockefeller Plaza
  Suite 2000
  New York, New York 10111
  Telephone: (646) 825-2330
  Facsimile: (646) 825-2330
  mschlan@gutnicki.com

**ATTORNEYS FOR**
**REMARKABLE HEALTHCARE OF DALLAS, LP**
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
**REMARKABLE HEALTHCARE OF CARROLLTON, LP**
**REMARKABLE HEALTHCARE OF SEGUIN, LP**


Husch Blackwell, LLP
By:      /s/ Buffey E. Klein*
  Buffey E. Klein (State Bar No. 24032515)
  Buffey.Klein@huschblackwell.com
  1900 N. Pearl Street, Suite 1800
  Dallas, Texas 75201
  (214) 999-6152; fax (214) 999-6170

  Lynn Hamilton Butler (State Bar No. 03527350)
  Lynn.butler@huschblackwell.com
  HUSCH BLACKWELL LLP
  111 Congress Avenue, Suite 1400
  Austin, Texas 78701
  (512) 472-5456; fax (512) 479-1101


**ATTORNEYS FOR ALLEON CAPITAL PARTNERS LLC**

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II)
GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL
5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 1   4886-4965-6516, v. 1

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By:      /s/ Jeff Carruth
    JEFF CARRUTH (TX SBN: 24001846)
    2608 Hibernia, Suite 105
    Dallas, Texas 75204-2514
    Telephone: (713) 341-1158
    Fax: (713) 961-5341
    E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR:**

**KILGORE PROPERTY MANAGEMENT LLC**
**KRS CARROLLTON, LLC**
**KRS DALLAS, LLC**
**KRS FORT WORTH, LLC**
**KRS SEGUIN, LLC**

*\* Signature by permission by /s/ Jeff Carruth*

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II)
GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL
5, 2024 PAYROLL) (RE: DOCKET NO. 70) — **Page 2**   4886-4965-6516, v. 1

**EXHIBIT K102.03**

Formatted: Font: Bold

Formatted: Border: Bottom: (Single solid line, Auto, 2.25 pt Line width)

FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 1   4886-4965-6516, v. 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

**EXHIBIT K040**

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69)**

On May 31, 2024, the Court conducted a further hearing regarding the *First Amended Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)* (Docket No. 69) (the "Motion" or "DIP Motion-01") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than **$439,179.84** (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K100.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

**Exhibit K040**

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) ***in all pre-petition and post-petition accounts receivable of each Debtor*** (the "DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

## THE COURT HEREBY FINDS AND CONCLUDES THAT:

1.      The DIP Motion-01 is GRANTED on a **FINAL** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

7.      The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8.      The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.      Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10.     The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

**IT IS THEREFORE ORDERED THAT:**

1.      Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2.      The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.      The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.      All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.      All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

6.     The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1).

    a.     For the avoidance of doubt, the DIP Liens granted to the DIP Lender in this Order for the first payroll loan prime any and all of the super-priority replacement and/or adequate liens granted to Alleon Capital Partners LLC in one or more other orders including the various cash collateral orders entered in this case..

    b.     The allocation of any cash, cash collateral, and/or proceeds of receivables between Alleon and the DIP Lender, as it pertains to this DIP Loan and/or any other loans provided by the DIP Lender, may be the subject of one or more other orders of the Court.

7.     So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.     The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.     As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10.    If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "<u>Notice Period</u>").

11.    Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.    Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a.     terminating the automatic stay with respect to any DIP Collateral;

    b.       terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c.       appointing an examiner or Chapter 11 trustee; and/or

    d.       converting the Debtor's Case to Chapter 7.

13.     In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.     The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.     Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender.  Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court.  The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.     This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.     In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately

upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.     Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

21.     **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22.     **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED:  _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

**PROMISSORY NOTE AND SECURITY AGREEMENT**
**(DIP PAYROLL 001 — EXHIBIT K100.03)**

**$439,179.84**                                                          **March 22, 2024**

THIS PROMISSORY NOTE (this "*Note*") is made **EFFECTIVE AS OF MARCH 22, 2024** (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP,** and **Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC,** and **KRS Seguin, LLC,** each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to **$439,179.84** (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or **August 3, 2024** (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full. There shall be no prepayment penalty.

> *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrollton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

1. **Agreement**. This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

---

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 1
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

2.  **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") _**in all pre-petition and post-petition accounts receivable of each Borrower**_ (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("**UCC**").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "**_Loan Document_**" and together the "**_Loan Documents_**."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein).  If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the _First Amended Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)_  (Docket No. 69)  (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.  **Interest Provisions**.

(a)    Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)    Maximum Lawful Interest.  The term "**_Maximum Lawful Rate_**" means the maximum rate of interest and the term "**_Maximum Lawful Amount_**" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)    Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

(d)  Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein).  The "*Default Interest Rate*" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)  Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.  **Default Provisions**.

(a)  Events of Default and Acceleration of Maturity.  Borrowers agree that an "*Event of Default*" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)  Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)  Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

(d)    Other Remedies Not Required.  The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)    Attorney's Fees.  If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.  This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.    **Miscellaneous Provisions**.

