**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | **CASE NO. 24-40605** |
| **CARROLLTON LP, ET AL.,[1]** | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **DEBTORS.** | § | |

**AMENDED AGREED ORDER GRANTING DEBTORS' MOTION TO COMPEL**
**WEST WHARTON COUNTY HOSPITAL DISTRICT TO TURNOVER FUNDS**

1.      On September 18, 2024 and September 19, 2024, the Court conducted an emergency hearing regarding the above-captioned motion. Upon the motion (the "**Motion**")[2] of the Debtors for an order (this "**Order**") compelling West Wharton Hospital District to turn over funds; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that this Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334(b); and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that venue in this district is allowed pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record herein; and after due deliberation thereon; no objections were filed on or before October 3, 2024 to the Interim Order, so all provisions of the Settlement Term Sheet are approved on a final basis; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

[2] Capitalized terms not otherwise defined shall have the meaning set forth in the Motion.

2.      The Motion is resolved as set forth herein.

3.      West Wharton and the Debtors have agreed to settle the Motion pursuant to an

agreement (the "**Settlement Term Sheet**") attached hereto as **<u>Exhibit A</u>**.

4.      The Settlement Term Sheet is approved and incorporated into this Order.

5.      This Court shall retain jurisdiction with respect to all matters arising or related to

the implementation or interpretation of this Order.

Signed on 10/15/2024

*Brenda T. Rhoades*     SD
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

Proposed Order Submitted By:

**GUTNICKI LLP**

Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (admitted *Pro Hac Vice*)
45 Rockefellar Plaza, Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
mschlan@gutnicki.com

*Counsel to the Debtors and Debtors in Possession*

AND

**MCDERMOTT WILL & EMERY LLP**

Marcus A. Helt (Texas Bar # 24052187)
Debbie E. Green (Texas Bar # 24059852)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel: (214) 210-2821
Fax: (972) 528-5765
mhelt@mwe.com
dgreen@mwe.com

*Counsel for West Wharton County Hospital District*

<u>**SETTLEMENT TERM SHEET**</u>

<u>**PARTIES**</u>

**HOSPITAL DISTRICT:**                    WEST    WHARTON    COUNTY    HOSPITAL
                                        DISTRICT ("**HD**" or "**HOSPITAL DISTRICT**")

**MANAGER/DEBTOR:**                      REMARKABLE HEALTHCARE OF SEGUIN, LP
                                        (the "<u>**MANAGER**</u>" and "<u>**DEBTOR**</u>") and THE
                                        BANKRUPTCY ESTATE OF REMARKABLE
                                        HEALTHCARE OF SEGUIN, LP (the
                                        "<u>**BANKRUPTCY ESTATE**</u>")

<u>**SETTLEMENT TERMS**</u>

**HOSPITAL DISTRICT'S ALLOWED CLAIM:** $420,000 plus all (a) other amounts owed under
the Management Agreement or otherwise to HD by the Manager and (b) reasonable attorneys' fees
and costs incurred after execution of this Settlement Term Sheet in protecting, collecting, securing,
or recovering payment of all amounts owed to HD by Manager.

**INTEREST RATE**: 7%

**HD'S ALLOWED CLAIM'S PRIORITY**: Hospital District's Allowed Claim shall constitute
allowed super-priority administrative expense claims against Manager and the Bankruptcy Estate
(without the need to file any claim, pleading, paper, or application seeking approval) with priority
over any and all claims against the Debtor or the Bankruptcy Estate, now existing or hereafter
arising, of any kind whatsoever, including all administrative expenses of the kind specified in
sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other
claims arising under sections 105, 326, 327, 328, 330, 331, 362, 363, 364, 365, 503, 506, 507, 546,
726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims are or may
become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment,
which allowed super-priority administrative expense claims (the "<u>**Hospital District's Allowed**</u>
<u>**Super-priority Claims**</u>") of Hospital District shall for purposes of section 1129(a)(9)(A) of the
Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the
Bankruptcy Code, and which Hospital District's Allowed Super-priority Claims shall be payable
from and have recourse to all prepetition and post-petition property of the Manager and the
Bankruptcy Estate and their successors and assigns and all products and proceeds thereof.

**HD'S ALLOWED CLAIM'S COLLATERAL/SECURITY**: As continuing security for the prompt
payment of all amounts payable to Hospital District under this Settlement Term Sheet, including the
Hospital District's Allowed Super-priority Claims, and the Management Agreement, and as
continuing security for the due and punctual performance by Manager and the Bankruptcy Estate of
their existing and future obligations pursuant to the Settlement Term Sheet and the Management
Agreement (collectively, the "<u>**Settlement Obligations**</u>"), Hospital District is granted, conveyed,
assigned, transferred, mortgaged, and charged, without the necessity of the execution, recordation, or
filing by the Borrower of any mortgages, security agreements, account-control agreements, pledge
agreements, financing statements, intellectual-property filing, or other similar documents, any
notation of certificates of title for titled goods or other similar documents, instruments, deeds,
charges or certificates, or the possession or control by Hospital District of, or over, any collateral, the
following security interests and liens (all such security interests and liens granted to Hospital District
pursuant to this Settlement Term Sheet and other settlement documents (collectively, the