(a)    Subsequent Holder.  All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)    Transfer.  Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.  Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)    Other Parties Liable.  All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)    Successors and Assigns.  The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)    No Duty or Special Relationship.  Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.  If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)    Modifications.  Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 4**
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

(g)      Application of Payments.  Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)      Entire Agreement.  Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)      Borrowers' Address for Notice.  All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)      Lender's Address for Payment.  All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)      Partial Invalidity.  The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)      Business Use.  Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)      Chapter 346 Not Applicable.  It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n)      Applicable Law; Venue & Jurisdiction.  THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.  In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.  Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

---

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 5
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

**EXHIBIT K100.03**



[SIGNATURE PAGE FOLLOWS]

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 6
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

**BORROWERS**:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership


By:    _____
        Laurie Beth McPike, President/CEO

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 7
dip motion payroll 001 note 003 4874-1745-9908 v.2 [3] / 4874-1745-9908, v. 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

<strong style="color:red">EXHIBIT K041</strong>

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70)**

On May 31, 2024, the Court conducted a further hearing regarding the *Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll)* (Docket No. 70) (the "Motion" or "DIP Motion-02") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than **$224,600.00** (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K102.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) ***in all pre-petition and post-petition accounts receivable of each Debtor*** (the "DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-02 is GRANTED on a **FINAL** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the

---

"Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

7.   The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8.   The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.   Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10.  The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

## IT IS THEREFORE ORDERED THAT:

1.   Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2.   The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.   The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.   All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.   All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

6.      The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1), _**provided, however, such position is a junior super-priority position to any cash collateral replacement liens granted to Alleon in the instant case as to any and all receivables of the Debtors including Medicare, Medicaid, and/or similar payments.**_

7.      So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.      The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.      As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10.     If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "Notice Period").

11.     Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.     Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

   a.      terminating the automatic stay with respect to any DIP Collateral;

   b.      terminating the Debtor's exclusivity to propose Chapter 11 plan;

   c.      appointing an examiner or Chapter 11 trustee; and/or

   d.      converting the Debtor's Case to Chapter 7.

13.     In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.     The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.     Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender.  Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court.  The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.     This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.     In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.     Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

21.     **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22.     **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED: _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

**PROMISSORY NOTE AND SECURITY AGREEMENT
(DIP PAYROLL 002 — EXHIBIT K102.03)**

**$224,600.00**                                                                              **April 5, 2024**

    THIS PROMISSORY NOTE (this "*Note*") is made **EFFECTIVE AS OF APRIL 5, 2024** (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC,** and **KRS Seguin, LLC,** each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to **$224,600.00** (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

    Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

    For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

    The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or **August 17, 2024** (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full. There shall be no prepayment penalty.

> *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrolton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

    1.    <u>Agreement</u>. This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 1**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

EXHIBIT K102.03

2.    **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") *__in all pre-petition and post-petition accounts receivable of each Borrower__* (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("*UCC*").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "***Loan Document***" and together the "***Loan Documents***."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein).  If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll) (Docket No. 70)  (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.    **Interest Provisions**.

(a)    Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)    Maximum Lawful Interest.  The term "***Maximum Lawful Rate***" means the maximum rate of interest and the term "***Maximum Lawful Amount***" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)    Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

---

(d)      Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "*Default Interest Rate*" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)      Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.      **Default Provisions**.

(a)      Events of Default and Acceleration of Maturity.  Borrowers agree that an "*Event of Default*" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)      Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)      Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

(d)    <u>Other Remedies Not Required</u>.  The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)    <u>Attorney's Fees</u>.  If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.  This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.    **<u>Miscellaneous Provisions</u>**.

(a)    <u>Subsequent Holder</u>.  All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)    <u>Transfer</u>.  Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.  Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)    <u>Other Parties Liable</u>.  All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)    <u>Successors and Assigns</u>.  The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)    <u>No Duty or Special Relationship</u>.  Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.  If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)    <u>Modifications</u>.  Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

(g)    Application of Payments.   Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)    Entire Agreement.   Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)    Borrowers' Address for Notice.   All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)    Lender's Address for Payment.   All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)    Partial Invalidity.   The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)    Business Use.   Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)    Chapter 346 Not Applicable.   It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n)    Applicable Law; Venue & Jurisdiction.   THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.   In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.   Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 5**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

**EXHIBIT K102.03**

[SIGNATURE PAGE FOLLOWS]

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 6
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

**EXHIBIT K102.03**

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

**BORROWERS**:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership

By: _____
Laurie Beth McPike, President/CEO

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 7
dip motion payroll 002 note 003 4886-5194-1827 v.8 [3] / 4886-5194-1827, v. 5

**EXHIBIT K042**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69)**

On May 31, 2024, the Court conducted a further hearing regarding the *First Amended Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)* (Docket No. 69) (the "Motion" or "DIP Motion-01") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than **$439,179.84** (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K100.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

**Exhibit K042**

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) ***in all pre-petition and post-petition accounts receivable of each Debtor*** (the "DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-01 is GRANTED on a **<u>FINAL</u>** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the

---

**Exhibit K042**

"Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

7. The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8. The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9. Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10. The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

**IT IS THEREFORE ORDERED THAT:**

1. Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2. The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3. The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4. All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5. All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

Exhibit K042

6.   The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1).

    a.   For the avoidance of doubt, the DIP Liens granted to the DIP Lender in this Order for the first payroll loan prime any and all of the super-priority replacement and/or adequate liens granted to Alleon Capital Partners LLC in one or more other orders including the various cash collateral orders entered in this case..

    b.   The allocation of any cash, cash collateral, and/or proceeds of receivables between Alleon and the DIP Lender, as it pertains to this DIP Loan and/or any other loans provided by the DIP Lender, may the be subject of one or more other orders of the Court.