1

"**Settlement Documents**," the "**Hospital District's Settlement Liens**," and the property subject to the Hospital District's Settlement Liens, the "**Settlement Collateral**"):

- a valid, binding, continuing, enforceable, non-avoidable, and automatically and fully-perfected first-priority senior security interest in, and lien on, all post-Petition Date[1] AR[2] and the proceeds of the foregoing (the "**Post-Petition AR**");

- a valid, binding, continuing, enforceable, non-avoidable, and automatically and fully-perfected first-priority senior security interest in, and lien on, all causes of action of the Manager and the Bankruptcy Estate, including commercial torts and Avoidance Actions,[3] and the proceeds of the foregoing (the "**Causes of Action**"); (the Post-Petition AR and the Causes of Action are, collectively, the "**Post-Petition Collateral**"); and

- a valid, binding, continuing, enforceable, non-avoidable, and automatically and fully-perfected second-priority senior security interest in, and lien on, all tangible and intangible prepetition property of the Manager and the Bankruptcy Estate, including any unencumbered cash of the Debtors and any investment of such cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, AR, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, intercompany claims, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, investment property, letter-of-credit rights, supporting obligations, vehicles, plants, machinery and equipment, real property, leases (and proceeds from the disposition thereof), beneficial interests in any trust, money, goodwill, causes of action, and their proceeds (together with the Post-Petition Collateral, the "**Hospital District's Collateral**"); provided, however, Hospital District's liens and security interests in the pre-Petition Date AR are subject to and subordinate only to the Secured Prepetition Lender's valid, perfected, and unavoidable liens and security interests in the same.

---

[1] "**Petition Date**" means March 20, 2024.

[2] "**AR**" means all revenues, monies, accounts, payments, and other proceeds arising from or related to the operation of the Facility, including, without limitation, Medicare and Medicaid-related general intangibles and any other third-party payor reimbursements, together with the products and proceeds of all the foregoing, attributable to the provision of resident services by Manager at the Facility (defined below), to the extent owned by Manager.

[3] "**Avoidance Actions**" means all claims and causes of action arising under sections 502(d), 506, 510, 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable state law.

DM_US 208080360-2.T19780.0010

**PERFECTION OF LIENS HOSPITAL DISTRICT'S COLLATERAL**: Hospital District is granted, without the necessity of the execution, recordation or filing by the Manager or Hospital District of any mortgages, security agreements, account-control agreements, pledge agreements, financing statements, intellectual-property filings, or other similar documents, any notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges, or certificates, or the possession or control by Hospital District of or over Hospital District's Collateral.

The order approving the Settlement Terms shall be sufficient and conclusive evidence of the validity, attachment, enforceability, perfection, and priority of the Hospital District's Settlement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect Hospital District's Settlement Liens, or to entitle the Hospital District's Settlement Liens to the priority granted in the Settlement Documents. Notwithstanding the foregoing, Hospital District may, in its sole and absolute discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay to do so, and all such financing such financing statements, deeds of trust, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The Manager shall execute and deliver to Hospital District all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents or instruments, and otherwise cooperate and assist in any such filings, as Hospital District may reasonably request to further evidence, confirm, validate or perfect, or to ensure the contemplated priority of, Hospital District's Settlement Liens. Hospital District, in its sole and absolute discretion, may file a photocopy of any order approving this Settlement Term Sheet as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Manager has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of that order.

**REPAYMENT TERMS**: Payment of the Settlement Obligations shall be made in full by Debtor to Hospital District upon the earlier of (a) receipt of the February 2025 Supplemental Payment,[4] (b) and Event of Default, which such Event of Default is defined below, (c) the Held Funds equals the Hospital District's Allowed Super-priority Claims, and (d) the Effective Date.

To the extent the February 2025 Supplemental Payment does not satisfy the Settlement Obligations in full or there is an Event of Default, Hospital District may satisfy outstanding Settlement Obligations from Hospital District's Collateral though application, recoupment, setoff, or offset from the Depository Account.[5]

**FACILITY[6] ACCOUNTS RECEIVABLE**: Solely for this Settlement Term Sheet and only until Hospital District's Allowed Super-priority Claims are paid in full, Manager and each Settlement

---

[4] "**February 2025 Supplemental Payment**" means the Quality Incentive Payment Program (QIPP) State Fiscal Year 2025 Year 8 Quarter 1 payment for Components One, Two, Three, and Four.

[5] "**Depository Account**" is as defined in the Management Agreement.

[6] "**Facility**" means the real and personal property, tangible and intangible, associated with the licensed skilled-nursing facility known as Remarkable Healthcare of Seguin located at 1339 Eastwood Drive, Seguin, Texas.