> **Formatted:** Add space between paragraphs of the same style

> **Formatted:** Indent: Left:  1.5",  No bullets or numbering

7.   So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.   The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.   As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10.   If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "Notice Period").

11.   Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.   Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a.   terminating the automatic stay with respect to any DIP Collateral;

**Exhibit K042**

b.      terminating the Debtor's exclusivity to propose Chapter 11 plan;

c.      appointing an examiner or Chapter 11 trustee; and/or

d.      converting the Debtor's Case to Chapter 7.

13.     In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.     The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.     Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court. The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.     This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.     In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately

**Exhibit K042**

upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.     Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

21.     **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22.     **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED:  _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

*[continued on following sheet]*

FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 6
dip motion payroll 001 order 003.01 4860-4197-9588 v.13 dip motion payroll 001 order 003.01 4860-4197-9588 v.12 / 4860-4197-9588, v. 1

**Exhibit K042**

**AGREED AS TO FORM:**

GUTNICKI LLP

By: _____ /s/ Liz Boydston* _____
    Liz Boydston (SBN 24053684)
    Alexandria Rahn (SBN 24110246)
    10440 N. Central Expy., Suite 800
    Dallas, Texas 75231
    Telephone: (469) 935-6699
    Facsimile: (469) 895-4413
    lboydston@gutnicki.com
    arahn@gutnicki.com
    -and-
    Max Schlan
    45 Rockefeller Plaza
    Suite 2000
    New York, New York 10111
    Telephone: (646) 825-2330
    Facsimile: (646) 825-2330
    mschlan@gutnicki.com

**ATTORNEYS FOR**
**REMARKABLE HEALTHCARE OF DALLAS, LP**
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
**REMARKABLE HEALTHCARE OF CARROLLTON, LP**
**REMARKABLE HEALTHCARE OF SEGUIN, LP**

HUSCH BLACKWELL, LLP

By: _____ /s/ Buffey E. Klein* _____
    Buffey E. Klein (State Bar No. 24032515)
    Buffey.Klein@huschblackwell.com
    1900 N. Pearl Street, Suite 1800
    Dallas, Texas 75201
    (214) 999-6152; fax (214) 999-6170

    Lynn Hamilton Butler (State Bar No. 03527350)
    Lynn.butler@huschblackwell.com
    HUSCH BLACKWELL LLP
    111 Congress Avenue, Suite 1400
    Austin, Texas 78701
    (512) 472-5456; fax (512) 479-1101

**ATTORNEYS FOR ALLEON CAPITAL PARTNERS LLC**

**Exhibit K042**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By:       /s/ Jeff Carruth
          JEFF CARRUTH (TX SBN: 24001846)
          2608 Hibernia, Suite 105
          Dallas, Texas 75204-2514
          Telephone: (713) 341-1158
          Fax: (713) 961-5341
          E-mail:  jcarruth@wkpz.com

**ATTORNEYS FOR:**

**KILGORE PROPERTY MANAGEMENT LLC**
**KRS CARROLLTON, LLC**
**KRS DALLAS, LLC**
**KRS FORT WORTH, LLC**
**KRS SEGUIN, LLC**

*\* Signature by permission by /s/ Jeff Carruth*

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT
AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF
(REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 1**
dip motion payroll 001 order 003.01 4860-4197-9588 v.13dip motion payroll 001 order 003.01 4860-4197-9588 v.12 / 4860-4197-9588, v. 1

**Exhibit K042**

**EXHIBIT K100.03**

---

### PROMISSORY NOTE AND SECURITY AGREEMENT
### (DIP PAYROLL 001 — EXHIBIT K100.03)

**$439,179.84**                                                        **March 22, 2024**

THIS PROMISSORY NOTE (this "*Note*") is made **EFFECTIVE AS OF MARCH 22, 2024** (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP,** and **Remarkable Healthcare of Fort Worth, LP,** each a Texas limited partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC,** and **KRS Seguin, LLC,** each a Texas limited liability company (collectively, the "*Lender*") in connection with that certain loan in an amount up to **$439,179.84** (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

Reference are hereby made to that certain real property situated in Carrollton, Denton County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the "*Fort Worth Facility*;" together with the Carrollton Facility and the Dallas Facility, collectively referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used by the Borrowers **only for payroll related to the Subject Facilities.**

For value received, Borrowers promise to pay to the order of Lender the Principal Amount, together with interest on such amount accruing from the date hereof at the rate of six percent (6%) per annum, in lawful money of the United States of America, in accordance with all the terms, conditions, and covenants of this Note.

The Principal Amount and accrued interest shall be due and payable the earlier of the Effective Date of a Plan or **August 3, 2024** (the "*Maturity Date*"), or such other maturity or acceleration as provided herein when the entire unpaid principal and interest balance shall be due and payable in full. There shall be no prepayment penalty.