Party agrees and the order approving the Settlement Terms shall find, recognize, decree, adjudge, allow, and order that (a) all revenues, monies, accounts, payments, and other proceeds arising from or related to the operation of the Facility, including, without limitation, Medicare-related general intangibles, Medicaid-related general intangibles, private-pay receipts or general intangibles, self-pay receipts or general intangibles, and any other third-party payor reimbursements, together with the products and proceeds of all of the foregoing, attributable to the provision of resident services at the Facility (collectively, the "**Facility AR**") are the sole and exclusive property of Hospital District and (b) no party has any right, title, or interest in the Facility AR senior to or *pari passu* with Hospital District. All such rights of any party other than Hospital District in the Facility AR are subject and junior to the rights, title, and interest of Hospital District in the Facility AR.

**SETOFF/OFFSET/RECOUPMENT**: Manager and each Settlement Party agrees and the order approving the Settlement Terms shall find, recognize, decree, adjudge, allow, and order that Hospital District has valid, unavoidable, unassailable, and enforceable setoff, offset, and recoupment rights and complete defenses against the Manager and all amounts owed to Manager, if any, by Hospital District, including under the Management Agreement, until all Settlement Obligations are paid in full; provided, however, that (1) Hospital District and Manager agree that the Parties' priority remains the highest standard of patient care at the Facility; and (2) Hospital District agrees not to exercise its setoff/offset/recoupment rights unless there is an Event of Default.

**HOSPITAL DISTRICT'S RELEASE OF FUNDS IN DEPOSITORY ACCOUNT**: In accordance with Section 7.2 of the Management Agreement, the Manager and Hospital District agree that Manager shall deposit all Total Net Revenue (as defined in the Management Agreement) derived from operation of the Facility directly into the Depository Account and shall not, under any circumstances, deposit Total Net Revenue into the Facility Operating Account or any other account. In accordance with Section 7.2 of the Management Agreement, if either party determines that any Total Net Revenue has been deposited into the Facility Operating Account, the Manager shall immediately notify Hospital District, and the Manager shall implement such actions as necessary to refund the improper payment to Hospital District within three (3) business days. The Manager and Hospital District agree that on September 18, 2024, the Depository Account balance was $111,878.49. The Manager and Hospital District agree that $68,010.67 was previously removed from the Depository Account by Hospital District. Hospital District shall deposit that $68,010.67 back into the Depository Account. By 1:00 p.m. central time on September 19, 2024, Hospital District shall sweep from the Depository Account to the Facility Operating Account[7] all funds in the Depository Account, which should be no less than $179,889.16. Until October 19, 2024, every Monday and Thursday, so long as no Event of Default exists under this Settlement Term Sheet, Hospital District will release 100% of amounts in the Depository Account to the Manager for the sole and specific purpose of paying Operating Expenses as defined in the Management Agreement and approved by Hospital District. Beginning on October 20, 2024, every Monday and Thursday, so long as no Event of Default exists under this Settlement Term Sheet, Hospital District will release 100% of amounts up to $150,000 on a weekly basis from the Depository Account to the Facility Operating Account for the sole and specific purpose of paying Operating Expenses; for amounts exceeding $150,000 on a weekly basis (the "**Excess Amount**"), Hospital District will release 80% of the Excess Amount from the Depository Account to the Facility Operating Account for the sole and specific purpose of paying Operating Expenses. The 20% of the Excess Amount not released will be held in the Depository Account (the "**Held Funds**") until the amount of the Held Funds equals Hospital District's Super-priority Claims. When the Held Funds equals the Hospital District's Allowed Super-priority Claims, Hospital District will inform the Manager and both parties will agree to use the Held Funds

---

[7] "**Facility Operating Account**" is as defined in the Management Agreement.

to payoff the Hospital District's Allowed Super-priority Claims. Upon payoff of Hospital District's Allowed Super-priority Claims, Hospital District, except as otherwise authorized by the Management Agreement, will no longer hold back funds from the Excess Funds, and the Parties will revert to Section 7.2 of the Management Agreement.

**MILESTONES:**

(a)     The liquidation analysis and projections prepared by the Debtor is filed with the Bankruptcy Court by October 1, 2024;

(b)     The Manager's chapter 11 plan (the "**Plan**") is solicited for votes by November 21, 2024;

(c)     The plan proposed by the Debtor is confirmed by December 30, 2024 (the "**Confirmed Plan**"); and

(d)     The Confirmed Plan is effective by February 28, 2025.