> *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll and is the subject of one or more orders approving debtor in possession financing, super-priority liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605, In re Remarkable Healthcare of Carrolton LLC et al. (administratively consolidated), in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional security and remedies may be granted in such orders of the Bankruptcy Court.*

1. **Agreement**. This Note evidences indebtedness and obligations which may from time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

---

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 1
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

---

**Exhibit K042**

## EXHIBIT K100.03

2.  **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "**DIP Lien(s)**") *in all pre-petition and post-petition accounts receivable of each Borrower* (the "**AR**" or the "**DIP Collateral**").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("**UCC**").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "**Loan Document**" and together the "**Loan Documents**."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein).  If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the *First Amended Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding March 22, 2024 Payroll)* (Docket No. 69) (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.  **Interest Provisions**.

(a)    Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)    Maximum Lawful Interest.  The term "**Maximum Lawful Rate**" means the maximum rate of interest and the term "**Maximum Lawful Amount**" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)    Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 2
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

**EXHIBIT K100.03**

(d)    Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "**Default Interest Rate**" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)    Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.    **Default Provisions**.

(a)    Events of Default and Acceleration of Maturity.  Borrowers agree that an "**Event of Default**" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)    Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)    Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

**Exhibit K042**

## EXHIBIT K100.03

(d)   Other Remedies Not Required.  The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)   Attorney's Fees.  If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.  This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.   **Miscellaneous Provisions**.

(a)   Subsequent Holder.  All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)   Transfer.  Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.  Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)   Other Parties Liable.  All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)   Successors and Assigns.  The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)   No Duty or Special Relationship.  Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.  If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)   Modifications.  Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

**Exhibit K042**

**EXHIBIT K100.03**

(g)     <u>Application of Payments</u>.   Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)     <u>Entire Agreement</u>.   Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)     <u>Borrowers' Address for Notice</u>.   All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)     <u>Lender's Address for Payment</u>.   All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)     <u>Partial Invalidity</u>.   The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)     <u>Business Use</u>.   Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)     <u>Chapter 346 Not Applicable</u>.   It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n)     <u>Applicable Law; Venue & Jurisdiction</u>.   THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.   In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.   Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

---

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 5
dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

**Exhibit K042**

**EXHIBIT K100.03**

[SIGNATURE PAGE FOLLOWS]

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 001)— Page 6

dip motion payroll 001 note 003 4874-1745-9908 v.2 [1] / 4874-1745-9908, v. 1

**FINAL ORDER GRANTING FIRST AMENDED MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING MARCH 22, 2024 PAYROLL) (RE: DOCKET NO. 69) — Page 6**

dip motion payroll 001 order 003.01 4860-4197-9588 v.13dip motion payroll 001 order 003.01 4860-4197-9588 v.12 / 4860-4197-9588, v. 1

**EXHIBIT K100.03**

IN WITNESS WHEREOF, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

BORROWERS:

REMARKABLE HEALTHCARE OF CARROLLTON, LP, and
REMARKABLE HEALTHCARE OF DALLAS, LP, and
REMARKABLE HEALTHCARE OF FORT WORTH, LP
each a Texas limited partnership

By: _____
Laurie Beth McPike, President/CEO

**Exhibit K042**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |

**EXHIBIT K043**

### FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70)

On May 31, 2024, the Court conducted a further hearing regarding the *Motion to (I) Approve Debtor in Possession Credit Agreement, (II) Grant Priming Liens Under Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll)* (Docket No. 70) (the "Motion" or "DIP Motion-02") filed herein on April 15, 2024, by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (collectively, "Kilgore" or the "DIP Lender") seeking entry of an order for, *inter alia*:

1.      authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority loans in an amount of note less than **$224,600.00** (the "DIP Loans"), from KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, and KRS Seguin LLC (as lender, agent, and collateral agent, (collectively, the "DIP Lender"), as provided in that certain loan documents attached to or circulated with the Motion;

2.      authorizing and directing each of Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, and Remarkable Healthcare, LLC (collectively, the "Debtor") to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the Promissory Note dated and/or effective as of April 5, 2024, and attached to the Motion and/or as accepted at the hearing on the Motion and/or attached hereto as **Exhibit K102.03** (the "DIP Loan Documents");

3.      authorizing and directing the Debtor to use the proceeds of the DIP Loans only for payroll of the three skilled nursing facilities in Carrollton, Dallas, and Fort Worth, only;

4.      providing that all DIP Obligations shall, pursuant to Section 364(c)(1) of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code"), constitute means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in this Order) and (y) all other unsecured claims against the Debtor. ("DIP Claims"), payable from and having recourse to all property of the Debtor's estate;

5.      authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) ***in all pre-petition and post-petition accounts receivable of each Debtor*** (the

"DIP Collateral") to secure payment of all DIP Obligations, comprising of, pursuant to Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, as set forth in ordered Paragraph No. 6 below; *provided*, however, that no assets of Remarkable Healthcare of Seguin, LLC shall be included in the DIP Collateral; and

6.      vacating and/or modifying the automatic stay, pursuant to Code § 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

7.      granting the Debtor such other and further relief as is just and proper.

The Court finds and concludes that the Motion contained the appropriate notices under the Bankruptcy Local Rules; according to the certificate of service attached to the Motion, the Motion was served upon the parties entitled to receive notice under the Bankruptcy Local Rules; no party in interest filed a response or objection to the Motion or any such response or objection is overruled by this Order; and that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein.

All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

1.      The DIP Motion-02 is GRANTED on a **<u>FINAL</u>** basis as set forth herein.

2.      On March 20, 2024, (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Code.

3.      This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution.

4.      An immediate and ongoing need exists/existed for the Debtors to obtain postpetition financing in the amount of the DIP Loan to satisfy payroll obligations, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case.