**EVENTS OF DEFAULT:** Each shall constitute an ("**Event of Default**"):

(a)     The Manager defaults in the payment of any amount due and payable to Hospital District pursuant to this Settlement Term Sheet;

(b)     The Plan does not propose to pay in full the Settlement Obligations by fifteen (15) days after Hospital District receives the February 2025 Supplemental Payment;

(c)     Hospital District does not receive payment in full of the Settlement Obligations by fifteen (15) days after Hospital District receives the February 2025 Supplemental Payment;

(d)     The existence of any "Event of Default" under Article 14 of the Management Agreement arising after September 19, 2024;

(e)     Manager's failure to pay rent due to the Landlord by the 5th day of each month;

(f)     Manager's failure to pay payroll in full when due to an employee or a governmental authority;

(g)     Manager's failure to pay each ordinary-course Operating Expense, as defined in the Management Agreement, when it is due and owing;

(h)     If an order approving this Settlement Term Sheet is not entered by September 19, 2024, at 6:00 p.m. (CT), unless modification is approved by Hospital District in its sole and absolute discretion;

(i)     Entry of an order staying, amending, reversing, vacating, or otherwise modifying or having a material adverse effect on Hospital District, the Hospital District's Allowed Super-priority Claim, the Hospital District's Collateral, in each case without the prior written consent of Hospital District;

5

(j)     Entry of an order granting relief from the automatic stay against the Hospital District's Collateral;

(k)     Manager undertakes any actions with respect to its assets, business operations, or capital structure that would have a material adverse effect on the Manager, the Facility, Hospital District, the Hospital District's Collateral, or repayment of the Settlement Obligations;

(l)     Manager makes any payments of any kind not permitted by this Settlement Term Sheet;

(m)     Manager fails to maintain required property insurance;

(n)     Failure of the Debtor to meet any Milestone;

(o)     The filing of another bankruptcy case by or against the Debtor;

(p)     Manager breaches any representation, warrant, and covenant under this Settlement Term Sheet or the Management Agreement; and

(q)     The occurrence of any other event or circumstance that has, or could reasonably be expected to have, a material adverse effect on either the Manager, the Bankruptcy Case, the Hospital District's Collateral, or repayment of the Settlement Obligations.

Only Hospital District may declare an Event of Default, and Hospital District shall notify the Manager and counsel thereto of such Event of Default by electronic mail to:

Jon McPike jemcpike@remarkablehealthcare.net
Liz Boydston lboydston@gutnicki.com
Max Schlan mschlan@gutnicki.com
Alex Rahn arahn@gutnicki.com

Hospital District shall also notify the Subchapter V Trustee, Landlord and Prepetition Secured Lender of such Event of Default by electronic mail to:

Subchapter V Trustee mweisbart@haywardfirm.com
Jeff Carruth jcarruth@wkpz.com
Buffey Klein buffey.klein@huschblackwell.com

**REMEDIES UPON EVENT OF DEFAULT:** Upon an Event of Default that is not cured within three (3) business days or that is not waived by Hospital District, the following occurs:

(a)     Hospital District may elect to terminate the Management Agreement and Sublease for cause, satisfy outstanding Settlement Obligations as well as any Termination Fee (as defined in the Management Agreement) from the Hospital District's Collateral though application, recoupment, setoff, or offset from the Depository Account, without further notice or order of any Court;

(b)     The automatic stay imposed by section 362 of the Bankruptcy Code is lifted to allow Hospital District, the Secured Prepetition Lender, and the Landlord to exercise all

6

remedies available to each under applicable law and each's respective documents, including, but not limited to, Section 14.3 of the Management Agreement;

(c)   The Avoidance Actions are assigned to Hospital District or its assignee, and Hospital District and its assignee each has indefeasible standing to prosecute/pursue Avoidance Actions in their respective sole and absolute discretion; and

(d)   Hospital District, the Secured Prepetition Lender, and the Landlord all have relief from the automatic stay in any bankruptcy case filed by or against the Debtor.

**OTHER:**

(a)   Manager represents and warrants that (a) since March 1, 2024, it has turned over all Facility AR checks to HD for deposit into the Depository Account except $93,000 and $39,072.09 on or around August 27, 2024; and (b) it has a continuing duty under applicable law and the Management Agreement to turn over all Facility AR to HD; provided, however that for immaterial ACH, checks, credit card payments, deposits, SSI checks, wires, etc. which are less than $200 each ("**Immaterial Deposits**") of Facility AR received by Manager, each week on Monday Manager will provide an accounting of the prior week's Immaterial Deposits to Hospital District for Hospital District to determine whether such Immaterial Deposits should be sent to the Depository Account or kept in the Facility Operating Account and used solely for approved Operating Expenses;

(b)   Manager agrees that HD has not and nothing under this Management Agreement serves as a waiver of any defaults under the Management Agreement;

(c)   This Settlement Term Sheet is without prejudice to, and HD reserves all rights regarding, all other pleadings and papers filed in this bankruptcy case and any chapter 11 plan proposed in this bankruptcy case, including regarding the Manager's ability to cure all defaults under section 365 of the Bankruptcy Code, satisfy all requirements under, among other sections, 1129, including the feasibility of any plan; and

(d)   The Settlement Term Sheet is binding on all successors to the Debtor, including all trustees, subchapter 5, chapter 11, or chapter 7, and receivers over the Debtor or its property.