5.      The Debtor is unable to obtain unsecured credit under Code § 503 or other postpetition financing in the amount of the DIP Loan on terms more favorable than those provided by the DIP Lender.

6.      Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Code § 364 and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, such that no other or further notice of the Motion or entry of this Final DIP Order is needed.

7.     The terms of the DIP Loan, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and/or the rights and remedies of the DIP Lender.

8.     The terms of the DIP Loan, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Documents.

9.     Entry of this Final DIP Order is in the best interests of the Debtors' estates and the various stakeholders because it will, inter alia, allow the Debtor to fund payroll and seek to maintain patient care; and

10.    The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents and this Order.

**IT IS THEREFORE ORDERED THAT:**

1.     Any remaining objection to the Motion or entry of this Final DIP Order is hereby OVERRULED and the DIP Motion is GRANTED ON AN FINAL BASIS as set forth below.

2.     The execution and delivery of the DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized, directed, and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.     The Debtor is authorized to borrow up to the full amount of the DIP Loan as set forth in this Order the DIP Loan Documents.

4.     All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims upon entry of a final order.

5.     All DIP Obligations, pursuant to Code § 364(c)(1), constitute DIP Claims, payable from and having recourse all DIP Collateral.

6.     The DIP Lender holds security interests in and liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the

DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising of Code § 364(d)(1), senior super-priority DIP Liens on all DIP Collateral, and to the extent such lien is insufficient to repay the indebtedness, an allowed super-priority administrative expense claims under Code §364(c)(1), ***provided, however, ~~but only to the extent that~~ such position is a junior super-priority position to ~~the~~any cash collateral replacement liens granted to Alleon in the instant case as to any and all receivables of the Debtors including Medicare, Medicaid, and/or similar payments.***

7.    So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

8.    The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date set forth in the DIP Loan Documents.

9.    As of the entry of this Final Order, no Event of Default exists under the DIP Loan Documents.

10.   If an Event of Default occurs, DIP Lender shall send a Notice of Default by electronic mail to counsel to the Debtor and Debtor's CEO (Laurie Beth McPike) and COO (John McPike), which notice shall contain a cure period of five (5) business days from receipt of notice (the "Notice Period").

11.   Notwithstanding Code § 362, if an Event of Default occurs and is not cured within the Notice Period, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court apply the remedies set forth in the DIP Loan Documents.

12.   Furthermore, if any Event of Default has occurred and is not cured within the Notice Period, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    a.    terminating the automatic stay with respect to any DIP Collateral;

    b.    terminating the Debtor's exclusivity to propose Chapter 11 plan;

    c.    appointing an examiner or Chapter 11 trustee; and/or

    d.    converting the Debtor's Case to Chapter 7.

13.   In addition to the rights and remedies above, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with

any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

14.     The automatic stay imposed by Code § 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15.     Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender.  Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final DIP Order as originally entered by the Court.  The DIP Lender is entitled to and shall have in all cases the protections of Code § 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

16.     This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a Chapter 11 plan, (x) appointing an examiner or Chapter 11 trustee, or (y) converting the Case to a case under Bankruptcy Code Chapter 7, or (z) dismissing the Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

17.     In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms hereof shall govern.

18.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof.  There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

19.     The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

20.     Kilgore at the sole option of Kilgore may seek to amend this order to fix or determine the allocation of the DIP Loan from each Kilgore lender to each Subject Debtor Borrower.

21.     **FOR THE AVOIDANCE OF DOUBT, THE DIP LIEN DOES NOT EXTEND TO D.H.S. RECOUPMENT RIGHTS TO OVERPAYMENTS**.

22.     **THE DEBTORS IMMEDIATELY SHALL SUPPLY FULL POINT CLICK CARE TO KILGORE IF NOT ALREADY PROVIDED.**

DATED: _____

_____
THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com
ATTORNEYS FOR KRS CARROLTON LLC, ET AL.

*{continued on following sheet}*

**AGREED AS TO FORM:**

GUTNICKI LLP
By:     /s/ Liz Boydston*
     Liz Boydston (SBN 24053684)
     Alexandria Rahn (SBN 24110246)
     10440 N. Central Expy., Suite 800
     Dallas, Texas 75231
     Telephone: (469) 935-6699
     Facsimile: (469) 895-4413
     lboydston@gutnicki.com
     arahn@gutnicki.com
     -and-
     Max Schlan
     45 Rockefeller Plaza
     Suite 2000
     New York, New York 10111
     Telephone: (646) 825-2330
     Facsimile: (646) 825-2330
     mschlan@gutnicki.com


**ATTORNEYS FOR**
**REMARKABLE HEALTHCARE OF DALLAS, LP**
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
**REMARKABLE HEALTHCARE OF CARROLLTON, LP**
**REMARKABLE HEALTHCARE OF SEGUIN, LP**


HUSCH BLACKWELL, LLP
By:     /s/ Buffey E. Klein*
     Buffey E. Klein (State Bar No. 24032515)
     Buffey.Klein@huschblackwell.com
     1900 N. Pearl Street, Suite 1800
     Dallas, Texas 75201
     (214) 999-6152; fax (214) 999-6170