[SIGNATURE PAGE TO FOLLOW]

DM_US 208080360-2.T19780.0010

As an acknowledgement of your acceptance of this Settlement Term Sheet, kindly sign and return same to the undersigned. This Term Sheet will be null and void if not executed and returned on or before September 19, 2024.

AGREED AND ACCEPTED this _____ day of _____ 2024:

**Hospital District:**

By: _____
Name:
Title:

AGREED AND ACCEPTED this 19th day of September 2024:

**Manager: Remarkable Healthcare of Seguin, LP**

By: __                                                  _____
Name:  Jon McPike
Title:   Chief Operating Officer

8

Document comparison by Workshare Compare on Monday, September 30, 2024
1:37:20 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\dgreen\OneDrive - McDermott Will & Emery LLP\Desktop\Remarkable - Settlement Agreement FINAL EXECUTION COPY.docx |
| Description | Remarkable - Settlement Agreement FINAL EXECUTION COPY |
| Document 2 ID | file://C:\Users\dgreen\AppData\Local\Temp\Workshare\tmpF81D\Remarkable - Settlement Agreement FINAL EXECUTION COPY (Amended).docx |
| Description | Remarkable - Settlement Agreement FINAL EXECUTION COPY (Amended) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 1 |
| Deletions | 0 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |

| Format changes | 0 |
|---|---|
| Total changes | 1 |

## SETTLEMENT TERM SHEET

### PARTIES

**HOSPITAL DISTRICT:**                       WEST    WHARTON    COUNTY    HOSPITAL
                                             DISTRICT ("**HD**" or "**HOSPITAL DISTRICT**")

**MANAGER/DEBTOR:**                          REMARKABLE HEALTHCARE OF SEGUIN, LP
                                             (the "**MANAGER**" and "**DEBTOR**") and THE
                                             BANKRUPTCY ESTATE OF REMARKABLE
                                             HEALTHCARE OF SEGUIN, LP (the
                                             "**BANKRUPTCY ESTATE**")

### SETTLEMENT TERMS

**HOSPITAL DISTRICT'S ALLOWED CLAIM:** $420,000 plus all (a) other amounts owed under
the Management Agreement or otherwise to HD by the Manager and (b) reasonable attorneys' fees and
costs incurred after execution of this Settlement Term Sheet in protecting, collecting, securing, or
recovering payment of all amounts owed to HD by Manager.

**INTEREST RATE**: 7%

**HD'S ALLOWED CLAIM'S PRIORITY**: Hospital District's Allowed Claim shall constitute
allowed super-priority administrative expense claims against Manager and the Bankruptcy Estate
(without the need to file any claim, pleading, paper, or application seeking approval) with priority over
any and all claims against the Debtor or the Bankruptcy Estate, now existing or hereafter arising, of
any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and
507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under
sections 105, 326, 327, 328, 330, 331, 362, 363, 364, 365, 503, 506, 507, 546, 726, 1113, or 1114 of
the Bankruptcy Code, whether or not such expenses or claims are or may become secured by a judgment
lien or other consensual or non-consensual lien, levy or attachment, which allowed super-priority
administrative expense claims (the "**Hospital District's Allowed Super-priority Claims**") of Hospital
District shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered
administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which Hospital
District's Allowed Super-priority Claims shall be payable from and have recourse to all prepetition and
post-petition property of the Manager and the Bankruptcy Estate and their successors and assigns and
all products and proceeds thereof.

**HD'S ALLOWED CLAIM'S COLLATERAL/SECURITY**: As continuing security for the prompt
payment of all amounts payable to Hospital District under this Settlement Term Sheet, including the
Hospital District's Allowed Super-priority Claims, and the Management Agreement, and as continuing
security for the due and punctual performance by Manager and the Bankruptcy Estate of their existing
and future obligations pursuant to the Settlement Term Sheet and the Management Agreement
(collectively, the "**Settlement Obligations**"), Hospital District is granted, conveyed, assigned,
transferred, mortgaged, and charged, without the necessity of the execution, recordation, or filing by
the Borrower of any mortgages, security agreements, account-control agreements, pledge agreements,
financing statements, intellectual-property filing, or other similar documents, any notation of
certificates of title for titled goods or other similar documents, instruments, deeds, charges or
certificates, or the possession or control by Hospital District of, or over, any collateral, the following
security interests and liens (all such security interests and liens granted to Hospital District pursuant to
this Settlement Term Sheet and other settlement documents (collectively, the "**Settlement**

1

**Documents**," the "**Hospital District's Settlement Liens**," and the property subject to the Hospital District's Settlement Liens, the "**Settlement Collateral**"):

- a valid, binding, continuing, enforceable, non-avoidable, and automatically and fully-perfected first-priority senior security interest in, and lien on, all post-Petition Date[1] AR[2] and the proceeds of the foregoing (the "**Post-Petition AR**");