     Lynn Hamilton Butler (State Bar No. 03527350)
     Lynn.butler@huschblackwell.com
     HUSCH BLACKWELL LLP
     111 Congress Avenue, Suite 1400
     Austin, Texas 78701
     (512) 472-5456; fax (512) 479-1101


**ATTORNEYS FOR ALLEON CAPITAL PARTNERS LLC**

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:    /s/ Jeff Carruth
    JEFF CARRUTH (TX SBN: 24001846)
    2608 Hibernia, Suite 105
    Dallas, Texas 75204-2514
    Telephone: (713) 341-1158
    Fax: (713) 961-5341
    E-mail:  jcarruth@wkpz.com

ATTORNEYS FOR:

KILGORE PROPERTY MANAGEMENT LLC
KRS CARROLLTON, LLC
KRS DALLAS, LLC
KRS FORT WORTH, LLC
KRS SEGUIN, LLC

* Signature by permission by /s/ Jeff Carruth

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 3**  ~~4867-1476-2947, v. 5~~

redline dip motion payroll 002 order 003.01 V7 vs V12[3] / 4867-1476-2947, v. 5

**Exhibit K043**

**PROMISSORY NOTE AND SECURITY AGREEMENT**
**(DIP PAYROLL 002 — EXHIBIT K102.03)**

**$224,600.00**                                                                 **April 5, 2024**

    **THIS PROMISSORY NOTE** (this "*Note*") is made <u>**EFFECTIVE AS OF APRIL 5,
2024**</u> (the "*Effective Date*") by **Remarkable Healthcare of Carrollton, LP, Remarkable
Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth, LP,** each a Texas limited
partnership (collectively, the "*Borrowers*") for the benefit of **KRS Carrollton, LLC, KRS Dallas,
LLC, and KRS Fort Worth, LLC,** and **KRS Seguin, LLC,** each a Texas limited liability
company (collectively, the "*Lender*") in connection with that certain loan in an amount up to
<u>**$224,600.00**</u> (the "*Principal Amount*") that Lender has agreed to extend to Borrowers.

    Reference are hereby made to that certain real property situated in Carrollton, Denton
County, Texas and upon which is located a licensed skilled nursing facility commonly known as
Remarkable Healthcare of Prestonwood (the "*Carrollton Facility*"), that certain real property
situated in Dallas, Tarrant County, Texas and upon which is located a licensed skilled nursing
facility commonly known as Remarkable Healthcare of Dallas (the "*Dallas Facility*"), and that
certain real property situated in Fort Worth, Tarrant County, Texas and upon which is located a
licensed skilled nursing facility commonly known as Remarkable Healthcare of Fort Worth (the
"*Fort Worth Facility*," together with the Carrollton Facility and the Dallas Facility, collectively
referred to herein as the "*Subject Facilities*"). The Principal Amount is loaned and may be used
by the Borrowers <u>**only for payroll related to the Subject Facilities.**</u>

    For value received, Borrowers promise to pay to the order of Lender the Principal Amount,
together with interest on such amount accruing from the date hereof at the rate of six percent (6%)
per annum, in lawful money of the United States of America, in accordance with all the terms,
conditions, and covenants of this Note.

    The Principal Amount and accrued interest shall be due and payable the earlier of the
Effective Date of a Plan or <u>**August 17, 2024**</u> (the "*Maturity Date*"), or such other maturity or
acceleration as provided herein when the entire unpaid principal and interest balance shall be due
and payable in full. There shall be no prepayment penalty.

---

    *This Note is part of an emergency loan made by Lender to Borrowers to cover payroll
and is the subject of one or more orders approving debtor in possession financing, super-priority
liens, and/or administrative expense claims under 11 U.S.C. §364 entered in Case No. 24-40605,
In re Remarkable Healthcare of Carrolton LLC et al. (administratively consolidated), in the
United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Additional
security and remedies may be granted in such orders of the Bankruptcy Court.*

---

    1.    <u>**Agreement**</u>. This Note evidences indebtedness and obligations which may from
time to time be owing by Borrowers to Lender. The Principal Amount of this Note shall be paid
on behalf of Borrowers on the date of this Note. The books and records of Lender shall be *prima
facie* evidence of all outstanding principal of and accrued and unpaid interest on this Note.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 1**

---

2.  **Security for Note**.  Borrowers acknowledge that this Note is secured by a first priority lien (the "DIP Lien(s)") *in all pre-petition and post-petition accounts receivable of each **Borrower*** (the "AR" or the "DIP Collateral").  In addition to the protections in the DIP Order (as defined below) Lender also may perfect its security interest in the Collateral by filing UCC-1s with the Texas Secretary of State ("***UCC***").  This Note, the UCC, and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note, are, as the same have been or may be amended, restated, modified or supplemented from time to time, herein sometimes called individually a "***Loan Document***" and together the "***Loan Documents***."  The Collateral may not be sold or transferred without the Lender's consent until the Loan Obligations are satisfied.  If Borrowers breach this provision, Lender may notice Borrowers with Event of Default (as defined herein).  If no cure occurs within the applicable Notice Period, Borrower may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.  The Lender shall have the sole option to accept the Collateral as full payment for the Loan Obligations without further liabilities or obligations.  If the market value of the Collateral does not exceed the Loan Obligations, the Borrowers shall remain liable for the balance due while accruing interest at the maximum rate allowed by law.  The DIP Liens, including the relative superpriority of the DIP Liens as to any other creditors, also are the subject of the order entered by the Court (the "DIP Order") approving the Code Sec. 364(d), and (III) Obtain Related Relief (Regarding April 5, 2024 Payroll) (Docket No. 70)  (the "DIP Motion").