- a valid, binding, continuing, enforceable, non-avoidable, and automatically and fully-perfected first-priority senior security interest in, and lien on, all causes of action of the Manager and the Bankruptcy Estate, including commercial torts and Avoidance Actions,[3] and the proceeds of the foregoing (the "**Causes of Action**"); (the Post-Petition AR and the Causes of Action are, collectively, the "**Post-Petition Collateral**"); and

- a valid, binding, continuing, enforceable, non-avoidable, and automatically and fully-perfected second-priority senior security interest in, and lien on, all tangible and intangible prepetition property of the Manager and the Bankruptcy Estate, including any unencumbered cash of the Debtors and any investment of such cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, AR, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, intercompany claims, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, investment property, letter-of-credit rights, supporting obligations, vehicles, plants, machinery and equipment, real property, leases (and proceeds from the disposition thereof), beneficial interests in any trust, money, goodwill, causes of action, and their proceeds (together with the Post-Petition Collateral, the "**Hospital District's Collateral**"); provided, however, Hospital District's liens and security interests in the pre-Petition Date AR are subject to and subordinate only to the Secured Prepetition Lender's valid, perfected, and unavoidable liens and security interests in the same.

---

[1] "**Petition Date**" means March 20, 2024.

[2] "**AR**" means all revenues, monies, accounts, payments, and other proceeds arising from or related to the operation of the Facility, including, without limitation, Medicare and Medicaid-related general intangibles and any other third-party payor reimbursements, together with the products and proceeds of all the foregoing, attributable to the provision of resident services by Manager at the Facility (defined below), to the extent owned by Manager.

[3] "**Avoidance Actions**" means all claims and causes of action arising under sections 502(d), 506, 510, 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable state law.

**PERFECTION OF LIENS HOSPITAL DISTRICT'S COLLATERAL**: Hospital District is granted, without the necessity of the execution, recordation or filing by the Manager or Hospital District of any mortgages, security agreements, account-control agreements, pledge agreements, financing statements, intellectual-property filings, or other similar documents, any notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges, or certificates, or the possession or control by Hospital District of or over Hospital District's Collateral.

The order approving the Settlement Terms shall be sufficient and conclusive evidence of the validity, attachment, enforceability, perfection, and priority of the Hospital District's Settlement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect Hospital District's Settlement Liens, or to entitle the Hospital District's Settlement Liens to the priority granted in the Settlement Documents. Notwithstanding the foregoing, Hospital District may, in its sole and absolute discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay to do so, and all such financing such financing statements, deeds of trust, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The Manager shall execute and deliver to Hospital District all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents or instruments, and otherwise cooperate and assist in any such filings, as Hospital District may reasonably request to further evidence, confirm, validate or perfect, or to ensure the contemplated priority of, Hospital District's Settlement Liens. Hospital District, in its sole and absolute discretion, may file a photocopy of any order approving this Settlement Term Sheet as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Manager has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of that order.

**REPAYMENT TERMS**: Payment of the Settlement Obligations shall be made in full by Debtor to Hospital District upon the earlier of (a) receipt of the February 2025 Supplemental Payment,[4] (b) and Event of Default, which such Event of Default is defined below, (c) the Held Funds equals the Hospital District's Allowed Super-priority Claims, and (d) the Effective Date.

To the extent the February 2025 Supplemental Payment does not satisfy the Settlement Obligations in full or there is an Event of Default, Hospital District may satisfy outstanding Settlement Obligations from Hospital District's Collateral though application, recoupment, setoff, or offset from the Depository Account.[5]

**FACILITY[6] ACCOUNTS RECEIVABLE**: Solely for this Settlement Term Sheet and only until Hospital District's Allowed Super-priority Claims are paid in full, Manager and each Settlement Party agrees and the order approving the Settlement Terms shall find, recognize, decree, adjudge, allow, and order that (a) all revenues, monies, accounts, payments, and other proceeds arising from or related to the operation of the Facility, including, without limitation, Medicare-related general intangibles, Medicaid-related general intangibles, private-pay receipts or general intangibles, self-pay receipts or

---

[4] "**February 2025 Supplemental Payment**" means the Quality Incentive Payment Program (QIPP) State Fiscal Year 2025 Year 8 Quarter 1 payment for Components One, Two, Three, and Four.

[5] "**Depository Account**" is as defined in the Management Agreement.

[6] "**Facility**" means the real and personal property, tangible and intangible, associated with the licensed skilled-nursing facility known as Remarkable Healthcare of Seguin located at 1339 Eastwood Drive, Seguin, Texas.

general intangibles, and any other third-party payor reimbursements, together with the products and proceeds of all of the foregoing, attributable to the provision of resident services at the Facility (collectively, the "**Facility AR**") are the sole and exclusive property of Hospital District and (b) no party has any right, title, or interest in the Facility AR senior to or *pari passu* with Hospital District. All such rights of any party other than Hospital District in the Facility AR are subject and junior to the rights, title, and interest of Hospital District in the Facility AR.