In the event of any conflict between this Note and the DIP Order, the DIP Order shall control.

3.  **Interest Provisions**.

(a)  Rate.  The Principal Amount under this Note shall bear interest at a rate of six percent (6%) per annum, or at such other rate as may be set forth pursuant to the terms herein.  Interest shall be calculated on the Principal Amount of this Note upon the date of this Note.

(b)  Maximum Lawful Interest.  The term "***Maximum Lawful Rate***" means the maximum rate of interest and the term "***Maximum Lawful Amount***" means the maximum amount of interest that are permissible under applicable state or federal law for the type of loan evidenced by this Note.  If the Maximum Lawful Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Lawful Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

(c)  Excess Interest.  At maturity (whether by acceleration or otherwise) or on earlier final payment of this Note, Lender shall compute the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers under this Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged, or received by Lender.  If such computation reflects that the total amount of interest that has been contracted for, charged, or received by Lender or payable by Borrowers exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Borrowers.  This provision concerning the crediting or refund of excess interest shall control and take precedence over all other agreements between Borrowers and Lender so that under no circumstances shall the total interest contracted for, charged, or received by Lender exceed the Maximum Lawful Amount.

---

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 2**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

(d)    Interest After Default.  At Lender's option, the Principal Amount shall bear interest after maturity (whether by acceleration or otherwise) at the Default Interest Rate (as defined herein). The "*Default Interest Rate*" shall be, at Lender's sole option, (i) the Maximum Lawful Rate, if such Maximum Lawful Rate is established by applicable law; or (ii) the Interest Rate stated on the first page of this Note plus five (5) percentage points, if no Maximum Lawful Rate is established by applicable law; or (iii) eighteen percent (18%) per annum; or (iv) such lesser rate of interest as Lender in its sole discretion may choose to charge; provided, however, that the rate of interest shall never be more than the Maximum Lawful Rate or a rate that would cause the total interest contracted for, charged, or received by Lender to exceed the Maximum Lawful Amount.

(e)    Daily Computation of Interest.  To the extent permitted by applicable law, Lender at its option may either: (i) calculate the per diem interest rate or amount based on the actual number of days in the year (365 or 366, as the case may be), and charge that per diem interest rate or amount each day, or (ii) calculate the per diem interest rate or amount as if each year has only 360 days, and charge that per diem interest rate or amount each day for the actual number of days of the year (365 or 366 as the case may be).  If this Note calls for monthly payments, Lender at its option may determine the payment amount based on the assumption that each year has only 360 days and each month has 30 days.  In no event shall Lender compute the interest in a manner that would cause Lender to contract for, charge, or receive interest that would exceed the Maximum Lawful Rate or the Maximum Lawful Amount.

4.    **Default Provisions**.

(a)    Events of Default and Acceleration of Maturity.  Borrowers agree that an "*Event of Default*" (herein so called) shall exist under this Note if:  (i) any payment under the Note or other sum payable by Borrowers to Lender under this Note is not paid when due; (ii) any covenant or agreement in this Note is not fully and timely performed, or the occurrence of any default or event of default thereunder; (iii) if Borrowers: (A) converts the case to chapter 7 of the Federal Bankruptcy Code r; or (B) has a trustee, receiver, custodian or other similar official appointed for or take possession of any of its property or has any court take jurisdiction of any of its property which continues for a period of sixty (60) days, provided however that none of the agreed receivership over Remarkable Healthcare of Dallas, LLC and/or the agreed interim managers over Remarkable Healthcare of Fort Worth, LLC and Remarkable Healthcare of Carrollton, LLC shall not constitute an Event of Default; (vi) an assignment, transfer, sale or pledge of any beneficial or legal ownership interest in Borrowers, whether by operation of law or otherwise, is effected without the prior written consent of Lender;.

(b)    Upon an Event of Default, Lender shall notice the Borrowers of such Event of Default. Upon receipt of notice of an Event of Default, unless otherwise provided, Borrowers shall have five (5) business days to cure such Event of Default (the "Notice Period") after which time the Lender may exercise all remedies pursuant to this Note or the order approving this Note.

(c)    Non-Waiver by Lender.  Any previous extension of time, forbearance, failure to pursue some remedy, acceptance of late payments, or acceptance of partial payment by Lender, before or after maturity, does not constitute a waiver by Lender of its subsequent right to strictly enforce the collection of this Note according to its terms.

---

(d)    <u>Other Remedies Not Required</u>.  The rights, remedies, and recourses of Lender, as provided in this Note and as afforded by applicable law, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefor shall arise, at the sole discretion of Lender, to the maximum extent permitted by applicable law.

(e)    <u>Attorney's Fees</u>.  If Lender requires the services of an attorney to enforce the payment of this Note, or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrowers agree to pay Lender all court costs, reasonable attorney's fees and expenses, and other reasonable collection costs incurred by Lender.  This provision shall be limited by any applicable statutory restrictions relating to the collection of attorney's fees.

5.    **Miscellaneous Provisions**.