**SETOFF/OFFSET/RECOUPMENT**: Manager and each Settlement Party agrees and the order approving the Settlement Terms shall find, recognize, decree, adjudge, allow, and order that Hospital District has valid, unavoidable, unassailable, and enforceable setoff, offset, and recoupment rights and complete defenses against the Manager and all amounts owed to Manager, if any, by Hospital District, including under the Management Agreement, until all Settlement Obligations are paid in full; provided, however, that (1) Hospital District and Manager agree that the Parties' priority remains the highest standard of patient care at the Facility; and (2) Hospital District agrees not to exercise its setoff/offset/recoupment rights unless there is an Event of Default.

**HOSPITAL DISTRICT'S RELEASE OF FUNDS IN DEPOSITORY ACCOUNT**: In accordance with Section 7.2 of the Management Agreement, the Manager and Hospital District agree that Manager shall deposit all Total Net Revenue (as defined in the Management Agreement) derived from operation of the Facility directly into the Depository Account and shall not, under any circumstances, deposit Total Net Revenue into the Facility Operating Account or any other account. In accordance with Section 7.2 of the Management Agreement, if either party determines that any Total Net Revenue has been deposited into the Facility Operating Account, the Manager shall immediately notify Hospital District, and the Manager shall implement such actions as necessary to refund the improper payment to Hospital District within three (3) business days. The Manager and Hospital District agree that on September 18, 2024, the Depository Account balance was $111,878.49. The Manager and Hospital District agree that $68,010.67 was previously removed from the Depository Account by Hospital District. Hospital District shall deposit that $68,010.67 back into the Depository Account. By 1:00 p.m. central time on September 19, 2024, Hospital District shall sweep from the Depository Account to the Facility Operating Account[7] all funds in the Depository Account, which should be no less than $179,889.16. Until October 19, 2024, every Monday and Thursday, so long as no Event of Default exists under this Settlement Term Sheet, Hospital District will release 100% of amounts in the Depository Account to the Manager for the sole and specific purpose of paying Operating Expenses as defined in the Management Agreement and approved by Hospital District. Beginning on October 20, 2024, every Monday and Thursday, so long as no Event of Default exists under this Settlement Term Sheet, Hospital District will release 100% of amounts up to $150,000 on a weekly basis from the Depository Account to the Facility Operating Account for the sole and specific purpose of paying Operating Expenses; for amounts exceeding $150,000 on a weekly basis (the "**Excess Amount**"), Hospital District will release 80% of the Excess Amount from the Depository Account to the Facility Operating Account for the sole and specific purpose of paying Operating Expenses. The 20% of the Excess Amount not released will be held in the Depository Account (the "**Held Funds**") until the amount of the Held Funds equals Hospital District's Super-priority Claims. When the Held Funds equals the Hospital District's Allowed Super-priority Claims, Hospital District will inform the Manager and both parties will agree to use the Held Funds to payoff the Hospital District's Allowed Super-priority Claims. Upon payoff of Hospital District's Allowed Super-priority Claims, Hospital District, except as otherwise authorized by the Management Agreement, will no longer hold back funds from the Excess Funds, and the Parties will revert to Section 7.2 of the Management Agreement.

---

[7] "**Facility Operating Account**" is as defined in the Management Agreement.

**MILESTONES:**

    (a)    The liquidation analysis and projections prepared by the Debtor is filed with the Bankruptcy Court by October 1, 2024;

    (b)    The Manager's chapter 11 plan (the "**Plan**") is solicited for votes by November 21, 2024;

    (c)    The plan proposed by the Debtor is confirmed by December 30, 2024 (the "**Confirmed Plan**"); and

    (d)    The Confirmed Plan is effective by February 28, 2025.

**EVENTS OF DEFAULT:** Each shall constitute an ("**Event of Default**"):

    (a)    The Manager defaults in the payment of any amount due and payable to Hospital District pursuant to this Settlement Term Sheet;

    (b)    The Plan does not propose to pay in full the Settlement Obligations by fifteen (15) days after Hospital District receives the February 2025 Supplemental Payment;

    (c)    Hospital District does not receive payment in full of the Settlement Obligations by fifteen (15) days after Hospital District receives the February 2025 Supplemental Payment;

    (d)    The existence of any "Event of Default" under Article 14 of the Management Agreement arising after September 19, 2024;

    (e)    Manager's failure to pay rent due to the Landlord by the 5th day of each month;

    (f)    Manager's failure to pay payroll in full when due to an employee or a governmental authority;

    (g)    Manager's failure to pay each ordinary-course Operating Expense, as defined in the Management Agreement, when it is due and owing;

    (h)    If an order approving this Settlement Term Sheet is not entered by September 19, 2024, at 6:00 p.m. (CT), unless modification is approved by Hospital District in its sole and absolute discretion;