(a)    <u>Subsequent Holder</u>.  All references to Lender in this Note shall also refer to any subsequent owner or holder of this Note by transfer, assignment, endorsement, or otherwise any successor or assign of Lender, or any entity or person who is entitled to receive payments under this Note.

(b)    <u>Transfer</u>.  Borrowers acknowledge and agree that Lender may transfer this Note or partial interests in the Note to one or more transferees or participants.  Borrowers authorizes Lender to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Borrowers, to any such transferee or participant or prospective transferee or participant.

(c)    <u>Other Parties Liable</u>.  All promises, waivers, agreements, and conditions applicable to Borrowers shall likewise be applicable to and binding upon any other parties primarily or secondarily liable for the payment of this Note.

(d)    <u>Successors and Assigns</u>.  The provisions of this Note shall be binding upon the successors, assigns, heirs, executors, and administrators of Borrowers, and shall inure to the benefit of the successors and assigns of Lender; provided, however, that no obligations of Borrowers hereunder can be assigned without Lender's prior written consent.

(e)    <u>No Duty or Special Relationship</u>.  Borrowers acknowledge that Lender has no duty of good faith to Borrowers, and Borrowers acknowledge that no fiduciary, trust, or other special relationship exists between Lender and Borrowers.  If Lender and Borrowers are now engaged in or in the future engage in other business transactions, such other business transactions are independent of this Note and the indebtedness evidenced hereby and of the promises and covenants made by Borrowers in this Note, and vice versa.

(f)    <u>Modifications</u>.  Any modifications agreed to by Lender relating to the release of liability of any of the parties primarily or secondarily liable for the payment of this Note, or relating to the release, substitution, or subordination of all or part of the Collateral for this Note, shall in no way constitute a release of liability with respect to the other parties or security not covered by such modification.

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 4**
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

(g)     <u>Application of Payments</u>.  Unless otherwise agreed to in writing, or otherwise required by applicable law, all payments made or funds otherwise received by Lender in repayment of this Note will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid reasonable collection costs, delinquency charges and other charges; provided, however, upon an Event of Default, Lender reserves and shall have the right to apply payments among principal, interest, delinquency charges, collection costs and other charges in such order and manner as Lender may determine in its sole discretion.

(h)     <u>Entire Agreement</u>.  Borrowers warrant and represent that this Note constitutes the entire agreement between Borrowers and Lender with respect to the Loan evidenced by this Note and other Loan Documents and agrees that no modification, amendment, or additional agreement with respect to such loan or the advancement of funds thereunder will be valid and enforceable unless made in writing signed by both Borrowers and Lender.

(i)     <u>Borrowers' Address for Notice</u>.  All notices required to be sent by Lender to Borrowers shall be sent by electronic mail to counsel to Borrowers and United States Postal Service, postage prepaid, to Borrowers' address as set forth on the docket of the bankruptcy cases.

(j)     <u>Lender's Address for Payment</u>.  All sums payable by Borrowers to Lender shall be paid at 5701 Euper Lane, Suite A, Fort Smith, Arkansas 72903 or by wire or ACH.

(k)     <u>Partial Invalidity</u>.  The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Note as to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(l)     <u>Business Use</u>.  Borrowers warrant and represent to Lender that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family, or household purposes.

(m)     <u>Chapter 346 Not Applicable</u>.  It is understood that Chapter 346 of the Texas Finance Code, as supplemented by the Texas Credit Title, relating to certain revolving credit loan accounts and tri-party accounts is not applicable to this Note.

(n)     <u>Applicable Law; Venue & Jurisdiction</u>.    THIS NOTE HAS BEEN EXECUTED AND DELIVERED IN TEXAS AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN TEXAS.  In any litigation in connection with or to enforce this Note, Borrowers and all other persons liable for payment of all or any part of the indebtedness evidenced hereby, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas.  Provided, however, nothing contained herein shall prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

**PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 5**

[SIGNATURE PAGE FOLLOWS]

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 6
dip motion payroll 002 note 003 4886-5194-1827 v.8 [1] / 4886-5194-1827, v. 5

**EXHIBIT K102.03**

**IN WITNESS WHEREOF**, the undersigned has caused this Promissory Note to be executed as of the date first set forth above.

**BORROWERS**:

**REMARKABLE HEALTHCARE OF CARROLLTON, LP**, and
**REMARKABLE HEALTHCARE OF DALLAS, LP**, and
**REMARKABLE HEALTHCARE OF FORT WORTH, LP**
each a Texas limited partnership

By: _____
        Laurie Beth McPike, President/CEO

---

PROMISSORY NOTE AND SECURITY AGREEMENT (DIP PAYROLL 002)— Page 7
dip motion payroll 002 note 003 4886-5194-1827 v.8 [3] / 4886-5194-1827, v. 5

**EXHIBIT K102.03**

**FINAL ORDER GRANTING MOTION TO (I) APPROVE DEBTOR IN POSSESSION CREDIT AGREEMENT, (II) GRANT PRIMING LIENS UNDER CODE SEC. 364(D), AND (III) OBTAIN RELATED RELIEF (REGARDING APRIL 5, 2024 PAYROLL) (RE: DOCKET NO. 70) — Page 8**  ~~4867-1476-2947, v. 5~~

redline dip motion payroll 002 order 003.01 V7 vs V12[4] / 4867-1476-2947, v. 5

**Exhibit K043**