    (i)    Entry of an order staying, amending, reversing, vacating, or otherwise modifying or having a material adverse effect on Hospital District, the Hospital District's Allowed Super-priority Claim, the Hospital District's Collateral, in each case without the prior written consent of Hospital District;

    (j)    Entry of an order granting relief from the automatic stay against the Hospital District's Collateral;

    (k)    Manager undertakes any actions with respect to its assets, business operations, or capital structure that would have a material adverse effect on the Manager, the Facility,

Hospital District, the Hospital District's Collateral, or repayment of the Settlement Obligations;

(l)    Manager makes any payments of any kind not permitted by this Settlement Term Sheet;

(m)    Manager fails to maintain required property insurance;

(n)    Failure of the Debtor to meet any Milestone;

(o)    The filing of another bankruptcy case by or against the Debtor;

(p)    Manager breaches any representation, warrant, and covenant under this Settlement Term Sheet or the Management Agreement; and

(q)    The occurrence of any other event or circumstance that has, or could reasonably be expected to have, a material adverse effect on either the Manager, the Bankruptcy Case, the Hospital District's Collateral, or repayment of the Settlement Obligations.

Only Hospital District may declare an Event of Default, and Hospital District shall notify the Manager and counsel thereto of such Event of Default by electronic mail to:

Jon McPike jemcpike@remarkablehealthcare.net
Liz Boydston lboydston@gutnicki.com
Max Schlan mschlan@gutnicki.com
Alex Rahn arahn@gutnicki.com

Hospital District shall also notify the Subchapter V Trustee, Landlord and Prepetition Secured Lender of such Event of Default by electronic mail to:

Subchapter V Trustee mweisbart@haywardfirm.com
Jeff Carruth jcarruth@wkpz.com
Buffey Klein buffey.klein@huschblackwell.com

**REMEDIES UPON EVENT OF DEFAULT:**  Upon an Event of Default that is not cured within three (3) business days or that is not waived by Hospital District, the following occurs:

(a)    Hospital District may elect to terminate the Management Agreement and Sublease for cause, satisfy outstanding Settlement Obligations as well as any Termination Fee (as defined in the Management Agreement) from the Hospital District's Collateral though application, recoupment, setoff, or offset from the Depository Account, without further notice or order of any Court;

(b)    The automatic stay imposed by section 362 of the Bankruptcy Code is lifted to allow Hospital District, the Secured Prepetition Lender, and the Landlord to exercise all remedies available to each under applicable law and each's respective documents, including, but not limited to, Section 14.3 of the Management Agreement;

(c)    The Avoidance Actions are assigned to Hospital District or its assignee, and Hospital District and its assignee each has indefeasible standing to prosecute/pursue Avoidance Actions in their respective sole and absolute discretion; and

(d)    Hospital District, the Secured Prepetition Lender, and the Landlord all have relief from the automatic stay in any bankruptcy case filed by or against the Debtor.

**OTHER:**

(a)    Manager represents and warrants that (a) since March 1, 2024, it has turned over all Facility AR checks to HD for deposit into the Depository Account except $93,000 and $39,072.09 on or around August 27, 2024; and (b) it has a continuing duty under applicable law and the Management Agreement to turn over all Facility AR to HD; provided, however that for immaterial ACH, checks, credit card payments, deposits, SSI checks, wires, etc. which are less than $200 each ("**Immaterial Deposits**") of Facility AR received by Manager, each week on Monday Manager will provide an accounting of the prior week's Immaterial Deposits to Hospital District for Hospital District to determine whether such Immaterial Deposits should be sent to the Depository Account or kept in the Facility Operating Account and used solely for approved Operating Expenses;

(b)    Manager agrees that HD has not and nothing under this Management Agreement serves as a waiver of any defaults under the Management Agreement;

(c)    This Settlement Term Sheet is without prejudice to, and HD reserves all rights regarding, all other pleadings and papers filed in this bankruptcy case and any chapter 11 plan proposed in this bankruptcy case, including regarding the Manager's ability to cure all defaults under section 365 of the Bankruptcy Code, satisfy all requirements under, among other sections, 1129, including the feasibility of any plan; and

(d)    The Settlement Term Sheet is binding on all successors to the Debtor, including all trustees, subchapter 5, chapter 11, or chapter 7, and receivers over the Debtor or its property.

[SIGNATURE PAGE TO FOLLOW]

7

As an acknowledgement of your acceptance of this Settlement Term Sheet, kindly sign and return same to the undersigned. This Term Sheet will be null and void if not executed and returned on or before September 19, 2024.

AGREED AND ACCEPTED this _____ day of _____ 2024:

**Hospital District:**

By:   _____
Name:
Title:

AGREED AND ACCEPTED this 19th day of September 2024:

**Manager: Remarkable Healthcare of Seguin, LP**

By: __                                                      _____
Name:  Jon McPike
Title:   Chief Operating Officer